ROBERT T. HASLAM (CA Bar No. 71134)
robert.haslam@hellerehrman.com
ANDREW C. BYRNES (CA BAR NO. 191516)
andrew.byrnes@hellerehrman.com
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA  94025
Telephone:  (650) 324-7000
Facsimile:   (650) 324-0638

MICHAEL K. PLIMACK (CA BAR NO. 133869)
michael.plimack@hellerehrman.com
DALE A. RICE (CA BAR NO. 146249)
dale.rice@hellerehrman.com
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104
Telephone:  (415) 772-6000
Facsimile:   (415) 772-6268

Attorneys for Plaintiff and Defendant
RONALD A. KATZ TECHNOLOGY LICENSING, L.P.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: Katz Interactive Call Processing Patent Litigation, | Case No. 07-ML-01816-B-RGK (FFMx) |
| Ronald A. Katz Technology Licensing, L.P. v. American International Group, Inc., CV 07-2192 RGK (FFMx) | **PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Ronald A. Katz Technology Licensing, L.P. ("Katz Technology Licensing") states as follows for its complaint against American International Group, Inc., AIG Retirement Services, Inc., 21st Century Insurance Group, 21st Century Insurance Company, 21st Century Casualty Company, AIG Marketing, Inc., AIG SunAmerica Asset Management Corp., AIG Annuity Insurance Company, AIG Federal Savings Bank, The United States Life Insurance Company in the City of New York, AIG Life Insurance Company, American General Assurance Company, American General Indemnity Company, American General Life and Accident Insurance Company, American General Life Insurance Company, The Variable Annuity Life Insurance Company, VALIC Financial Advisors, Inc., VALIC Retirement Services Company, National City Corporation, National City Bank, National City Bank of Indiana, Wilmington Trust Company, Wilmington Brokerage Services Company, Aquila, Inc., DHL Holdings (USA) Inc., DHL Express (USA), Inc., Sky Courier, Inc., CIGNA Corporation, CIGNA Health Corporation, CIGNA HealthCare of Delaware, Inc., Tel-Drug, Inc. and Tel-Drug of Pennsylvania, LLC, and states as follows:

## THE PARTIES

1.      Plaintiff Katz Technology Licensing is a California limited partnership with its principal place of business at 9220 Sunset Boulevard, Suite 315, Los Angeles, California 90069.

2.      On information and belief, Defendant American International Group, Inc. is a Delaware corporation with its principal place of business at 70 Pine Street, New York City, New York 10270.

3.      On information and belief, Defendant AIG Retirement Services, Inc. is (a) a Delaware corporation with its principal place of business at One SunAmerica Center, Los Angeles, California 90067, and (b) a subsidiary of American International Group, Inc.

4.      On information and belief, Defendant 21st Century Insurance Group is (a) a Delaware corporation with its principal place of business at 6301 Owensmouth Avenue, Woodland Hills, California 91367, and (b) a subsidiary of American International Group, Inc.

5.      On information and belief, Defendant 21st Century Insurance Company is (a) a California corporation with its principal place of business at 6301 Owensmouth Avenue, Woodland Hills, California 91367, and (b) a subsidiary of American International Group, Inc.

6.      On information and belief, Defendant 21st Century Casualty Company is (a) a California corporation with its principal place of business at 6301 Owensmouth Avenue, Woodland Hills, California 91367, and (b) a subsidiary of American International Group, Inc.

7.      On information and belief, Defendant AIG Marketing, Inc. is (a) a Delaware corporation with its principal place of business at One AIG Center, Wilmington, Delaware 19803, and (b) a subsidiary of American International Group, Inc.

8.      On information and belief, Defendant AIG SunAmerica Asset Management Corp. is (a) a Delaware corporation with its principal place of business at 733 Third Avenue, New York City, New York 10017, and (b) a subsidiary of American International Group, Inc.

9.      On information and belief, Defendant AIG Annuity Insurance Company is (a) a Texas corporation with its principal place of business at 2929 Allen Parkway, Houston, Texas 77019, and (b) a subsidiary of American International Group, Inc.

10.      On information and belief, Defendant AIG Federal Savings Bank is (a) a federal savings bank with its principal place of business at 704 King Street, Wilmington, Delaware 19801, and (b) a subsidiary of American International Group, Inc.

11.     On information and belief, Defendant The United States Life Insurance Company in the City of New York is (a) a New York corporation with its principal place of business at 830 Third Avenue, New York City, New York 10022, and (b) a subsidiary of American International Group, Inc.

12.     On information and belief, Defendant AIG Life Insurance Company is (a) a Delaware corporation with its principal place of business at One ALICO Plaza, Wilmington, Delaware 19899, and (b) a subsidiary of American International Group, Inc.

13.     On information and belief, Defendant American General Assurance Company is (a) an Illinois corporation with its principal place of business at 1000 Woodfield Road, Schaumburg, Illinois 60173, and (b) a subsidiary of American International Group, Inc.

14.     On information and belief, Defendant American General Indemnity Company is (a) an Illinois corporation with its principal place of business at 1000 Woodfield Road, Schaumburg, Illinois 60173, and (b) a subsidiary of American International Group, Inc.

15.     On information and belief, Defendant American General Life and Accident Insurance Company is (a) a Tennessee corporation with its principal place of business at American General Center—MC 338N, Nashville, Tennessee 37250, and (b) a subsidiary of American International Group, Inc.

16.     On information and belief, Defendant American General Life Insurance Company is (a) a Texas corporation with its principal place of business at 2727-A Allen Parkway, Houston, Texas 77251, and (b) a subsidiary of American International Group, Inc.

17.     On information and belief, Defendant The Variable Annuity Life Insurance Company is (a) a Texas corporation with its principal place of business at 2929 Allen Parkway, Houston, Texas 77019, and (b) a subsidiary of American International Group, Inc.

18.     On information and belief, Defendant VALIC Financial Advisors, Inc. is (a) a Texas corporation with its principal place of business at 2929 Allen Parkway, Houston, Texas 77019, and (b) a subsidiary of American International Group, Inc.

19.     On information and belief, Defendant VALIC Retirement Services Company is (a) a Texas corporation with its principal place of business at 2929 Allen Parkway, Houston, Texas 77019, and (b) a subsidiary of American International Group, Inc.

20.     On information and belief, Defendant National City Corporation is a Delaware corporation with its principal place of business at 1900 East Ninth Street, Cleveland, Ohio 44114.

21.     On information and belief, Defendant National City Bank is (a) a national bank with its principal place of business at 1900 East Ninth Street, Cleveland, Ohio 44114, and (b) a subsidiary of National City Corporation.

22.     On information and belief, Defendant National City Bank of Indiana is (a) a national bank with its principal place of business at One Merchants Plaza, Indianapolis, Indiana 46204, and (b) a subsidiary of National City Corporation.

23.     On information and belief, Defendant Wilmington Trust Company is a Delaware corporation with its principal place of business at 1100 North Market Street, Wilmington, Delaware 19890.

24.     On information and belief, Defendant Wilmington Brokerage Services Company is (a) a Delaware corporation with its principal place of business at 1100 North Market Street, Wilmington, Delaware 19890, and (b) a subsidiary of Wilmington Trust Company.

25.     On information and belief, Defendant Aquila, Inc. is a Delaware corporation with its principal place of business at 20 West Ninth Street, Kansas City, Missouri 64105.

26.     On information and belief, Defendant DHL Holdings (USA) Inc. is a Delaware corporation with its principal place of business at 1200 South Pine Island Road, Plantation, Florida 33324.

27.     On information and belief, Defendant DHL Express (USA) Inc. is (a) a Delaware corporation with its principal place of business at 1200 South Pine Island Road, Plantation, Florida 33324; and (b) affiliated with DHL Holdings (USA) Inc.

28.     On information and belief, Defendant Sky Courier, Inc. is a Delaware corporation with its principal place of business at 21240 Ridgetop Circle, Sterling, Virginia 20166.  As indicated on its website, www.skycourier.com, Sky Courier is also known as DHL SameDay and is part of the DHL family of companies.

29.     On information and belief, Defendant CIGNA Corporation is a Delaware corporation with its principal place of business at Two Liberty Place, Philadelphia, Pennsylvania 19192.

30.     On information and belief, Defendant CIGNA Health Corporation is (a) a Delaware corporation with its principal place of business at 900 Cottage Grove Road, Bloomfield, Connecticut 06002, and (b) a subsidiary of CIGNA Corporation.

31.     On information and belief, Defendant CIGNA HealthCare of Delaware, Inc. is (a) a Delaware corporation with its principal place of business at 590 Naamans Road, Claymont, Delaware 19703, and (b) a subsidiary of CIGNA Corporation.

32.     On information and belief, Defendant Tel-Drug, Inc. is (a) a South Dakota corporation with its principal place of business at 4901 North Fourth Avenue, Sioux Falls, South Dakota 57104, and (b) a subsidiary of CIGNA Corporation.

33.     On information and belief, Defendant Tel-Drug of Pennsylvania, LLC is (a) a Pennsylvania corporation with its principal place of business at 206 Welsh Road, Horsham, Pennsylvania 19044, and (b) a subsidiary of CIGNA Corporation.

KATZ'S AMENDED COMPLAINT                    CASE NO. 07-ML-1816-B-RGK (FFMx)

## JURISDICTION AND VENUE

34.     This is an action arising under the patent laws of the United States, 35 U.S.C. sections 101 *et seq*.  This Court has subject matter jurisdiction over this action under 28 U.S.C. sections 1331 and 1338(a).

35.     American International Group, Inc., AIG Retirement Services, Inc., 21st Century Insurance Group, 21st Century Insurance Company, 21st Century Casualty Company, AIG Marketing, Inc., AIG SunAmerica Asset Management Corp., AIG Annuity Insurance Company, AIG Federal Savings Bank, The United States Life Insurance Company in the City of New York, AIG Life Insurance Company, American General Assurance Company, American General Indemnity Company, American General Life and Accident Insurance Company, American General Life Insurance Company, The Variable Annuity Life Insurance Company, VALIC Financial Advisors, Inc., and VALIC Retirement Services Company (collectively, the "AIG Defendants") are subject to personal jurisdiction in the District of Delaware because, on information and belief, (1) they are Delaware corporations, have designated a registered agent in the district, and/or are registered to do business in the district; (2) they do substantial business in the district; (3) they operate infringing automated call processing systems for customer service, policy access, roadside assistance, sales and other services that are available to their customers, including customers in the district; and/or (4) they regularly solicit business from, do business with, and derive revenue from goods and services provided to, customers in the district.

36.     National City Corporation, National City Bank, and National City Bank of Indiana (collectively, the "National City Defendants") are subject to personal jurisdiction in the District of Delaware because, on information and belief, (1) they are Delaware corporations and/or have designated a registered agent in the district; (2) they do substantial business in the district; (3) they operate infringing automated call processing systems for account information and insurance, credit card, and loan

services available to their customers, including customers in the district; and/or (4) they regularly solicit business from, do business with, and derive revenue from goods and services provided to, customers in the district.

37.     Wilmington Trust Company and Wilmington Brokerage Services Company (collectively, the "Wilmington Trust Defendants") are subject to personal jurisdiction in the District of Delaware because, on information and belief, (1) they are Delaware corporations and have designated a registered agent in the district; (2) they do substantial business in the district; (3) they operate infringing automated call processing systems for customer service and financial and brokerage services available to their customers, including customers in the district; and/or (4) they regularly solicit business from, do business with, and derive revenue from goods and services provided to, customers in the district.

38.     Defendant Aquila, Inc. ("Aquila") are subject to personal jurisdiction in the District of Delaware because, on information and belief, it is a Delaware corporation and has designated a registered agent in the district.

39.     Defendants DHL Holdings (USA) Inc.; DHL Express (USA), Inc.; and Sky Courier, Inc. (collectively, the "DHL Defendants") are subject to personal jurisdiction in the District of Delaware because, on information and belief, (1) they are Delaware corporations and have designated a registered agent in the district; (2) they do substantial business in the district and maintain facilities, licensed agents, and drop boxes in the district; (3) they operate infringing automated call processing systems for customer service, new accounts, sales, and technical support that allow their customers, including customers in the district, to open accounts and obtain express shipping and delivery services and other mail and logistic services over the telephone; and/or (4) they regularly solicit business from, do business with, and derive revenue from goods and services provided to, customers in the district.

40.     CIGNA Corporation; CIGNA Health Corporation; CIGNA HealthCare of Delaware, Inc.; Tel-Drug, Inc.; and Tel-Drug of Pennsylvania, LLC (collectively,

the "CIGNA Defendants") are subject to personal jurisdiction in the District of Delaware because, on information and belief, (1) they are Delaware corporations and/or have designated a registered agent in the district; (2) they do substantial business in the district; (3) they operate infringing automated call processing systems for pharmacy and prescription refill services, customer service, and provider services available to their customers and providers, including customers and providers in the district; and/or (4) they regularly solicit business from, do business with, and derive revenue from goods and services provided to, customers in the district.

41.   Venue is proper in the District of Delaware under 28 U.S.C. sections 1391(c) and 1400(b) because the Defendants are incorporated, reside, are registered to do business in, and/or engage in significant business activities in the District of Delaware as set forth in Paragraphs 2-33 and 35-40 above.

## **BACKGROUND**

42.   Ronald A. Katz ("Mr. Katz"), founder of Katz Technology Licensing, is the sole inventor of each of the patents-in-suit.  Mr. Katz has been widely recognized as one of the most prolific and successful inventors of our time, and his inventions over the last forty-plus years have been utilized by literally millions of people.

43.   In 1961, Mr. Katz co-founded Telecredit Inc. ("Telecredit"), the first company to provide online, real-time credit authorization, allowing merchants to verify checks over the telephone.  Further innovations from Telecredit include the first online, real-time, point-of-sale credit verification terminal, which enabled merchants to verify checks without requiring the assistance of a live operator, and the first device that used and updated magnetically-encoded cards in automated teller machines.  Multiple patents issued from these innovations, including patents co-invented by Mr. Katz.

44.   Telecredit was eventually acquired by Equifax, and has now been spun off as Certegy, a public company traded on the New York Stock Exchange.  Certegy

1 continues to provide services in the credit and check verification field established by

2 Mr. Katz and Telecredit.

3     45.    Mr. Katz's inventions have not been limited to telephonic check

4 verification. Indeed, Mr. Katz is responsible for advancements in many fields of

5 technology. Among his most prominent and well-known innovations are those in the

6 field of interactive call processing. Mr. Katz's inventions in that field are directed to

7 the integration of telephonic systems with computer databases and live operator call

8 centers to provide interactive call processing services.

9     46.    The first of Mr. Katz's interactive call processing patents issued on

10 December 20, 1988. More than fifty U.S. patents have issued to Mr. Katz for his

11 inventions in the interactive call-processing field, including each of the patents-in-

12 suit.

13     47.    In 1988, Mr. Katz partnered with American Express to establish FDR

14 Interactive Technologies, later renamed Call Interactive, to provide interactive call

15 processing services based on Mr. Katz's inventions. The American Express business

16 unit involved in this joint venture later became known as First Data.

17     48.    Early clients of Call Interactive included *The New York Times*, ABC's

18 *Monday Night Football*, KABC Radio, CBS News, and Beatrice Foods (Hunt-

19 Wesson division).

20     49.    Many of these clients utilized Call Interactive technology for high-

21 profile events. For example, CBS News hired Call Interactive to operate an

22 interactive, real-time telephone poll to gauge viewer reaction to President

23 George H.W. Bush's 1992 State of the Union address.

24     50.    Mr. Katz sold his interest in Call Interactive to American Express in

25 1989 but continued to provide advisory services to Call Interactive until 1992.

26 American Express later spun off the First Data business unit into a separate

27 corporation, and with that new entity went Mr. Katz's interactive call processing

28 patents and the Call Interactive call processing business. The former Call Interactive,

1  now known as First Data Voice Services, continues to provide call processing

2  solutions today.

3       51.    In 1994, Mr. Katz formed Katz Technology Licensing, which acquired

4  the rights to the entire interactive call processing patent portfolio, including the rights

5  to each of the patents-in-suit, from First Data, the owner of all of the Katz interactive

6  call processing patents at that time.

7       52.    The marketplace has clearly recognized the value of Mr. Katz's

8  inventions.  Indeed, over one hundred fifty companies have licensed the patents-in-

9  suit.  Licensees include IBM, Hewlett-Packard, Bank of America, JPMorgan Chase,

10  Wells Fargo, HSBC, AT&T, Verizon, Sprint, Microsoft, Delta Airlines, Merck,

11  Sears, Citibank, and the Home Shopping Network.  These licensees and others

12  acknowledge the applicability of the patents-in-suit to multiple fields of use,

13  including but not limited to financial services call processing, automated securities

14  transactions, automated credit card authorization services, automated wireless

15  telecommunication services and support, automated health care services, and product

16  and service support.

17       53.    Each of the defendants employs the inventions of certain of the patents-

18  in-suit.  Katz Technology Licensing, through its licensing arm A2D, L.P., has

19  repeatedly attempted to engage each defendant in licensing negotiations, but to date,

20  none of the defendants has agreed to take a license to any of the patents-in-suit.

21                    **THE ASSERTED PATENTS**

22       54.    On December 20, 1988, the United States Patent and Trademark Office

23  duly and legally issued United States Patent No. 4,792,968 (the "'968 Patent") to

24  Ronald A. Katz for an invention entitled "Statistical Analysis System for Use With

25  Public Communication Facility."  The '968 Patent expired on December 20, 2005.

26       55.    On May 29, 1990, the United States Patent and Trademark Office duly

27  and legally issued United States Patent No. 4,930,150 (the "'150 Patent") to

28

KATZ'S AMENDED COMPLAINT                    CASE NO. 07-ML-1816-B-RGK (FFMx)

Ronald A. Katz for an invention entitled "Telephonic Interface Control System." The '150 Patent expired on December 20, 2005.

56.     On July 7, 1992, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,128,984 (the "'984 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

57.     On October 5, 1993, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,251,252 (the "'252 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

58.     On October 19, 1993, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,255,309 (the "'309 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System."  The '309 Patent expired on December 20, 2005.

59.     On September 27, 1994, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,351,285 (the "'285 Patent") to Ronald A. Katz for an invention entitled "Multiple Format Telephonic Interface Control System."  The '285 Patent expired on December 20, 2005.

60.     On October 1, 1996, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,561,707 (the "'707 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System." The '707 Patent expired on December 20, 2005.

61.     On November 4, 1997, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,684,863 (the "'863 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System."  The '863 Patent expired on December 20, 2005.

62.     On July 28, 1998, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,787,156 (the "'156 Patent") to Ronald

A. Katz for an invention entitled "Telephonic-Interface Lottery System."  The '156 Patent expired on December 20, 2005.

63.     On September 29, 1998, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,815,551 (the "'551 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System."  The '551 Patent expired on December 20, 2005.

64.     On October 27, 1998, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,828,734 (the "'734 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

65.     On April 27, 1999, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,898,762 (the "'762 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System."  The '762 Patent expired on December 20, 2005.

66.     On June 29, 1999, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,917,893 (the "'893 Patent") to Ronald A. Katz for an invention entitled "Multiple Format Telephonic Interface Control System."  The '893 Patent expired on December 20, 2005.

67.     On October 26, 1999, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,974,120 (the "'120 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."

68.     On March 7, 2000, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,035,021 (the "'021 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System."  The '021 Patent expired on December 20, 2005.

69.     On March 28, 2000, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,044,135 (the "'135 Patent") to Ronald

12

A. Katz for an invention entitled "Telephone-Interface Lottery System."  The '135 Patent expired on July 10, 2005.

70.     On November 14, 2000, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,148,065 (the "'065 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System."  The '065 Patent expired on July 10, 2005.

71.     On September 18, 2001, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,292,547 (the "'547 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System."  The '547 Patent expired on July 10, 2005.

72.     On January 1, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,335,965 (the "'965 Patent") to Ronald A. Katz for an invention entitled "Voice-Data Telephonic Interface Control System."  The '965 Patent expired on December 20, 2005.

73.     On February 19, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,349,134 (the "'134 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System."  The '134 Patent expired on December 20, 2005.

74.     On July 23, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,424,703 (the "'703 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Lottery System."  The '703 Patent expired on July 10, 2005.

75.     On August 13, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,434,223 (the "'223 Patent") to Ronald A. Katz for an invention entitled "Telephone Interface Call Processing System With Call Selectivity."  The '223 Patent expired on July 10, 2005.

76.     On January 28, 2003, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,512,415 (the "'415 Patent") to

13

Ronald A. Katz for an invention entitled "Telephonic-Interface Game Control System."  The '415 Patent expired on July 10, 2005.

77.    On January 13, 2004, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,678,360 (the "'360 Patent") to Ronald A. Katz for an invention entitled "Telephonic-Interface Statistical Analysis System."  The '360 Patent expired on July 10, 2005.

### FIRST CLAIM
**(PATENT INFRINGEMENT BY AIG DEFENDANTS)**

78.    Katz Technology Licensing realleges and incorporates by reference Paragraphs 1-77 of this Complaint as if fully set forth herein.

79.    American International Group, Inc. and its subsidiaries, including the other AIG Defendants, provide insurance, banking, investment and other financial services.

80.    On information and belief, the AIG Defendants use infringing call processing systems to offer automated customer service and trading capabilities to their customers.  Using an automated system, in some instances in connection with operators, the AIG Defendants allow their customers to access information about their policies, make credit card payments, order new identification cards, establish or change their personal identification numbers, order account statements, exchange or redeem funds, and perform various other functions.

81.    Katz Technology Licensing is the sole holder of the entire right, title, and interest in the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 Patents.

82.    On information and belief, in their automated account service operations described in Paragraph 80 (collectively, the "Accused AIG Services"), the AIG Defendants have been and are now infringing, actively inducing the infringement of, or contributing to the infringement of one or more claims of each of the patents

1 identified in Paragraph 81 of this Complaint by making, using, offering to sell, or

2 selling the Accused AIG Services.

3      83.    On information and belief, the AIG Defendants continue to infringe,

4 actively induce the infringement of, and contribute to the infringement of one or

5 more claims of the '120, '252, '734 and '984 Patents by making, using, offering to

6 sell, or selling the Accused AIG Services.

7      84.    The AIG Defendants' infringement of the patents identified in Paragraph

8 81 of this Complaint has been and is willful.

9      85.    The AIG Defendants' infringement has caused and will continue to

10 cause Katz Technology Licensing irreparable harm unless enjoined by this Court.

11 Katz Technology Licensing has no adequate remedy at law.

12

13

**SECOND CLAIM**

**(PATENT INFRINGEMENT BY NATIONAL CITY DEFENDANTS)**

14      86.    Katz Technology Licensing realleges and incorporates by reference

15 Paragraphs 1-77 of this Complaint as if fully set forth herein.

16      87.    National City Corporation is a financial holding company that, along

17 with, *inter alia*, its subsidiaries National City Bank and National City Bank of

18 Indiana, provides banking and financial services to individuals and businesses,

19 operating more than 1,100 branch banking offices and over 1,600 automated teller

20 machines in Ohio, Pennsylvania, Indiana, Kentucky, Illinois, and Michigan.

21      88.    On information and belief, the National City Defendants use infringing

22 call processing systems to offer automated account information, consumer loan

23 services information, auto lease information, insurance information, gift card

24 customer service, and credit card customer service to their customers.  Using an

25 automated system, in some instances in connection with operators, the National City

26 Defendants allow their customers to access information about their accounts, transfer

27 funds between accounts, order personal checks, make credit card payments, establish

28 or change their personal identification numbers, and perform various other functions.

89.     Katz Technology Licensing is the sole holder of the entire right, title, and interest in the '021, '065, '120, '134, '135, '150, '156, '223, '252, '285, '309, '360, '547, '551, '703, '707, '734, '762, '863, '893, '965, '968, and '984 Patents.

90.     On information and belief, in their automated account information, auto lease information, insurance information, and credit card customer service operations described in Paragraph 88 (collectively, the "Accused National City Services"), the National City Defendants have been and are now infringing, actively inducing the infringement of, or contributing to the infringement of one or more claims of each of the patents identified in Paragraph 89 of this Complaint by making, using, offering to sell, or selling the Accused National City Services.

91.     On information and belief, the National City Defendants continue to infringe, actively induce the infringement of, and contribute to the infringement of one or more claims of the '120, '252, '734, and '984 Patents by making, using, offering to sell, or selling the Accused National City Services.

92.     The National City Defendants' infringement of the patents identified in Paragraph 89 of this Complaint has been and is willful.

93.     The National City Defendants' infringement has caused and will continue to cause Katz Technology Licensing irreparable harm unless enjoined by this Court.  Katz Technology Licensing has no adequate remedy at law.

### THIRD CLAIM
### (PATENT INFRINGEMENT BY WILMINGTON TRUST DEFENDANTS)

94.     Katz Technology Licensing realleges and incorporates by reference Paragraphs 1-77 of this Complaint as if fully set forth herein.

95.     Wilmington Trust Company provides regional banking services, including trust management.  Its subsidiary, Wilmington Brokerage Services Company, provides wealth advisory services, including investment management.

96.     On information and belief, the Wilmington Trust Defendants use infringing call processing systems to offer automated banking and investment

KATZ'S AMENDED COMPLAINT                                   CASE NO. 07-ML-1816-B-RGK (FFMx)

services to their customers.  Using an automated system, in some instances in connection with operators, the Wilmington Trust Defendants allow their customers to access information about their accounts, transfer funds between accounts, issue stop payments on checks, access current interest rates and stock quotes, and perform various other functions.

97.   Katz Technology Licensing is the sole holder of the entire right, title, and interest in the '065, '120, '134, '135, '150, '223, '252, '285, '360, '551, '734, '863, '893, '965, '968, and '984 Patents.

98.   On information and belief, in their automated account service and financial information functions described in Paragraph 96 (collectively, the "Accused Wilmington Trust Services"), the Wilmington Trust Defendants have been and are now infringing, actively inducing the infringement of, or contributing to the infringement of one or more claims of each of the patents identified in Paragraph 97 of this Complaint by making, using, offering to sell, or selling the Accused Wilmington Trust Services.

99.   On information and belief, the Wilmington Trust Defendants continue to infringe, actively induce the infringement of, and contribute to the infringement of one or more claims of the '120, '252, '734, and '984 Patents by making, using, offering to sell, or selling the Accused Wilmington Trust Services.

100.   The Wilmington Trust Defendants' infringement of the patents identified in Paragraph 97 of this Complaint has been and is willful.

101.   The Wilmington Trust Defendants' infringement has caused and will continue to cause Katz Technology Licensing irreparable harm unless enjoined by this Court.  Katz Technology Licensing has no adequate remedy at law.

# FOURTH CLAIM
## (PATENT INFRINGEMENT BY AQUILA)

102.   Katz Technology Licensing realleges and incorporates by reference Paragraphs 1-77 of this Complaint as if fully set forth herein.

103.   Aquila provides electricity to customers in Missouri, Kansas and Colorado and natural gas to customers in Kansas, Colorado, Nebraska, and Iowa.

104.   On information and belief, Aquila uses infringing call processing systems to offer automated customer service to its customers.  Using an automated system, in some instances in connection with operators, Aquila enables its customers to access information about their accounts; make payments; report power outages, gas leaks, or emergencies; provide meter readings; start, stop, or transfer service; and perform various other functions.

105.   Katz Technology Licensing is the sole holder of the entire right, title, and interest in the '065, '120, '134, '150, '223, '285, '360, '415, '547, '551, '707, '734, '762, '863, '893, '965, and '968 Patents.

106.   On information and belief, in its automated customer service operations described in Paragraph 104 (collectively, the "Accused Aquila Services"), Aquila has been and is now infringing, actively inducing the infringement of, or contributing to the infringement of one or more claims of each of the patents identified in Paragraph 105 of this Complaint by making, using, offering to sell, or selling the Accused Aquila Services.

107.   On information and belief, Aquila continues to infringe, actively induce the infringement of, and contribute to the infringement of one or more claims of the '120 and '734 Patents by making, using, offering to sell, or selling the Accused Aquila Services.

108.   Aquila's infringement of the patents identified in Paragraph 105 of this Complaint has been and is willful.

109.   Aquila's infringement has caused and will continue to cause Katz Technology Licensing irreparable harm unless enjoined by this Court.  Katz Technology Licensing has no adequate remedy at law.

## FIFTH CLAIM
### (PATENT INFRINGEMENT BY DHL DEFENDANTS)

110.   Katz Technology Licensing realleges and incorporates by reference Paragraphs 1-77 of this Complaint as if fully set forth herein.

111.   The DHL Defendants are members of the DHL global family of companies that offer express delivery, mail, and other services in the United States and to international locations.

112.   On information and belief, the DHL Defendants use infringing call processing systems to offer automated customer service to their customers.  Using an automated system, in some instances in connection with operators, the DHL Defendants enable their customers to track packages, open new accounts, access information about their accounts, pay their bills, schedule package pickups, obtain information regarding drop off locations, access technical support, and perform various other functions.

113.   Katz Technology Licensing is the sole holder of the entire right, title, and interest in the '065, '120, '134, '150, '223, '285, '360, '415, '547, '551, '703, '707, '734, '863, '893, '965, '968 and '984 Patents.

114.   On information and belief, in its automated customer service operations described in Paragraph 112 (collectively, the "Accused DHL Services"), the DHL Defendants have been and are now infringing, actively inducing the infringement of, or contributing to the infringement of one or more claims of each of the patents identified in Paragraph 113 of this Complaint by making, using, offering to sell, or selling the Accused DHL Services.

115.    On information and belief, the DHL Defendants continue to infringe, actively induce the infringement of, and contribute to the infringement of one or

KATZ'S AMENDED COMPLAINT                                    CASE NO. 07-ML-1816-B-RGK (FFMx)

1  more claims of the '120, '734, and '984 Patents by making, using, offering to sell, or
2  selling the Accused DHL Services.

3  116.   The DHL Defendants' infringement of the patents identified in
4  Paragraph 113 of this Complaint has been and is willful.

5  117.   The DHL Defendants' infringement has caused and will continue to
6  cause Katz Technology Licensing irreparable harm unless enjoined by this Court.
7  Katz Technology Licensing has no adequate remedy at law.

8  ### SIXTH CLAIM
9  ### (PATENT INFRINGEMENT BY CIGNA DEFENDANTS)

10  118.   Katz Technology Licensing realleges and incorporates by reference
11  Paragraphs 1-77 of this Complaint as if fully set forth herein.

12  119.   CIGNA Corporation, through, *inter alia*, its subsidiaries CIGNA Health
13  Corporation; CIGNA HealthCare of Delaware, Inc.; Tel-Drug, Inc.; and Tel-Drug of
14  Pennsylvania, LLC, offers health and other insurance-related products and services to
15  businesses and individuals throughout the United States.

16  120.   On information and belief, the CIGNA Defendants use infringing call
17  processing systems to offer automated customer service, prescription refill, and other
18  care management functions to their customers.  Using an automated system, in some
19  instances in connection with operators, the CIGNA Defendants allow their customers
20  to place and check the status of prescription refill orders, inquire about pharmacy and
21  prescription information, access information regarding their health insurance and
22  prescription plans and benefits, and perform various other functions.  In addition, the
23  CIGNA defendants allow a physician or medical office to submit new prescriptions
24  and authorize refills, obtain claim status and other plan information, and perform
25  various other functions.

26  121.   Katz Technology Licensing is the sole holder of the entire right, title,
27  and interest in the '065, '120, '134, '150, '156, '223, '252, '285, '309, '360, '415,
28  '551, '707, '734, '762, '863, '893, '965, '968 and '984 Patents.

122.   On information and belief, in their automated customer service, prescription refill, and other care management functions described in Paragraph 120 (collectively, the "Accused CIGNA Services"), the CIGNA Defendants have been and are now infringing, actively inducing the infringement of, or contributing to the infringement of one or more claims of each of the patents identified in Paragraph 121 of this Complaint by making, using, offering to sell, or selling the Accused CIGNA Services.

123.   On information and belief, the CIGNA Defendants continue to infringe, actively induce the infringement of, and contribute to the infringement of one or more claims of the '120, '252, '734, and '984 Patents by making, using, offering to sell, or selling the Accused CIGNA Services.

124.   The CIGNA Defendants' infringement of the patents identified in Paragraph 121 of this Complaint has been and is willful.

125.   The CIGNA Defendants' infringement has caused and will continue to cause Katz Technology Licensing irreparable harm unless enjoined by this Court. Katz Technology Licensing has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Ronald A. Katz Technology Licensing, L.P., respectfully requests that this Court enter judgment in its favor and against the defendants and grant the following relief:

1.   Adjudge that the AIG Defendants have been and are infringing one or more claims of the patents identified in Paragraph 81 of this Complaint by offering the Accused AIG Services;

2.   Adjudge that the AIG Defendants' infringement has been and is willful;

3.   Enter an order, pursuant to 35 U.S.C. § 283, temporarily, preliminarily, and permanently enjoining the AIG Defendants, and all persons in active concert or participation with them, from any further acts of infringement,

contributory infringement, or inducement of infringement of the '120, '252, '734, and '984 Patents;

      4.    Order an accounting for damages resulting from the AIG Defendants' infringement of the patents identified in Paragraph 81 of this Complaint;

      5.    Enter an order, pursuant to 35 U.S.C. § 284, awarding to Katz Technology Licensing damages adequate to compensate Katz Technology Licensing for the AIG Defendants' infringement, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest;

      6.    Enter an order, pursuant to 35 U.S.C. § 284, and based on the AIG Defendants' willful infringement, trebling all damages awarded to Katz Technology Licensing and against the AIG Defendants;

      7.    Adjudge that the National City Defendants have been and are infringing one or more claims of the patents identified in Paragraph 89 of this Complaint by offering the Accused National City Services;

      8.    Adjudge that the National City Defendants' infringement has been and is willful;

      9.    Enter an order, pursuant to 35 U.S.C. § 283, temporarily, preliminarily, and permanently enjoining the National City Defendants, and all persons in active concert or participation with them, from any further acts of infringement, contributory infringement, or inducement of infringement of the '120, '252, '734, and '984 Patents;

      10.    Order an accounting for damages resulting from the National City Defendants' infringement of the patents identified in Paragraph 89 of this Complaint;

      11.    Enter an order, pursuant to 35 U.S.C. § 284, awarding to Katz Technology Licensing damages adequate to compensate Katz Technology Licensing for the National City Defendants' infringement, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest;

12.     Enter an order, pursuant to 35 U.S.C. § 284, and based on the National City Defendants' willful infringement, trebling all damages awarded to Katz Technology Licensing and against the National City Defendants;

13.     Adjudge that the Wilmington Trust Defendants have been and are infringing one or more claims of the patents identified in Paragraph 97 of this Complaint by offering the Accused Wilmington Trust Services;

14.     Adjudge that the Wilmington Trust Defendants' infringement has been and is willful;

15.     Enter an order, pursuant to 35 U.S.C. § 283, temporarily, preliminarily, and permanently enjoining the Wilmington Trust Defendants, and all persons in active concert or participation with them, from any further acts of infringement, contributory infringement, or inducement of infringement of the '120, '252, '734, and '984 Patents;

16.     Order an accounting for damages resulting from the Wilmington Trust Defendants' infringement of the patents identified in Paragraph 97 of this Complaint;

17.     Enter an order, pursuant to 35 U.S.C. § 284, awarding to Katz Technology Licensing damages adequate to compensate Katz Technology Licensing for the Wilmington Trust Defendants' infringement, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest;

18.     Enter an order, pursuant to 35 U.S.C. § 284, and based on the Wilmington Trust Defendants' willful infringement, trebling all damages awarded to Katz Technology Licensing and against the Wilmington Trust Defendants;

19.     Adjudge that Aquila has been and is infringing one or more claims of the patents identified in Paragraph 105 of this Complaint by offering the Accused Aquila Services;

20.     Adjudge that Aquila's infringement has been and is willful;

KATZ'S AMENDED COMPLAINT                                CASE NO. 07-ML-1816-B-RGK (FFMx)

21.    Enter an order, pursuant to 35 U.S.C. § 283, temporarily, preliminarily, and permanently enjoining Aquila, and all persons in active concert or participation with it, from any further acts of infringement, contributory infringement, or inducement of infringement of the '120 and '734 Patents;

22.    Order an accounting for damages resulting from Aquila's infringement of the patents identified in Paragraph 105 of this Complaint;

23.    Enter an order, pursuant to 35 U.S.C. § 284, awarding to Katz Technology Licensing damages adequate to compensate Katz Technology Licensing for Aquila's infringement, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest;

24.    Enter an order, pursuant to 35 U.S.C. § 284, and based on Aquila's willful infringement, trebling all damages awarded to Katz Technology Licensing and against Aquila;

25.    Adjudge that the DHL Defendants have been and are infringing one or more claims of the patents identified in Paragraph 113 of this Complaint by offering the Accused DHL Services;

26.    Adjudge that the DHL Defendants' infringement has been and is willful;

27.    Enter an order, pursuant to 35 U.S.C. § 283, temporarily, preliminarily, and permanently enjoining the DHL Defendants, and all persons in active concert or participation with them, from any further acts of infringement, contributory infringement, or inducement of infringement of the '120, '734, and '984 Patents;

28.    Order an accounting for damages resulting from the DHL Defendants' infringement of the patents identified in Paragraph 113 of this Complaint;

29.    Enter an order, pursuant to 35 U.S.C. § 284, awarding to Katz Technology Licensing damages adequate to compensate Katz Technology Licensing

for the DHL Defendants' infringement, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest;

30.     Enter an order, pursuant to 35 U.S.C. § 284, and based on the DHL Defendants' willful infringement, trebling all damages awarded to Katz Technology Licensing and against the DHL Defendants;

31.     Adjudge that the CIGNA Defendants have been and are infringing one or more claims of the patents identified in Paragraph 121 of this Complaint by offering the Accused CIGNA Services;

32.     Adjudge that the CIGNA Defendants' infringement has been and is willful;

33.     Enter an order, pursuant to 35 U.S.C. § 283, temporarily, preliminarily, and permanently enjoining the CIGNA Defendants, and all persons in active concert or participation with them, from any further acts of infringement, contributory infringement, or inducement of infringement of the '120, '252, '734, and '984 Patents;

34.     Order an accounting for damages resulting from the CIGNA Defendants' infringement of the patents identified in Paragraph 121 of this Complaint;

35.     Enter an order, pursuant to 35 U.S.C. § 284, awarding to Katz Technology Licensing damages adequate to compensate Katz Technology Licensing for the CIGNA Defendants' infringement, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest;

36.     Enter an order, pursuant to 35 U.S.C. § 284, and based on the CIGNA Defendants' willful infringement, trebling all damages awarded to Katz Technology Licensing and against the CIGNA Defendants;

37.     Enter an order, pursuant to 35 U.S.C. § 285, finding that this is an exceptional case and awarding to Katz Technology Licensing its reasonable attorneys' fees incurred in this action; and

1    38.   Award such other relief as the Court may deem appropriate and

2  just under the circumstances.

3  ### JURY DEMAND

4    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the

5  Seventh Amendment to the Constitution of the United States, Plaintiff demands a

6  trial by jury of all claims and all issues triable as of right by jury in this action.

7

8  DATED: January 15, 2008          HELLER EHRMAN LLP

9

10          By   /s/ *Robert T. Haslam*

11          Robert T. Haslam
           Attorneys for Plaintiff RONALD A. KATZ

12          TECHNOLOGY LICENSING, L.P.

13

14  s

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KATZ'S AMENDED COMPLAINT                    CASE NO. 07-ML-1816-B-RGK (FFMx)