1  BRIAN E. FERGUSON (admitted pro hac vice), bferguson@mwe.com
   JOEL M. FREED (admitted pro hac vice), jfreed@mwe.com
2  RAPHAEL P. LUPO (admitted pro hac vice), rlupo@mwe.com
   McDERMOTT WILL & EMERY LLP
3  600 13th Street, N.W.
   Washington, D.C.  20005-3096
4  Telephone: 202-756-8000, Facsimile: 202.756.8087

5  Attorneys for The AIG Defendants

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10  _____  )
                                      )
11  *In Re Katz Interactive Call*     )
    *Processing Litigation*           )   Case No. CV-07-ML-1816-B-RGK
12                                    )          (FFMx)
    _____  )
13                                    )
                                      )   THE AIG DEFENDANTS'
14  **Ronald A. Katz Technology**     )   ANSWER AND COUNTERCLAIMS
    **Licensing L.P.**                )   TO PLAINTIFF RONALD A. KATZ
15                                    )   TECHNOLOGY LICENSING,
              **v.**                  )   L.P.'S AMENDED COMPLAINT
16  **American International Group, Inc.,** )   AND DEMAND FOR JURY TRIAL
    **et. al.,**                      )
17                                    )
    **CV-07-2192 RGK (FFMx)**         )
18  _____  )

19

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Defendants American International Group, Inc.; AIG Retirement Services,

2 Inc.; 21st Century Insurance Group; 21st Century Insurance Company; 21st

3 Century Casualty Company; AIG Marketing, Inc.; AIG SunAmerica Asset

4 Management Corp.; AIG Annuity Insurance Company; AIG Federal Savings Bank;

5 The United States Life Insurance Company in the City of New York; AIG Life

6 Insurance Company; American General Assurance Company; American General

7 Indemnity Company; American General Life and Accident Insurance Company;

8 American General Life Insurance Company; The Variable Annuity Life Insurance

9 Company; VALIC Financial Advisors, Inc.; and VALIC Retirement Services

10 Company (collectively "AIG Defendants") respectfully submit this answer and

11 affirmative defenses to the original complaint filed by Ronald A. Katz Technology

12 Licensing, L.P. ("Katz"), as well as their counterclaims against Katz, and state as

13 follows:

14                **THE PARTIES**

15    1.    The AIG Defendants lack sufficient knowledge or information to

16 either admit or deny the truth of the allegations in paragraph 1, which statement has

17 the effect of a denial of these allegations.

18    2.    The AIG Defendants admit that American International Group, Inc. is

19 a Delaware corporation with a place of business at 70 Pine Street, New York, New

20 York 10270.

21    3.    The AIG Defendants admit that AIG Retirement Services, Inc. is a

22 Delaware corporation with a place of business at One SunAmerica Center, Los

23 Angeles, California 90067, and is a subsidiary of American International Group,

24 Inc.

25    4.    The AIG Defendants admit that 21st Century Insurance Group is a

26 Delaware corporation with a place of business at 6301 Owensmouth Avenue,

27 Woodland Hills, California 91367, and is a subsidiary of American International

28 Group, Inc.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

5.    The AIG Defendants admit that 21st Century Insurance Company is a California corporation with a place of business at 6301 Owensmouth Avenue, Woodland Hills, California 91367, and is a subsidiary of American International Group, Inc.

6.    The AIG Defendants admit that 21st Century Casualty Company is a California corporation with a place of business at 6301 Owensmouth Avenue, Woodland Hills, California 91367, and is a subsidiary of American International Group, Inc.

7.    The AIG Defendants admit that AIG Marketing, Inc. is a Delaware corporation with a place of business at One AIG Center, Wilmington, Delaware 19803, and is a subsidiary of American International Group, Inc.

8.    The AIG Defendants admit that AIG SunAmerica Asset Management Corp. is a Delaware corporation with a place of business at 733 Third Avenue, New York, New York 10017, and is an indirect subsidiary of American International Group, Inc.

9.    The AIG Defendants admit that AIG Annuity Insurance Company is a Texas corporation with a place of business at 2929 Allen Parkway, Houston, Texas 77019, and is an indirect subsidiary of American International Group, Inc.

10.    The AIG Defendants admit that AIG Federal Savings Bank is a federal savings bank with a place of business at 704 King Street, Wilmington, Delaware 19801, and is an indirect subsidiary of American International Group, Inc.

11.    The AIG Defendants admit that The United States Life Insurance Company in the City of New York is a New York corporation with a place of business at 830 Third Avenue, New York, New York 10022, and is an indirect subsidiary of American International Group, Inc.

12.    The AIG Defendants admit that AIG Life Insurance Company is a Delaware corporation with a place of business at One ALICO Plaza, Wilmington,

Delaware 19899, and is an indirect subsidiary of American International Group, Inc.

13.     The AIG Defendants admit that American General Assurance Company is an Illinois corporation with a place of business at 1000 Woodfield Road, Schaumburg, Illinois 60173, and is an indirect subsidiary of American International Group, Inc.

14.     The AIG Defendants admit that American General Indemnity Company is an Illinois corporation with a place of business at 1000 Woodfield Road, Schaumburg, Illinois 60173, and is an indirect subsidiary of American International Group, Inc.

15.     The AIG Defendants admit that American General Life and Accident Insurance Company is a Tennessee corporation with a place of business at American General Center – MC 338N, Nashville, Tennessee 37250, and is an indirect subsidiary of American International Group, Inc.

16.     The AIG Defendants admit that American General Life Insurance Company is a Texas corporation with a place of business at 2727-A Allen Parkway, Houston, Texas 77251, and is an indirect subsidiary of American International Group, Inc.

17.     The AIG Defendants admit that The Variable Annuity Life Insurance Company is a Texas corporation with a place of business at 2929 Allen Parkway, Houston, Texas 77019, and is an indirect subsidiary of American International Group, Inc.

18.     The AIG Defendants admit that VALIC Financial Advisors, Inc. is a Texas corporation with a place of business at 2929 Allen Parkway, Houston, Texas 77019, and is an indirect subsidiary of American International Group, Inc.

19.     The AIG Defendants admit that VALIC Retirement Services Company is a Texas corporation with a place of business at 2929 Allen Parkway, Houston, Texas 77019, and is an indirect subsidiary of American International Group, Inc.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

20.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 20, which statement has the effect of a denial of these allegations.

21.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 21, which statement has the effect of a denial of these allegations.

22.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 22, which statement has the effect of a denial of these allegations.

23.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 23, which statement has the effect of a denial of these allegations.

24.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 24, which statement has the effect of a denial of these allegations.

25.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 25, which statement has the effect of a denial of these allegations.

26.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 26, which statement has the effect of a denial of these allegations.

27.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 27, which statement has the effect of a denial of these allegations.

28.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 28, which statement has the effect of a denial of these allegations.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

29.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 29, which statement has the effect of a denial of these allegations.

30.      The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 30, which statement has the effect of a denial of these allegations.

31.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 31, which statement has the effect of a denial of these allegations.

32.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 32, which statement has the effect of a denial of these allegations.

33.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 33, which statement has the effect of a denial of these allegations.

## JURISDICTION AND VENUE

34.     The AIG Defendants admit that Katz purports to bring a civil action arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*  The AIG Defendants do not contest this Court's jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

35.     The AIG Defendants deny any patent infringement and in particular deny that the AIG Defendants operate infringing automated call processing systems in the District of Delaware or elsewhere.  The AIG Defendants admit that American International Group, Inc., AIG Retirement Services, Inc., 21st Century Insurance Group, AIG Marketing, Inc., AIG SunAmerica Asset Management Corp., AIG Federal Savings Bank, and AIG Life Insurance Company are subject to personal jurisdiction in the United States District Court for the District of Delaware.  The AIG Defendants deny that 21st Century Insurance Company, 21st Century Casualty

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1  Company, AIG Annuity Insurance Company, The United States Life Insurance
2  Company in the City of New York, American General Assurance Company,
3  American General Indemnity Company, American General Life and Accident
4  Insurance Company, American General Life Insurance Company, The Variable
5  Annuity Life Insurance Company, VALIC Financial Advisors, Inc., and VALIC
6  Retirement Services Company are subject to personal jurisdiction in the United
7  States District Court for the District of Delaware.

8      36.    The AIG Defendants lack sufficient knowledge or information to
9  either admit or deny the truth of the allegations in paragraph 36, which statement
10  has the effect of a denial of these allegations.

11      37.    The AIG Defendants lack sufficient knowledge or information to
12  either admit or deny the truth of the allegations in paragraph 37, which statement
13  has the effect of a denial of these allegations.

14      38.    The AIG Defendants lack sufficient knowledge or information to
15  either admit or deny the truth of the allegations in paragraph 38, which statement
16  has the effect of a denial of these allegations.

17      39.    The AIG Defendants lack sufficient knowledge or information to
18  either admit or deny the truth of the allegations in paragraph 39, which statement
19  has the effect of a denial of these allegations.

20      40.    The AIG Defendants lack sufficient knowledge or information to
21  either admit or deny the truth of the allegations in paragraph 40, which statement
22  has the effect of a denial of these allegations.

23      41.    The AIG Defendants admit that venue is proper in the District of
24  Delaware with respect to American International Group, Inc., AIG Retirement
25  Services, Inc., 21st Century Insurance Group, AIG Marketing, Inc., AIG
26  SunAmerica Asset Management Corp., AIG Federal Savings Bank, and AIG Life
27  Insurance Company.  The AIG Defendants deny that venue is proper in the District
28  of Delaware with respect to 21st Century Insurance Company, 21st Century

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Casualty Company, AIG Annuity Insurance Company, The United States Life
Insurance Company in the City of New York, American General Assurance
Company, American General Indemnity Company, American General Life and
Accident Insurance Company, American General Life Insurance Company, The
Variable Annuity Life Insurance Company, VALIC Financial Advisors, Inc., and
VALIC Retirement Services Company.  The AIG Defendants lack sufficient
knowledge or information regarding the other defendants, which statement has the
effect of a denial of these allegations.

## BACKGROUND

42.     The AIG Defendants lack sufficient knowledge or information to
either admit or deny the truth of the allegation that Ronald A. Katz ("Mr. Katz") is
the founder of Katz Technology Licensing, which statement has the effect of a
denial of this allegation.  The AIG Defendants deny all remaining allegations in
paragraph 42.

43.     The AIG Defendants lack sufficient knowledge or information to
either admit or deny the truth of the allegation that Mr. Katz co-founded Telecredit,
Inc., which statement has the effect of a denial of this allegation.  The AIG
Defendants deny all remaining allegations in paragraph 43.

44.     The AIG Defendants admit that Certegy is a public company traded on
the New York Stock Exchange.  The AIG Defendants lack sufficient knowledge or
information to either admit or deny the truth of the remaining allegations in
paragraph 44, which statement has the effect of a denial of these allegations.

45.     The AIG Defendants deny the allegations in paragraph 45.

46.     The AIG Defendants lack sufficient knowledge or information to
either admit or deny the truth of the allegations in paragraph 46, which statement
has the effect of a denial of these allegations.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

47.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 47, which statement has the effect of a denial of these allegations.

48.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 48, which statement has the effect of a denial of these allegations.

49.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 49, which statement has the effect of a denial of these allegations.

50.     The AIG Defendants admit that a company known as First Data Voice Services purports to provide "highly scalable Interactive Voice Response (IVR) services," "Automated Customer Care Solutions," "Intelligent Outbound Solutions – 2Way-Connect SM," "Call Routing – CTI," "Analytics," and "Deployment Options."[1]  The AIG Defendants further stipulate that First Data Voice Services purports to "develop[] and host[] outsourced, automated voice applications from a secure, world-class, redundant set of network facilities."[2]  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 50, which statement has the effect of a denial of these allegations.

51.     On information and belief, Katz and First Data Resources Inc. entered into a License and Covenant Not to Sue under which First Data Corporation is licensed to the Katz asserted patents.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remainder of the allegations in paragraph 51, which statement has the effect of a denial of these allegations.

---

[1] http://www.fdvs.com/FDVSsite/products/default.aspx
[2] http://www.fdvs.com/FDVSsite/products/default.aspx

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

52.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 52, which statement has the effect of a denial of these allegations.

53.     The AIG Defendants deny infringement of any of the Katz asserted patents.  The AIG Defendants admit that they have not agreed to license any of the Katz asserted patents.  On information and belief, the AIG Defendants deny that either Katz Technology Licensing or A2D, L.P. have attempted to engage each of the AIG Defendants in licensing negotiations.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 53, which statement has the effect of a denial of these allegations.

## THE ASSERTED PATENTS

54.     The AIG Defendants admit that, on December 20, 1988, U.S. Patent No. 4,792,968 ("the '968 patent") entitled "Statistical Analysis System For Use With Public Communication Facility" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 54, which statement has the effect of a denial of these allegations.

55.     The AIG Defendants admit that, on May 29, 1990, U.S. Patent No. 4,930,150 ("the '150 patent") entitled "Telephonic Interface Control System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 55, which statement has the effect of a denial of these allegations.

56.     The AIG Defendants admit that, on July 7, 1992, U.S. Patent No. 5,128,984 ("the '984 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the

THE AIG DEFENDANTS' ANSWER AND COUNTERCLAIMS TO RAKTL'S AMENDED COMPLAINT

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    remaining allegations in paragraph 56, which statement has the effect of a denial of
2    these allegations.

3            57.    The AIG Defendants admit that, on October 5, 1993, U.S. Patent No.
4    5,251,252 ("the '252 patent") entitled "Telephone Interface Call Processing System
5    With Call Selectivity" was issued to Ronald A. Katz.  The AIG Defendants lack
6    sufficient knowledge or information to either admit or deny the truth of the
7    remaining allegations in paragraph 57, which statement has the effect of a denial of
8    these allegations.

9            58.    The AIG Defendants admit that, on October 19, 1993, U.S. Patent No.
10   5,255,309 ("the '309 patent") entitled "Telephonic-Interface Statistical Analysis
11   System" was issued Ronald A. Katz.  The AIG Defendants lack sufficient
12   knowledge or information to either admit or deny the truth of the remaining
13   allegations in paragraph 58, which statement has the effect of a denial of these
14   allegations.

15           59.    The AIG Defendants admit that, on September 27, 1994, U.S. Patent
16   No. 5,351,285 ("the '285 patent") entitled "Multiple Format Telephonic Interface
17   Control System" was issued to Ronald A. Katz.  The AIG Defendants lack
18   sufficient knowledge or information to either admit or deny the truth of the
19   remaining allegations in paragraph 59, which statement has the effect of a denial of
20   these allegations.

21           60.    The AIG Defendants admit that, on October 1, 1996, U.S. Patent No.
22   5,561,707 ("the '707 patent") entitled "Telephonic-Interface Statistical Analysis
23   System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient
24   knowledge or information to either admit or deny the truth of the remaining
25   allegations in paragraph 60, which statement has the effect of a denial of these
26   allegations.

27           61.    The AIG Defendants admit that, on November 4, 1997, U.S. Patent
28   No. 5,684,863 ("the '863 patent") entitled "Telephonic-Interface Statistical

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

THE AIG DEFENDANTS' ANSWER AND COUNTERCLAIMS
TO RAKTL'S AMENDED COMPLAINT

1   Analysis System" was issued to Ronald A. Katz.  The AIG Defendants lack

2   sufficient knowledge or information to either admit or deny the truth of the

3   remaining allegations in paragraph 61, which statement has the effect of a denial of

4   these allegations.

5           62.     The AIG Defendants admit that, on July 28, 1998, U.S. Patent No.

6   5,787,156 ("the '156 patent") entitled "Telephonic-Interface Lottery System" was

7   issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or

8   information to either admit or deny the truth of the remaining allegations in

9   paragraph 62, which statement has the effect of a denial of these allegations.

10          63.     The AIG Defendants admit that, on September 29, 1998, U.S. Patent

11  No. 5,815,551 ("the '551 patent") entitled "Telephonic-Interface Statistical

12  Analysis System" was issued to Ronald A. Katz.  The AIG Defendants lack

13  sufficient knowledge or information to either admit or deny the truth of the

14  remaining allegations in paragraph 63, which statement has the effect of a denial of

15  these allegations.

16          64.     The AIG Defendants admit that, on October 27, 1998, U.S. Patent No.

17  5,828,734 ("the '734 patent") entitled "Telephone Interface Call Processing System

18  With Call Selectivity" was issued to Ronald A. Katz.  The AIG Defendants lack

19  sufficient knowledge or information to either admit or deny the truth of the

20  remaining allegations in paragraph 64, which statement has the effect of a denial of

21  these allegations.

22          65.     The AIG Defendants admit that, on April 27, 1999, U.S. Patent No.

23  5,898,762 ("the '762 patent") entitled "Telephonic-Interface Statistical Analysis

24  System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient

25  knowledge or information to either admit or deny the truth of the remaining

26  allegations in paragraph 65, which statement has the effect of a denial of these

27  allegations.

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

66.     The AIG Defendants admit that, on June 29, 1999, U.S. Patent No. 5,917,893 ("the '893 patent") entitled "Multiple Format Telephonic Interface Control System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 66, which statement has the effect of a denial of these allegations.

67.     The AIG Defendants admit that, on October 26, 1999, U.S. Patent No. 5,974,120 ("the '120 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 67, which statement has the effect of a denial of these allegations.

68.     The AIG Defendants admit that, on March 7, 2000, U.S. Patent No. 6,035,021 ("the '021 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 68, which statement has the effect of a denial of these allegations.

69.     The AIG Defendants admit that, on March 28, 2000, U.S. Patent No. 6,044,135 ("the '135 patent") entitled "Telephone-Interface Lottery System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 69, which statement has the effect of a denial of these allegations.

70.     The AIG Defendants admit that, on November 14, 2000, U.S. Patent No. 6,148,065 ("the '065 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**THE AIG DEFENDANTS' ANSWER AND COUNTERCLAIMS
TO RAKTL'S AMENDED COMPLAINT**

1    remaining allegations in paragraph 70, which statement has the effect of a denial of

2    these allegations.

3         71.    The AIG Defendants admit that, on September 18, 2001, U.S. Patent

4    No. 6,292,547 ("the '547 patent") entitled "Telephonic-Interface Statistical

5    Analysis System" was issued to Ronald A. Katz.  The AIG Defendants lack

6    sufficient knowledge or information to either admit or deny the truth of the

7    remaining allegations in paragraph 71, which statement has the effect of a denial of

8    these allegations.

9         72.    The AIG Defendants admit that, on January 1, 2002, U.S. Patent No.

10   6,335,965 ("the '965 patent") entitled "Voice-Data Telephonic Interface Control

11   System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient

12   knowledge or information to either admit or deny the truth of the remaining

13   allegations in paragraph 72, which statement has the effect of a denial of these

14   allegations.

15        73.    The AIG Defendants admit that, on February 19, 2002, U.S. Patent No.

16   6,349,134 ("the '134 patent") entitled "Telephonic-Interface Statistical Analysis

17   System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient

18   knowledge or information to either admit or deny the truth of the remaining

19   allegations in paragraph 73, which statement has the effect of a denial of these

20   allegations.

21        74.    The AIG Defendants admit that, on July 23, 2002, U.S. Patent No.

22   6,424,703 ("the '703 patent") entitled "Telephonic-Interface Lottery System" was

23   issued to Ronald A. Katz.   The AIG Defendants lack sufficient knowledge or

24   information to either admit or deny the truth of the remaining allegations in

25   paragraph 74, which statement has the effect of a denial of these allegations.

26        75.    The AIG Defendants admit that, on August 13, 2002, U.S. Patent No.

27   6,434,223 ("the '223 patent") entitled "Telephone Interface Call Processing System

28   With Call Selectivity" was issued to Ronald A. Katz.  The AIG Defendants lack

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1  sufficient knowledge or information to either admit or deny the truth of the

2  remaining allegations in paragraph 75, which statement has the effect of a denial of

3  these allegations.

4      76.    The AIG Defendants admit that, on January 28, 2003, U.S. Patent No.

5  6,512,415 ("the '415 patent") entitled "Telephonic-Interface Game Control

6  System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient

7  knowledge or information to either admit or deny the truth of the remaining

8  allegations in paragraph 76, which statement has the effect of a denial of these

9  allegations.

10     77.    The AIG Defendants admit that, on January 13, 2004, U.S. Patent No.

11  6,678,360 ("the '360 patent") entitled "Telephonic-Interface Statistical Analysis

12  System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient

13  knowledge or information to either admit or deny the truth of the remaining

14  allegations in paragraph 77, which statement has the effect of a denial of these

15  allegations.

### FIRST CLAIM
### (KATZ'S PATENT INFRINGEMENT ALLEGATIONS AGAINST AIG DEFENDANTS)

18     78.    The AIG Defendants incorporate by reference their responses to

19  paragraphs 1-77 as though fully set forth herein.

20     79.    The AIG Defendants admit that the AIG Defendants provide

21  insurance, banking, investment and other financial services.

22     80.    The AIG Defendants deny the allegations in paragraph 80.

23     81.    The AIG Defendants lack sufficient knowledge or information to

24  either admit or deny the truth of the allegations in paragraph 81, which statement

25  has the effect of a denial of these allegations.

26     82.    The AIG Defendants deny the allegations in paragraph 82.

27     83.    The AIG Defendants deny the allegations in paragraph 83.

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

84.     The AIG Defendants deny the allegations in paragraph 84.

85.     The AIG Defendants deny the allegations in paragraph 85.

**SECOND CLAIM**
**(KATZ'S PATENT INFRINGEMENT ALLEGATIONS**
**AGAINST NATIONAL CITY DEFENDANTS)**

86.     The AIG Defendants incorporate by reference their responses to paragraphs 1-85 as though fully set forth herein.

87.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 87, which statement has the effect of a denial of these allegations.

88.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 88, which statement has the effect of a denial of these allegations.

89.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 89, which statement has the effect of a denial of these allegations.

90.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 90, which statement has the effect of a denial of these allegations.

91.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 91, which statement has the effect of a denial of these allegations.

92.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 92, which statement has the effect of a denial of these allegations.

93.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 93, which statement has the effect of a denial of these allegations.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## THIRD CLAIM
### (KATZ'S PATENT INFRINGEMENT ALLEGATIONS AGAINST WILMINGTON TRUST DEFENDANTS)

94.     The AIG Defendants incorporate by reference their responses to paragraphs 1-93 as though fully set forth herein.

95.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 95, which statement has the effect of a denial of these allegations.

96.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 96, which statement has the effect of a denial of these allegations.

97.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 97, which statement has the effect of a denial of these allegations.

98.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 98, which statement has the effect of a denial of these allegations.

99.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 99, which statement has the effect of a denial of these allegations.

100.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 100, which statement has the effect of a denial of these allegations.

101.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 101, which statement has the effect of a denial of these allegations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## FOURTH CLAIM

## (KATZ'S PATENT INFRINGEMENT ALLEGATIONS AGAINST AQUILA)

102.   The AIG Defendants incorporate by reference their responses to paragraphs 1-101 as though fully set forth herein.

103.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 103, which statement has the effect of a denial of these allegations.

104.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 104, which statement has the effect of a denial of these allegations.

105.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 105, which statement has the effect of a denial of these allegations.

106.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 106, which statement has the effect of a denial of these allegations.

107.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 107, which statement has the effect of a denial of these allegations.

108.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 108, which statement has the effect of a denial of these allegations.

109.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 109, which statement has the effect of a denial of these allegations.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**FIFTH CLAIM**
**(KATZ'S PATENT INFRINGEMENT ALLEGATIONS**
**AGAINST DHL DEFENDANTS)**

110.   The AIG Defendants incorporate by reference their responses to paragraphs 1-109 as though fully set forth herein.

111.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 111, which statement has the effect of a denial of these allegations.

112.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 112, which statement has the effect of a denial of these allegations.

113.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 113, which statement has the effect of a denial of these allegations.

114.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 114, which statement has the effect of a denial of these allegations.

115.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 115, which statement has the effect of a denial of these allegations.

116.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 116, which statement has the effect of a denial of these allegations.

117.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 117, which statement has the effect of a denial of these allegations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## SIXTH CLAIM
## (KATZ'S PATENT INFRINGEMENT ALLEGATIONS
## AGAINST THE CIGNA DEFENDANTS)

118.   The AIG Defendants incorporate by reference their responses to paragraphs 1-117 as though fully set forth herein.

119.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 119, which statement has the effect of a denial of these allegations.

120.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 120, which statement has the effect of a denial of these allegations.

121.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 121, which statement has the effect of a denial of these allegations.

122.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 122, which statement has the effect of a denial of these allegations.

123.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 123, which statement has the effect of a denial of these allegations.

124.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 124, which statement has the effect of a denial of these allegations.

125.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 125, which statement has the effect of a denial of these allegations.

126.   The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 126, which statement has the effect of a denial of these allegations.

### KATZ'S REQUEST FOR RELIEF

As to the requests for relief directed toward the AIG Defendants, the AIG Defendants deny that Katz is entitled to any relief whatsoever.

### THE AIG DEFENDANTS' AFFIRMATIVE DEFENSES

### First Affirmative Defense

1.   Katz is not entitled to any relief against the AIG Defendants because the AIG Defendants are not infringing, and have not infringed, directly, by inducement, contributorily, or in any way, any valid and asserted claim of the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents (collectively, the "Katz asserted patents").

### Second Affirmative Defense

2.   The '065 patent and all of the claims in the '065 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112..

### Third Affirmative Defense

3.   The '120 patent and all of the claims in the '120 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

### Fourth Affirmative Defense

4.   The '134 patent and all of the claims in the '134 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

### Fifth Affirmative Defense

2      5.      The '150 patent and all of the claims in the '150 patent are invalid

3 under one or more sections of Title 35 of the U.S. Code, including, without

4 limitation, 35 U.S.C. §§ 102, 103, and 112.

5

### Sixth Affirmative Defense

6      6.      The '223 patent and all of the claims in the '223 patent are invalid

7 under one or more sections of Title 35 of the U.S. Code, including, without

8 limitation, 35 U.S.C. §§ 102, 103, and 112.

9

### Seventh Affirmative Defense

10      7.      The '252 patent and all of the claims in the '252 patent are invalid

11 under one or more sections of Title 35 of the U.S. Code, including, without

12 limitation, 35 U.S.C. §§ 102, 103, and 112.

13

### Eighth Affirmative Defense

14      8.      The '285 patent and all of the claims in the '285 patent are invalid

15 under one or more sections of Title 35 of the U.S. Code, including, without

16 limitation, 35 U.S.C. §§ 102, 103, and 112.

17

### Ninth Affirmative Defense

18      9.      The '309 patent and all of the claims in the '309 patent are invalid

19 under one or more sections of Title 35 of the U.S. Code, including, without

20 limitation, 35 U.S.C. §§ 102, 103, and 112.

21

### Tenth Affirmative Defense

22      10.      The '360 patent and all of the claims in the '360 patent are invalid

23 under one or more sections of Title 35 of the U.S. Code, including, without

24 limitation, 35 U.S.C. §§ 102, 103, and 112.

25

### Eleventh Affirmative Defense

26      11.      The '547 patent and all of the claims in the '547 patent are invalid

27 under one or more sections of Title 35 of the U.S. Code, including, without

28 limitation, 35 U.S.C. §§ 102, 103, and 112.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## Twelfth Affirmative Defense

12.    The '551 patent and all of the claims in the '551 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

## Thirteenth Affirmative Defense

13.    The '707 patent and all of the claims in the '707 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

## Fourteenth Affirmative Defense

14.    The '734 patent and all of the claims in the '734 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

## Fifteenth Affirmative Defense

15.    The '762 patent and all of the claims in the '762 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

## Sixteenth Affirmative Defense

16.    The '863 patent and all of the claims in the '863 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

## Seventeenth Affirmative Defense

17.    The '893 patent and all of the claims in the '893 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

## Eighteenth Affirmative Defense

18.    The '965 patent and all of the claims in the '965 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

### Nineteenth Affirmative Defense

19.     The '968 patent and all of the claims in the '968 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

### Twentieth Affirmative Defense

20.     The '984 patent and all of the claims in the '984 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

### Twenty-First Affirmative Defense

21.     On information and belief, Katz is estopped from asserting any interpretation of any of the claims of the Katz asserted patents that would be broad enough to cover any of the Accused AIG Systems, by reasons of statements and representations made by the inventor to the United States Patent and Trademark Office ("USPTO") during the prosecution of applications for issuance of the Katz asserted patents, or by reasons of prior acts.

### Twenty-Second Affirmative Defense

22.     On information and belief, the Katz asserted patents are unenforceable under the doctrine of prosecution laches.

### Twenty-Third Affirmative Defense

23.     On information and belief, personal jurisdiction over 21st Century Insurance Company, 21st Century Casualty Company, AIG Annuity Insurance Company, The United States Life Insurance Company in the City of New York, American General Assurance Company, American General Indemnity Company, American General Life and Accident Insurance Company, American General Life Insurance Company, The Variable Annuity Life Insurance Company, VALIC Financial Advisors, Inc., and VALIC Retirement Services Company is lacking in the District of Delaware.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

### Twenty-Fourth Affirmative Defense

24.     On information and belief, the District of Delaware is not the proper venue for Katz's claims with respect to 21st Century Insurance Company, 21st Century Casualty Company, AIG Annuity Insurance Company, The United States Life Insurance Company in the City of New York, American General Assurance Company, American General Indemnity Company, American General Life and Accident Insurance Company, American General Life Insurance Company, The Variable Annuity Life Insurance Company, VALIC Financial Advisors, Inc., and VALIC Retirement Services Company.

### Twenty-Fifth Affirmative Defense

25.     On information and belief, Katz is barred in whole or in part from asserting the Katz asserted patents against the AIG Defendants under the doctrine of laches, equitable estoppel or both.

### Twenty-Sixth Affirmative Defense

26.     On information and belief, as to some or all of the Accused AIG Systems, Katz's claims for relief are barred by express and/or implied license.

### Twenty-Seventh Affirmative Defense

27.     On information and belief, Katz has not complied with the requirements of 35 U.S.C. § 287 and is precluded from seeking any recovery for alleged damages prior to the filing of this action.

### Twenty-Eighth Affirmative Defense

28.     The '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents are unenforceable due to inequitable conduct in their procurement in violation of duties imposed by 37 C.F.R. § 1.56.

29.     During the course of prosecuting the applications leading to the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents, the named inventor, Ronald A. Katz ("Mr.

Katz"), and his attorneys engaged in inequitable conduct by intentionally withholding material information, including prior art, from the USPTO.  As a result of that inequitable conduct, which is described more fully below, the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents are unenforceable.

### A. Failure to Disclose Material Prior Art

#### 1. Barger

30.    U.S. Patent No. 4,071,698 ("the Barger patent") issued on January 31, 1978, over seven years before the earliest possible effective filing date of the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents.

31.    In connection with an application filed by Mr. Katz to pursue foreign patents, the European Patent Office ("EPO") conducted a prior art search and documented the results of the search in a search report dated December 1988.  The EPO search report listed the Barger patent as a reference deemed to be "particularly relevant if taken alone."  The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO.

32.    On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

33.    Thereafter, on information and belief, in or about mid-1989, Mr. Katz and his attorneys negotiated the purchase of the Barger patent on behalf of First Data Corporation, which was then the assignee of the Katz patents.

34.    Mr. Katz and his attorneys did not disclose the Barger reference during the prosecution of at least the applications that led to the grant of U.S. Patent Nos. 4,845,739 ("the '739 patent"), 5,073,929 ("the '929 patent"), or the '309, '984, '252, '150, '285, or '965 patents.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

35.    The USPTO did not consider the Barger reference during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents.

36.    The Barger reference would have been material to the patentability of the applications that issued as the '739, '929, '309, '984, '252, '150, '285, and '965 patents at least because the Barger reference discloses a telephone-based system that screens a caller by checking the caller's account number to insure that a limit on use of the account number has not been exceeded.

37.    With respect to other Katz patents in the same or similar families as the Katz asserted patents, third parties have relied on the Barger patent to petition the USPTO to reexamine certain Katz patents, including the '707 patent and '547 patent.  An examiner rejected certain of Katz's pending claims in the '707 or '547 patent applications based in part on the teachings of the Barger patent, and the United States Patent and Trademark Office Board of Patent Appeals And Interferences ("BPAI") affirmed that rejection in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998), at 13.

38.    The '707 and '547 patents contain specifications substantially identical to that of the '739 patent.

39.    At all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

40.    On information and belief, at all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

41.     Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to properly disclose the Barger reference to the USPTO during the prosecution of the '739, '929, '309, '984, '252, '150, '285, and '965 patents.  On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

42.     As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents.  That inequitable conduct renders each of those patents unenforceable in its entirety.

43.     Each of the '893, '863, '734, '120, '223, '551, '065, '360, '762, '134, '547, and '707 patents is sufficiently related to at least one or more of the '739, '929, '309, '984, '252, '150, '285, and '965 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

44.     Specifically, the '863 patent is closely related to the '739 and '309 patents at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.  The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the qualification of callers for limited access to, or limits on the use of, the system or the qualification of callers based at least in part on the caller's telephone number.

45.     Further, the '893, '551, '065, '360, '762 and '134 patents are closely related to at least the '739 patent.  In fact, Mr. Katz has disclaimed for each of the '893, '551, '065, '360, '762, and '134 patents any term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the USPTO indicating that the claimed inventions were not patentably distinct.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

46.     The '734, '223 and '120 patents are closely related to the '984, '929, '739 and '252 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement, and/or claimed subject matter with common elements and overlapping scope.  The common elements reflect concepts that are disclosed in one or more of the withheld references, including claim limitations concerning the acceptance or qualification of callers based on a number such as limited-use number or the caller's telephone number.

47.     The '252, '150, '285, '965, '893, '863, '734, '120, '223, '551, '065, '360, '762, '984, '134, '309, '547, and '707 patents are therefore unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 2. De Bruyn

48.     The application for European Patent No. EP0032410, by De Bruyn, was first published in French by the EPO on July 22, 1981.  On February 14, 1984, the Canadian Patent Office issued corresponding Canadian Patent No. 1,162,336 ("the De Bruyn Canadian patent"), which included an English-language version of the original EPO specification.

49.     The EPO specification for De Bruyn was published nearly four years before the earliest possible effective filing date of the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents.  The Canadian De Bruyn Canadian patent was published more than one year before the earliest possible effective filing date of the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents.

50.     In connection with an application filed by Mr. Katz to pursue foreign patents, the EPO conducted a prior art search and documented the results of the search in a search report dated December 1988.  The EPO search report listed the De Bruyn Canadian patent as a reference deemed to be "particularly relevant if

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

taken alone." The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO.

51.     On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

52.     On information and belief, Mr. Katz and his attorneys were aware of the De Bruyn Canadian patent during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

53.     Mr. Katz and his attorneys did not disclose the De Bruyn Canadian patent during the prosecution of the applications that led to the grant of the '739, '929, '309, '984, '252, '150, and '285 patents.

54.     The USPTO did not consider the De Bruyn Canadian patent during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

55.     The De Bruyn Canadian patent would have been material to the patentability of the applications that issued as '739, '929, '309, '984, '252, '150, and '285 patents at least because the De Bruyn Canadian patent discloses a telephone lottery system that screens a caller by checking the caller's phone number, which has a limit on its use.

56.     Indeed, during the reexamination of the '707 patent, which has a specification substantially identical to the '739 patent, the USPTO issued an Office Action rejecting over seventy (70) claims of the '707 patent under 35 U.S.C. § 102(b), as being anticipated by the De Bruyn Canadian patent.

57.     The Director of the USPTO has relied on the substantively identical DeBruyn Canadian patent in ordering the reexamination of several of Katz's patents related to the Katz asserted patents, including the '707 patent, the '309 patent, and 5,259,023 ("the '023 patent").

58.     As to the '309 patent, for example, the Director stated: "In view of the teachings of [the DeBruyn Canadian Patent], a substantial new question of

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

patentability is raised as to claim 23 of the ['309 patent], and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate." Reexamination Control No. 90/006,976, Director Initiated Order For Reexamination mailed March 26, 2004, at 6.

59.     An examiner at the USPTO has determined that the DeBruyn Canadian patent anticipates at least claims 1, 2, 7, 8, 10, 21, and 22-27 of the '023 patent under 35 U.S.C. § 102(b).  Reexamination Control Nos. 90/006,977 and 90/007,058 [Merged Proceedings], Office Action mailed September 1, 2005, at 2-9. The examiner has also relied on the DeBruyn Canadian patent in rejecting claims 5, 6, 22, and 23 of the '023 patent under 35 U.S.C. § 103.  *Id.* at 24-26, 28.

60.     The examiner also has determined that the DeBruyn Canadian patent anticipates at least claims 23, 25-37, 41-43, 46, 50, and 51 of the '309 patent under 35 U.S.C. § 102(b).  Reexamination Control Nos. 90/006,976 and 90/007,092 [Merged Proceedings], Office Action mailed September 9, 2005, at 2, 9-19.  The examiner has also relied on the DeBruyn Canadian patent in rejecting claims 1, 7-12, 14, 20, 24, 32, 28-42, and 52-58 of the '309 patent under 35 U.S.C. § 103.  *Id.* at 2, 32-43.

61.     At all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, and '285 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

62.     On information and belief, at all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, and '285 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

63.     Despite the duties of candor, fair dealing and disclosure imposed on
them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to
disclose properly to the USPTO the De Bruyn Canadian patent during the
prosecution of the '739, '929, '309, '984, '252, '150, and '285 patents.  On
information and belief, they did so deliberately and with an intent to deceive the
USPTO and its officials.

64.     As a result of the above-described conduct, Mr. Katz and/or his
attorneys are guilty of inequitable conduct in the prosecution of the applications for
the '739, '929, '309, '984, '252, '150, and '285 patents.  That inequitable conduct
renders each of those patents unenforceable in its entirety.

65.     Each of the '893, '863, '734, '120, '223, '551, '065, '360, '762, '134,
'547, '965, and '707 patents is sufficiently related to one or more of the '739, '929,
'309, '984, '252, '150, and '285 patents to be rendered unenforceable as well under
the doctrine of infectious unenforceability.

66.     Specifically, the '863 patent is closely related to the '739 and '309
patents at least because it has a specification that is substantially the same, common
lineage, commons terms of enforcement and/or claimed subject matter with
common elements and overlapping scope.  The common elements reflect concepts
that are disclosed in one or more of the withheld references, such as the
qualification of callers for limited access to, or limits on the use of, the system or
the qualification of callers based at least in part on the caller's telephone number.

67.     Further, the '893, '551, '065, '360, '762 and '134 patents are closely
related to at least the '739 patent.  In fact, Katz has disclaimed for each of the '893,
'551, '065, '360, '762, and '134 patents any term subsequent to the patent term of
the '739 patent, in most instances in response to double patenting rejections made
by the USPTO indicating that the claimed inventions were not patentably distinct.

68.     The '965, '734, '223, and '120 patents are closely related to the '984,
'929, '739 and '252 patents at least because they have specifications that are

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.  The common elements reflect concepts that are disclosed in one or more of the withheld references, including claim limitations concerning the acceptance or qualification of callers based on a number such as limited-use number or the caller's telephone number.

69.    The '984, '252, '150, '285, '893, '863, '734, '120, '223, '551, '065, '360, '762, '309,'134, '547, '965, and '707 patents are therefore unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 3. Periphonics References

70.    On information and belief, in April 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.*, et al., CV 91-4471-TJH (C.D. Cal. 1991) ("*First Data v. West*"), materials bearing Bates numbers W72807-W73756 ("the *West* materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm").  The Nilsson firm was involved in prosecuting many of Mr. Katz's patent applications, some of which would ultimately issue as the Katz asserted patents.

71.    In U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz stated: "During litigation [*First Data v. West*], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant.  However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)."  Paper no. 3, filed November 4, 1994.  Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)."  Paper no. 3, filed November 4, 1994.

72.     Mr. Katz and his attorneys made the same statements in the
applications that issued as the '707 patent (IDS filed November 14, 1994), the '285
patent (IDS filed September 20, 1994), and the parent application of the '893 patent
(IDS filed November 7, 1994 in Application No. 08/306,751).  Other applications
use varying language that refers the examiner to the references disclosed during
prosecution of the '707 patent.  These other applications include the '863 patent
(Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent
(IDS filed January 16, 1997), and the '551 patent (IDS filed October 2, 1996).

73.     In connection with making these statements during the prosecution of
the '707, '965, '285, '893, '863, '762, and '551 patents, Mr. Katz and his attorneys
submitted to the USPTO certain materials containing Bates numbers within the
range of the *West* materials.

74.     On information and belief, the Bank-From-Home Product Description,
Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") and
Periphonics VoicePac System with Peritalk/Announce Product Description and
User Guide, Publication #3270601C, 1987 ("the VoicePac reference") bore Bates
numbers within the range of the *West* materials.

75.     Specifically, the Bank-From-Home reference bore Bates numbers
W73055–W73095, and the VoicePac reference bore Bates numbers W73219–
W73302.

76.     The Bank-From-Home and the VoicePac references are highly
relevant to many claims of the Katz asserted patents.  The Bank-From-Home
reference describes such limitations of claims of the Katz asserted patents as
structures for interfacing, storing, qualifying, switching, processing, voice
generation, verifying credit and designating, as related to callers to the disclosed
system.  The VoicePac reference describes such limitations of claims of the Katz
asserted patents as interfacing callers to the system and transferring callers to a
customer service representative.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

77.     At all times during the prosecution and pendency of the applications leading to the  the'707, '965, '285, '893, '863, '762, and '551 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

78.     On information and belief, at all times during the prosecution and pendency of the applications leading to the'707, '965, '285, '893, '863, '762, and '551 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

79.     While other references containing Bates numbers within the range of the *West* materials were submitted to the USPTO during prosecution of the'707, '965, '285, '893, '863, '762, and '551 patents, the Bank-From-Home and VoicePac references were, on information and belief, knowingly withheld during prosecution of at least these patents with knowledge of their materiality.

80.     As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '707, '965, '285, '893, '863, '762, and '551 patents.  That inequitable conduct renders each of those patents unenforceable in its entirety.

81.     Each of the '065 and '360 patents is sufficiently related to one or more of the '707, '965, '285, '893, '863, '762, and '551 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

82.     Specifically, the '065 and '360 patents are closely related to the '707, '863, '762, '551, and '739 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.  In fact, Mr. Katz has disclaimed for each of the '893, '551, '065, '360, and '762 patents any term subsequent to the patent term of the '739 patent, in most instances in response

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

to double patenting rejections made by the USPTO indicating that the claimed inventions were not patentably distinct.

83.     Thus, at least the '965, '285, '893, '863, '762, '551, '707, '065, and '360 patents are rendered unenforceable due to the inequitable conduct that occurred during the prosecution of closely related patents and patent applications.

### 4. Katz PCT Application

84.     PCT application (PCT application WO 87/00375) ("the '375 application"), by Mr. Katz, was published on January 15, 1987

85.     The '375 application is prior art for any claims with a filing date more than a year after the publication date (January 15, 1987).  35 U.S.C. § 102(b).

86.     The filing date of the application that issued as the '739 patent, which was May 16, 1988, was more than one year after the publication of the '375 application.

87.     The '375 application constituted prior art to all the claims in the application for the '739 patent which that incorporated any new matter.

88.     The '375 application would have been material to many of the basic elements claims in the '739 patent, such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

89.     Mr. Katz and his attorneys were aware of the existence and materiality of the '375 application during the pendency of the '739 patent application.

90.     At all times during the prosecution and pendency of the application leading to the '739 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

91.     On information and belief, at all times during the prosecution and pendency of the application leading to the '739 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

92.     Despite knowledge of the '375 application and its materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys did not bring the '375 application to the attention of the examiner during the prosecution of the '739 patent.  Instead, Mr. Katz and his attorneys allowed the examiner to issue the '739 patent without considering the prior art effect of the published '375 application.  On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

93.     As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application leading to the '739 patent.  That inequitable conduct renders the '739 patent unenforceable in its entirety.

94.     Each of the '252, '150, '285, '965, '893, '863, '734, '120, '223, '551, '065, '360, '762, '984, '134, '309, '547, and '707 patents is sufficiently related to the '739 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.

95.     Specifically, all contain claims with subject matter that includes subject matter that was at issue during the prosecution of the '739 patent and to which the '375 application would have been relevant.

96.     As an example, due to the interrelatedness of the '893, '863, '551, '065, '360, '762, '134, and '739 patents, Katz has disclaimed for each of the '893, '863, '551, '065, '360, '762, and '134 patents any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the USPTO indicating that the claimed inventions were not patentably distinct.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

97.    The inequitable conduct concerning the '375 application thus renders unenforceable at least the '252, '150, '285, '965, '893, '863, '734, '120, '223, '551, '065, '360, '762, '984, '134, '309, '547, and '707 patents.

### 5. Daudelin

98.    U.S. Patent No. 4,943,995 ("the Daudelin '995 patent") issued on July 24, 1990 and is prior art to at least the '120 patent, which was filed in 1995.

99.    Mr. Katz and his attorneys did not disclose the Daudelin '995 patent during the prosecution of at least the '120 patent.

100.    The Daudelin '995 patent is material to certain of the claimed subject matter under consideration in the prosecution of at least the '120 patent.

101.    More specifically, the Daudelin '995 patent discloses a system for receiving toll free calls directed to either one of two toll-free telephone numbers associated with either business or consumer products.  Callers are provided product information and can place orders, using either automated voice response systems, human operators, or combinations thereof.  Callers are qualified based in part on their calling party number, and the particular product they selected.

102.    Because the Daudelin '995 patent discloses many of the features claimed in the '120 patent, it would have been material to the USPTO in deciding whether to allow the claims of the '120 patent.  For example, the '120 patent claims receiving calls in a toll free mode, receiving calls directed to two different toll-free numbers, receiving and testing calling number identification data, prompting callers with voice prompts, and processing data entered by the callers.

103.    On information and belief, Mr. Katz and his attorneys were aware of the Daudelin patent during the prosecution of the '120 patent, having cited it to the USPTO in connection with other applications at least by October 26, 1997, more than two years prior to the issuance of the '120 patent in 1999.  On information and belief, the Daudelin '995 patent was listed in previous submissions during the

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

THE AIG DEFENDANTS' ANSWER AND COUNTERCLAIMS
TO RAKTL'S AMENDED COMPLAINT

prosecution of certain of Mr. Katz's other patents, although "Daudelin" was misspelled as "Dandelin."

104.   At all times during the prosecution and pendency of the application leading to the '120 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

105.   On information and belief, at all times during the prosecution and pendency of the application leading to the '120 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

106.   Despite knowledge of the Daudelin '995 patent and its materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys did not disclose the Daudelin '995 patent during the prosecution of at least the '120 patent.  On information and belief, they did so deliberately and with intent to deceive the USPTO and its officials into issuing patent claims of a scope beyond which Mr. Katz was entitled.

107.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application for the '120 patent.  That inequitable conduct renders that patent unenforceable in its entirety.

108.   At least each the '223 patent is sufficiently related to the '120 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.

109.   For example, at least the '223 patent claims priority to the '120 patent and claims subject matter related to the '120 patent, to which the Daudelin '995 patent is material.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

110.   At least the '120 and '223 patents are unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 6. Yoshizawa

111.   An article entitled "Voice Response System For Telephone Betting" by Yoshizawa, et al. ("the Yoshizawa article") appeared in the 1977 issue of Hitachi Review magazine.

112.   The Yoshizawa article discloses an automatic off-track betting system. The system includes a voice response unit, a public telephone network and a central processing unit.  Incoming calls are answered by the voice response unit prompting the caller to enter an account number and password, and then select one or more pari-mutuel tickets, for example, a wager on a horse to "show."  The entered data is then stored in the caller's account file.  Each wager is counted against a preset daily wagering limit.  The caller is provided with a registration number referencing the transaction.  Ticket payments are made automatically by deducting the cost of the ticket from the caller's bank account.  The article specifically mentions that the system could be used for "winning lot number service," or a lottery.

113.   Many features relevant to at least the '575, '252, '734 and '965 patents are disclosed in the Yoshizawa article.  For example, Yoshizawa discloses limiting access and use to a telephone-based gambling or lottery system and qualifying callers based on an account number.

114.   On information and belief, Mr. Katz and his attorneys were aware of the materiality of the Yoshizawa article at least as early as September 2, 1992, when it was cited in response to interrogatories in *First Data v. West*.

115.   At all times during the prosecution and pendency of the application leading to the '575, '252, '734, and '965 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

116.   On information and belief, at all times during the prosecution and pendency of the application leading to the '575, '252, '734, and '965 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

117.   Despite knowledge of the Yoshizawa article and its materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys did not disclose the Yoshizawa article during the prosecution of at least the '575, '252, '734, and '965 patents.  On information and belief, they did so deliberately and with intent to deceive the USPTO and its officials into issuing patent claims of a scope beyond which Mr. Katz was entitled.

118.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application for the '575, '252, '734, and '965 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

119.   Each of the '120, '223, '065, '360, '551, '863, '893, and '134 patents are sufficiently related to at least one or more of the '575, '252, '734, and '965 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

120.   Specifically, the '120, '223, '065, '360, '551, '863, and '893 patents are closely related to the '252 and '575 patents and claim subject matter to which the Yoshizawa article was material.  The '134 patent is related to the '965 patent and claims subject matter to which the Yoshizawa article was material.

121.   Thus, at least the '252, '734, '965, '120, '223, '065, '360, '551, '863, '893, and '134 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications..

### *7. Corbett*

122.   On information and belief, Mr. Katz and/or his attorneys had knowledge of and failed to disclose a reference entitled "Telephone Enquiry System Using Synthetic Speech" by Angela J. Corbett ("the Corbett Reference") as part of the prosecution of at least the '965 and '285 Katz asserted patents.  On information and belief, Mr. Katz and his attorneys unreasonably delayed disclosing the Corbett reference to the USPTO and mischaracterized its materiality in connection with the prosecution of at least the '734, '120, '134, '223, and '252 patents.

123.   On information and belief, Mr. Katz and his attorneys had knowledge of the Corbett reference and its materiality at least as early as August 13, 1993 when it was disclosed in connection with *First Data v. West* in the United States District Court for the Central District of California.  On information and belief, First Data Resources (which later became known as RAKTL) had knowledge of the Corbett reference in connection with West's motion for summary judgment of invalidity of the Katz patents at issue in that case.

124.   The Corbett reference is material to certain of the claimed subject matter of at least the '965, '285, '120, '134, '223, and '252 patents.  Corbett teaches use of identification to qualify access to a system (user name and password), limited use based on key numbers relating to limits on use (limiting the number of times a particular user can play a game), selectively repeating cues based on user identification, receiving entry of product identifier to check stock availability and price, and use of a single system to implement several different types of services.

125.   Because the Corbett Reference discloses many of the features claimed in the '965, '285, '120, '134, '223, and '252 patents, it would have been material to the USPTO in deciding whether to allow the claims of those patents.

126.   At all times during the prosecution and pendency of the applications leading to the '965, '285, '120, '134, '223 and '252 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

127.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '965, '285, '120, '134, '223 and '252 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

128.   Despite knowledge of the Corbett Reference and its materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys intentionally delayed disclosing the material Corbett Reference from the USPTO during the prosecution of at least the '120, '134, '223 and the '252 patents, denying the Examiner the opportunity to consider the reference in the substantive prosecution of those patents.  On information and belief, Mr. Katz and his attorneys also mischaracterized the materiality of the Corbett Reference to the USPTO.  On information and belief, they did so deliberately and with intent to deceive the USPTO and its officials into issuing patent claims of a scope beyond which Mr. Katz was entitled.

129.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application for the '965, '285, '120, '134, '223, and '252 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

130.   Each of the '893 and '734 patents are sufficiently related to at least one or more of the '965, '285, '120, '134, '223, and'252 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

131.   Specifically, the '734 patent is closely related to the '252, '223, and '120 patents at least because it has a specification that is substantially the same, common lineage, common terms of enforcement and/or claimed subject matter with

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

common elements and overlapping scope to which the Corbett article was material. The '893 patent is closely related to the '285 patent and claims subject matter to which the Corbett article was material.

132.   Thus, at least the '965, '285, '120, '134, '223, '252, '734, and '893 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 8. Moosemiller

133.   "AT&T's Conversant I Voice System," by John P. Moosemiller ("the Moosemiller reference"), was published in the March/April 1986 issue of "Speech Technology."

134.   On information and belief, Mr. Katz and/or his attorneys had knowledge of the Moosemiller reference at least as early as July 21, 1998, in connection with a lawsuit brought by Katz and MCI Telecommunications Corp. against AT&T Corp. and others in the United States District Court for the Eastern District of Pennsylvania (Civil Action No. 97-CV-4453), in which Katz asserted that AT&T infringed certain patents owned by Katz.

135.   The Moosemiller reference is material to certain of the claimed subject matter in at least the '965 and '734 patents.  The Moosemiller referencediscloses use of DNIS to allow advance classification of incoming calls for different applications which are greeted by appropriate transaction prompts, system use in conjunction with ACD/PBX, qualification based on user identification input, bridging to an attendant for help, or completing a partially automated transaction, and application of IVR technology to several areas including financial services, credit authorization, wholesale and retail distribution, sales order entry, direct marketing, transportation scheduling and dispatching, college registration, communication services.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

136.   Because the Moosemiller reference discloses many of the features claimed in the '965 and '734 patents, it would have been material to the USPTO in deciding whether to allow the claims of those patents.

137.   At all times during the prosecution and pendency of the applications leading to the '965 and '734 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

138.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '965 and '734 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

139.   Despite knowledge of the Moosemiller reference and its materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys did not disclose the Moosemiller reference during the prosecution of at least the '965 and '734 patents. On information and belief, they did so deliberately and with intent to deceive the USPTO and its officials into issuing patent claims of a scope beyond which Mr. Katz was entitled.

140.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '965 and '734 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

141.   Each of the '134, '120, and '223 patents are sufficiently related to at least one or more of the '965 and '734 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

142.   Specifically, the '120 and '223 patents are closely related to the '734 patent at least because it has a specification that is substantially the same, common

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

lineage, common terms of enforcement and/or claimed subject matter with common elements and overlapping scope to which the Moosemiller reference was material.

143.   Thus, at least the '965, '734, '134, '120, and '223 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 9. Perdue and Hester

144.   An article entitled "Conversant I Voice System: Architecture and Applications," by Perdue, *et al.*, was published in the September/October 1986 issue of the AT&T Technical Journal ("the Perdue article").

145.   On information and belief, Mr. Katz and his attorneys were aware of the Perdue article before the filing of the '309 patent and during the prosecution of U.S. Patent Nos. 5,109,404 ("the '404 patent") and 5,218,631 ("the '631 patent"). Specifically, the Perdue article was cited by the patent examiner first during the prosecution of the '404 patent in an office action dated June 3, 1991, then again during the prosecution of the '631 patent in an office action dated June 17, 1991.

146.   Mr. Katz and his attorneys, however, did not disclose the Perdue article to the patent examiner during the prosecution of the '309 patent. Accordingly, the Perdue article was not considered by the patent examiner in determining patentability of the '309 patent.

147.   An article entitled "The AT&T Multi-Mode Voice Systems—Full Spectrum Solutions for Speech Processing Applications," by Hester *et al.*, was presented at the Proceedings of the 1985 AVIOS Conference ("the Hester article").

148.   On information and belief, Mr. Katz and his attorneys were aware of the Hester article before the filing date of the '309 patent and during the prosecution of the '404 patent.  Specifically, the Hester article was cited by the patent examiner during the prosecution of the '404 patent in an office action dated June 3, 1991.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

149.   Mr. Katz and his attorneys, however, did not disclose the Hester article to the patent examiner during the prosecution of the '309 patent.  Accordingly, the Hester article was not considered by the patent examiner in determining patentability of the '309 patent.

150.   Both the Perdue and Hester articles are material to the patentability of the '309 patents as these articles disclose the architecture, operation, and applications of the "Conversant I" system, which was made and used by AT&T, in detail.  The "Conversant I" system was a programmable interactive voice response system that was used for telephonic access and interaction by callers.  Another article describing the "Conversant I" system, the Moosemiller article, was used later by the USPTO during the reexamination of the '309 to invalidate 14 claims on the basis of anticipation.  The Perdue and Hester articles provide greater detail regarding the "Conversant I" system and would therefore have been material to the examination of the '309 patent.

151.   On information and belief, the materiality of the Perdue article to the Katz asserted patents was further confirmed by the USPTO in Reexam Control No. 90/008,155 (Reexamination of the '734 patent).  In an order granting reexamination of the '734 patent, dated November 6, 2006, the USPTO found that a substantial new question of patentability existed, at least in part, in view of the Perdue article.

152.   At all times during the prosecution and pendency of the application leading to the  '309 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

153.   On information and belief, at all times during the prosecution and pendency of the application leading to the '309 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

154.   Despite knowledge of the Perdue and Hester articles and their materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys did not disclose the Perdue and Hester articles during the prosecution of at least the '309 patent.  On information and belief, they did so deliberately and with intent to deceive the USPTO and its officials into issuing patent claims of a scope beyond which Mr. Katz was entitled.

155.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application for the '309 patent.  That inequitable conduct renders that patent unenforceable in its entirety.

156.   At least the '707 patent claims priority from, and claims subject matter related to the '309 patent to which the Perdue and Hester articles are material, and is therefore sufficiently related the '309 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.

157.   Thus, at least the '309 and '707 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 10. Szlam

158.   U.S. Patent No. 4,797,911 to Szlam ("the Szlam patent") was filed on June 16, 1987 and issued on January 10, 1989.  The Szlam patent discloses a call center for receiving incoming calls, processing ANI to retrieve customer information, reviewing keypad information for placing or changing orders and connecting to an agent if needed.

159.   On information and belief, during the prosecution of at least the '309 patent, Katz had knowledge of and failed to disclose the Szlam patent.

160.   The Szlam patent is material to certain of the claimed subject matter under consideration during the prosecution of at least the '309 patent, and it would

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

have been material to the USPTO in deciding whether to allow the claims of the '309 patent.

161.   On information and belief, Mr. Katz and his attorneys were aware of the Szlam patent during the prosecution of the '309 patent.  Specifically, Mr. Katz and his attorneys disclosed the Szlam patent to the patent examiner during the pendency of the '150 patent in an amendment dated October 5, 1989.  The amendment stated "…the following patents are deemed relative to the present application: … U.S. Patent 4,797,911 – Szlam et al. – CUSTOMER ACCOUNT ON-LINE SERVICING SYSTEM."  Page 5, Amendment dated October 5, 1989.

162.   At all times during the prosecution and pendency of the application leading to the '309 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

163.   On information and belief, at all times during the prosecution and pendency of the application leading to the '309 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

164.   Despite knowledge of the Szlam patent and its materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys did not disclose the Szlam patent during the prosecution of at least the '309 patent.  On information and belief, they did so deliberately and with intent to deceive the USPTO and its officials into issuing patent claims of a scope beyond which Mr. Katz was entitled.

165.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application for the '309 patent.  That inequitable conduct renders that patent unenforceable in its entirety.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

166.   At least the '707 patent claims priority from, and claims subject matter related to the '309 patent to which the Szlam patent is material, and is therefore sufficiently related the '309 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.

167.   Thus, at least the '309 and '707 patents are rendered unenforceable due as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### B. Failure to Disclose Inconsistent Positions

168.   On information and belief, Mr. Katz and his attorneys repeatedly took inconsistent positions as to the scope of prior art to different patent examiners at different times during the prosecution of the Katz asserted patents and failed to inform the different patent examiners of Katz's inconsistent positions.

### *1. Daudelin Patents*

169.   At least three patents issued to Daudelin—including the Daudelin '995 patent, U.S. Patent No. 4,797,910 ("the Daudelin '910 patent"), and U.S. Patent No. 5,922,519 ("the Daudelin '519 patent") (collectively "the Daudelin patents")—were cited during the prosecution of certain of the Katz asserted patents and related patents.

170.   The specifications for the Daudelin '910 and the '519 patents are substantially similar, and all three of the Daudelin patents disclose aspects pertaining to DNIS (Dialed Number Identification Service) functionality.

171.   During the prosecution of the '734 patent, Katz characterized the Daudelin '910 patent as not disclosing "DNIS or like function."

172.   During the prosecution of the '551 patent, Katz characterized the Daudelin '910 patent as disclosing "DNIS or like function."

173.   During the prosecution of the '893 patent, Katz characterized the '910 Daudelin patent as disclosing "DNIS or like function."

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

174.   During the prosecution of the '360 patent, Katz took the position that "Daudelin does not teach DNIS."

175.   At all times during the prosecution and pendency of the applications leading to the '734, '551, '893, and '360 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

176.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '734, '551, '893, and '360 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

177.   Despite knowledge of the Daudelin patents and their materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and/or his attorneys took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of Katz's prior inconsistent positions.  On information and belief, Katz did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

178.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '551, '734, '893, and '360 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

179.   At least the '120, '223, and '065 patents claim priority and are sufficiently related to at least one or more of the '551, '734, '893, and '360 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

180.   Thus, at least the '551, '734, '893, '120, '223, '065, and '360 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### *2. Riskin*

181.   U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent") was filed on June 17, 1987 and issued on July 12, 1988.

182.   As part of the prosecution of the U.S. Patent No. 5,048,075 ("the '075 patent"), Mr. Katz and his attorneys stated "that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish routing. . . ."

183.   Contrary to this characterization of the Riskin patent in the '075 patent, Mr. Katz and his attorneys maintained, as part of the prosecution of the '120 patent, that the Riskin patent disclosed aspects pertaining to ANI ("Automatic [calling party] number identification") only, and not DNIS.

184.   At all times during the prosecution and pendency of the applications leading to the '075 and '120 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

185.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '075 and '120 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

186.   Despite knowledge of the Riskin patent and its materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys took inconsistent positions as to the scope of the Riskin patent to different patent examiners at different times and failed to inform the different patent examiners of Mr. Katz's prior inconsistent positions.  On information and belief, they did so with

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

187.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '075 and '120 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

188.   At least the '223 patent claim priority and are sufficiently related to at least one or more of the '075 and '120 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

189.   Thus, at least the '120 and '223 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

**C. Failure to Identify/Disclose Material Information from Related Proceedings**

190.   At all times during the prosecution and pendency of the applications leading to the '065, '120, '134, '223, '252, '285, '360, '551, '734, '863, '893, '984, and '965 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

191.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '065, '120, '134, '223, '252, '285, '360, '551, '734, '863, '893, '984, and '965 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

192.   Pursuant to MPEP § 2001.06(c), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation," each individual associated with the filing and prosecution of a patent application before the USPTO

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

has a duty to bring to the attention of the PTO "the existence of such litigation and any other material information arising therefrom."

193.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '065, '120, '134, '223, '252, '285, '360, '551, '734, '863, '893, '984, and '965 patents, Mr. Katz and his attorneys were aware of their obligations under MPEP § 2001.06(c).

194.   On information and belief, as set forth in further detail below, as part of the prosecution of several of the Katz asserted patents, Mr. Katz and/or his attorneys failed to identify or disclose material information from several litigations of which they were aware, which involved related patents and material subject matter relating to the Katz accused patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby constituting inequitable conduct.

### 1. *West* Declaratory Judgment Action

195.   On October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action against First Data in the United States District Court for the District of Nebraska.  *West Interactive Corp. v. First Data Resources, Inc.*, CV 90-0-688 (D. Neb. 1990) ("the *West* declaratory judgment action").  West alleged, among other things, that the '739, '150 patents and U.S. Patent No. 4,939,773 ("the '773 patent") are invalid on several theories including prior use and prior art.

196.   West's allegations in that suit are material to at least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents, all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

197.   On information and belief, Mr. Katz and his attorneys were aware of the *West* declaratory judgment action during the prosecution of the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.

198.   Nonetheless, on information and belief, Mr. Katz and/or his attorneys failed to disclose the existence of the *West* declaratory judgment action and the subject matter of West's allegations to the USPTO as part of the prosecution of at least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

199.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

200.   Furthermore, the '065 patent is sufficiently related to at least one or more of the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

201.   Specifically, the '065 patent is closely related to the '863 and '551 patents at least because they have specifications that are substantially the same, common lineage, common terms of enforcement and/or claimed subject matter with common elements and overlapping scope.

202.   Thus, at least the '065, '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*In Re Katz Interactive Call Processing Litigation*          - 55 -          THE AIG DEFENDANTS' ANSWER AND COUNTERCLAIMS TO RAKTL'S AMENDED COMPLAINT

### 2. *900 Million, Inc.*

203.   On October 9, 1990, First Data brought a suit, Civil Action No. 90-5418-HLH ("the *900 Million* litigation"), against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '773 patents.

204.   The defendants in the *900 Million* litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150 and '773 patents

205.   The defendants' counterclaims in the *900 Million* Inc. litigation are material to at least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents, all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

206.   On information and belief, Mr. Katz and his attorneys were aware of the *900 Million* litigation during the prosecution of the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.

207.   Nonetheless, on information and belief, Mr. Katz and his attorneys failed to disclose the existence of the *900 Million* litigation and of the subject matter of the defendant's allegations to the USPTO as part of the prosecution of at least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

208.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

209.   Furthermore, the '065 patent is sufficiently related to at least one or more of the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

'360 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

210.   Specifically, the '065 patent is closely related to the '863 and '551 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.

211.   Thus, at least the '065, '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984 and '360 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 3.  *First Data v. West*

212.   On August 20, 1991, First Data brought suit against West Interactive Corp. and Fantasy Sports Concepts, Inc. in the United States District Court for the Central District of California for the alleged infringement of the '739 and '150 patents as well as U.S. Patent No. 5,014,298 ("the '298 patent).  *First Data Resources, Inc. v. West Interactive Corp.*, et al., CV 91-4471-TJH (C.D. Cal. 1991) ("*First Data v. West*").

213.   The defendants in *First Data v. West* filed a counterclaim alleging, among other things, the invalidity and unenforceability of the '739, '298, and '150 patents.

214.   The defendants' allegations in that suit are material to at least the '285, '863, '551, '734, '893, '120, and '134 patents, all of which claim priority to at least the '739 patent.

215.   On information and belief, Mr. Katz and his attorneys were aware of *First Data v. West* during the prosecution of the '285, '863, '551, '734, '893, '120, and '134 patents.

216.   On information and belief, Mr. Katz and his attorneys failed to disclose to the USPTO the existence of *First Data v. West* or the subject matter of

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

the defendants' allegations during the prosecution of at least the '863, '551, '734, '893, '120, and '134 patents.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

217.   On information and belief, Mr. Katz and his attorneys also failed to disclose to the USPTO the existence of *First Data v. West* or the subject matter of the defendants' allegations during the prosecution of the '285 patent until after prosecution on the merits had closed.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

218.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '285, '863, '551, '734, '893, '120, and '134 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

219.   Furthermore, the '065 and '223 patents are sufficiently related to at least one or more of the '863, '551, '734, '893, '120, and '134 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

220.   Specifically, the '065 patent is closely related to the '863 and '551 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.  The '223 is closely related to the '120 and '734 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope

221.   Thus, at least the '065, '223, '863, '551, '734, '893, '120 and '134 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

### 4.  Micro Voice Applications, Inc.

222.   On February 9, 1999, Katz filed suit, Civil Action No. 99-CV-592 ("the *Micro Voice* litigation", against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California for infringement of the '739, '153, '252, '285, '863, '734, '023, and '707 patents.

223.   In response to Katz's Complaint, the defendants in the *Micro Voice* litigation, alleged, among other things, that the '739, '153, '252, '023, '285, '707, '86,3 and '734 patents were invalid and/or unenforceable.

224.   The defendant's allegations in the *Micro Voice* litigation are material to at least the '965 and '134 patents, which are related patents to the patents at issue in that suit.

225.   On information and belief, Mr. Katz and/or his attorneys were aware of the *Micro Voice* litigation during the prosecution of the '965 and '134 patents.

226.   On information and belief, Mr. Katz and his attorneys failed to disclose to the USPTO the existence of the *Micro Voice* litigation or the subject matter of the defendants' allegations during the prosecution of at least the '965 patent.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

227.   On information and belief, Mr. Katz and his attorneys also failed to disclose to the USPTO the existence of the *Micro Voice* litigation or the subject matter of the defendants' allegations during the prosecution of the '134 patent until after prosecution on the merits had closed.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

228.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '965 and '134 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

### 5. AT&T Corp.

229.    On July 8, 1997, Katz and MCI Telecommunications Corp. brought suit, Civil Action No. 97-CV-4453 ("the *AT&T* litigation"), against AT&T Corp. and others in the U.S. District Court for the Eastern District of Pennsylvania for infringement of the '739, '150, '298, '075, '929, '984, '153, '252, '309, '023, '285, '120, '707, and '863 patents and U.S. Patent Nos. 5,218,631 ("the '631 patent"), 5,349,633 ("the '633 patent"), and 5,359,645 ("the '645 patent").

230.    In reply, AT&T Corp. asserted, among other things, that the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863, and '633 patents were invalid.

231.    AT&T Corp.'s allegations in the *AT&T* litigation are material to at least the '893 and '120 patents, which are related to and claim related subject matter to the patents involved in that litigation.

232.    On information and belief, Mr. Katz and/or his attorneys were aware of the *AT&T* litigation during the prosecution of the '893 and '120 patents.

233.    On information and belief, Mr. Katz and his attorneys failed to disclose to the USPTO the existence of the *AT&T* litigation or the subject matter of the defendants' allegations during the prosecution of at least the '893 and '120 patents.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

234.    As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '863 and '120 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

235.    Furthermore, the '223 patent is sufficiently related to the '120 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability because they have specifications that are substantially the same, common lineage,

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   commons terms of enforcement and/or claimed subject matter with common

2   elements and overlapping scope.

3       236.   Thus, at least the '223, '120, and '893 patents are rendered

4   unenforceable as a result of the above-described inequitable conduct in the

5   prosecution of closely related patents and patent applications.

### 6. Patent Interference No. 103,697

7       237.   Patent Interference No. 103,697 was declared on February 13, 1996,

8   and was finalized by November 20, 1996.  In that patent interference, the BPAI's

9   concluded, *inter alia*, that the '968 patent specification did not provide written

10  support for certain limitations claimed by Mr. Katz, which included transferring

11  calls to an operator in certain circumstances.

12      238.   The BPAI's conclusion that the '968 patent lacked written support for

13  certain alleged limitations would have been material to the patent examiners of the

14  '863, '965, '734, '893, '120, and '134 patents, for the purpose of, for example,

15  establishing the effective date of a claim for purposes of analyzing prior art.

16  Indeed, on information and belief, all of these patents claim priority to the '968

17  patent, and many of them, including at least the '863 and '134 patents, are

18  disclaimed with respect to the '968 patent.

19      239.   On information and belief, Mr. Katz and his attorneys intentionally

20  failed to disclose the existence of Patent Interference No. 103,697 and the BPAI's

21  findings to the patent examiners of at least the '863, '965, '734, '893, '120, and

22  '134 patents.  On information and belief, they did so with the intent of deceiving

23  the USPTO into issuing patent claims of a scope beyond which Mr. Katz was

24  entitled.

25      240.   As a result of the above-described conduct, Mr. Katz and/or his

26  attorneys are guilty of inequitable conduct in the prosecution of the applications for

27  the '863, '965, '734, '893, '120, and '134 patents.  That inequitable conduct renders

28  those patents unenforceable in their entirety.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

241.   Furthermore, the '223 patent is sufficiently related to the '120 and '734 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.

242.   Thus, at least the '223, '863, '965, '734, '893, '120, and '134 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### D. Intentional Failure to Inform of Adverse Findings

243.   The MPEP § 2001.06(b) states that each individual associated with the filing and prosecution of a patent application before the USPTO has "a duty to bring to the attention of the examiner, or other [USPTO] official involved with the examination of a particular application, information within their knowledge as to other copending United States applications which are 'material to patentability' of the application in question."  Furthermore, according to this section of the MPEP, such individuals

> cannot assume that the examiner of a particular application is necessarily aware of other applications which are 'material to patentability' of the application in question, but must instead bring such other applications to the attention of the examiner…. For example, if a particular inventor has different applications pending in which similar subject matter but patently indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications.

### 1.  Prosecution of the '965 Patent

244.   During the prosecution of the '344 patent, on information and belief, Mr. Katz made the false assertion that the '968 patent supported the limitation "automatic number identification (ANI) decoder means responsive to

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

predetermined signals on said telephone trunk for providing a calling party telephone number." Further, on information and belief, Katz falsely asserted that the "[r]eferences cited are based on U.S. Patent No. 4,792,968 to Katz with a filing date of Feb. 14, 1987, of which the present application is a continuation."

245. The examiner of the '344 patent, Examiner Brown, in a 1990 Office Action, refuted Mr. Katz's assertion that the '344 patent application was a continuation of the '968 patent, noting, "the present application is not a continuation of '968. . . ." Rather, the pending application that resulted in the '344 patent was a continuation-in-part, in which new matter was added to the specification, and as such, any claims directed to the new matter were not entitled to the effective date of the '968 patent.

246. Further, Examiner Brown rejected Katz's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation. Specifically, Examiner Brown stated that "applicant's patent [*i.e.*, the '968 patent] does not in fact disclose or describe an 'automatic number identification (ANI) decoder means'. . . .".

247. On information and belief, during prosecution of the '965 patent, Mr. Katz attempted to traverse a claim rejection of his then pending claim 68 in light of the Szlam patent by falsely claiming that "Claim 68 as amended is fully supported by Applicant's earlier parent patent no. 4,792,968, filed on February 24, 1987, before . . . Szlam . . . ."

248. On information and belief, Mr. Katz and his attorneys failed to inform the examiner of the '965 patent of Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means".

249. Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means" would

have been material to the examiner of the '965 patent in deciding the patentability of the pending claims, particularly with respect to antedating prior art.

250.   At all times during the prosecution and pendency of the application leading to the '965 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO,were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56, and were under a duty to disclose information relating to or from copending United States patent applications, as required by MPEP § 2001.06(b).

251.   On information and belief, at all times during the prosecution and pendency of the application leading to the '965 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56, and were aware of their obligations as outlined in MPEP § 2001.06(b).

252.   Despite knowledge of the Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means" and its  materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys failed to inform the examiner of the '965 patent of Examiner's Brown's prior conclusion.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

253.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '965 patent.  That inequitable conduct renders that patent unenforceable in its entirety.

254.   Furthermore, the '134 patent is sufficiently related to the '965 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability because they have specifications that are substantially the same, common lineage,

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.

255.   Thus, at least the '134 and '965 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 2. Prosecution of '551 Patent

256.   During prosecution of the '551 patent, Examiner Brown rejected certain claims submitted by Katz pursuant to 35 U.S.C. § 112 for lack of written support.  Specifically, Examiner Brown stated that "[t]he text actually is not found to describe how the interaction between the caller and the operator would proceed after the caller has been transferred thereto for "person-to-person" interaction, much less that such interaction necessarily would result in data entries being transferred to the memory."

257.   Mr. Katz continued prosecution of the same subject matter rejected by Examiner Brown in a subsequently filed application, which matured in the '065 patent, and again, in another subsequently filed application, which matured into the '360 patent.  Both of these applications were before a different patent examiner, Examiner Weaver.

258.   At all times during the prosecution and pendency of the applications leading to the '065 and '360 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56, and were under a duty to disclose information relating to or from copending United States patent applications, as required by MPEP § 2001.06(b).

259.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '065 and '360 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, were aware of their duty to disclose material information to the USPTO, as required by

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1  37 C.F.R. § 1.56, and were aware of their obligations as outlined in MPEP §

2  2001.06(b).

3       260.   Despite knowledge of Examiner Brown's finding and despite the

4  duties of candor, fair dealing, and disclosure imposed on them by law and by the

5  rules of the USPTO, on information and belief, Mr. Katz and his attorneys failed to

6  inform Examiner Weaver of the '065 and '360 patents of Examiner's Brown's prior

7  conclusion.  On information and belief, they did so with the intent of deceiving the

8  USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

9       261.   As a result of the above-described conduct, Mr. Katz and/or his

10  attorneys are guilty of inequitable conduct in the prosecution of the applications for

11  the '065 and '360 patents.  That inequitable conduct renders those patents

12  unenforceable in their entirety.

13                    *3. Appeal No. 94-0834*

14       262.   On information and belief, Mr. Katz and his attorneys failed to inform

15  the USPTO of the existence and outcome of certain Appeal Rulings that were

16  adverse or contrary to positions Mr. Katz took during the prosecution of related

17  patents.

18       263.   For example, Patent Application No. 07/640,337, naming Ronald A.

19  Katz as the inventor, was filed on January 11, 1991.  In Appeal No. 94-0834

20  (Application No. 07/640,337), the BPAI found that the Barger patent disclosed a

21  multiple format system for interacting with callers based on the callers dialing

22  distinct telephone numbers.

23       264.   The Barger patent is prior art to the Katz asserted patents.

24       265.   The BPAI's finding with respect to the scope of disclosure of the

25  Barger patent would have been material to the patent examiners of at least the '734,

26  '762, '893, '120, '021, '065, '965 and '134 patents with respect to any claims

27  reciting a multiple format limitation.

28

266.   At all times during the prosecution and pendency of the applications leading to the '734, '762, '893, '120, '021, '065, '965, and '134 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56, and were under a duty to disclose information relating to or from copending United States patent applications, as required by MPEP § 2001.06(b).

267.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '734, '762, '893, '120, '021, '065, '965, and '134 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56, and were aware of their obligations as outlined in MPEP § 2001.06(b).

268.   Despite knowledge of the BPAI's finding that the Barger patent disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Katz failed to inform the examiners of at least the '734, '762, '893, '120, '021, '065, '965, and '134 patents of the BPAI's findings.  On information and belief, Katz did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

269.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '734, '762, '893, '120, '021, '065, '965, and '134 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

270.   At least the '223, '547, and '360 patents are sufficiently related to one or more of the '734, '762, '893, '120, '021, '065, '965, and '134 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability. Specifically, at least each of the '223, '547 and '360 patents claim priority and

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

related subject matter to one or more of the '734, '762, '893, '120, '021, '065, '965, and '134 patents.

271.   Thus, at least the '734, '762, '893, '120, '065, '965, '134, '223, '547, and '360 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### E. False Claims of Priority

#### 1. '984 Patent

272.   U.S. Patent Application No. 07/425,779, naming Ronald A. Katz as inventor, was filed October 23, 1989 and issued as the '984 patent on July 7, 1992.

273.   WO 87/00375 ("the WO '375 application") was published on January 15, 1987.

274.   The '375 application is prior art to any new matter introduced and claimed in the '734 patent, which was based on a continuation-in-part application.

275.   During the pendency of the '984 patent, the USPTO rejected claim 10 under 35 U.S.C. § 103 "as being unpatentable over Fodale in combination with the teachings of WO 87/00375 ('the WO '375 application')." Office Action dated March 21, 1991.

276.   Mr. Katz responded that the '375 application "is not properly a reference against the present case."  Katz's Amendment dated June 20, 1991.

277.   At all times during the prosecution and pendency of the application leading to the '984 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

278.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '984 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

279.   Despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys falsely stated that the '375 application "is not properly a reference against the present case."  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

280.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application for the '984 patent.  That inequitable conduct renders that patent unenforceable in its entirety.

281.   Each of the '252, '734, '124, and '223 patents claim priority and are sufficiently related to the '984 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.  Specifically, the '252, '734, '124, and '223 patents share a substantially identical specification with the '984 patent, claim priority to the '984 patent, and claim subject matter encompassing similar scope to the rejected application claim 10 of the '984 patent.

282.   Furthermore, due to the interrelatedness of the '252, '734, and '120 applications and the '984 patent, Katz disclaimed for the '252, '734, and '120 patents any patent term subsequent to the patent term of the '984 patent.  Katz did so in response to double patenting rejections, whereby the USPTO indicated that the claimed inventions in the '252, '734, and '124 patents were not patentably distinct.

283.   Thus, the '984, '252, '734, '120, and '223 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## 2. '734 Patent

284.   At all times during the prosecution and pendency of the application leading to the '734 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

285.   On information and belief, at all times during the prosecution and pendency of the application leading to the '734 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

### a. Brown

286.   U.S. Patent No. 4,972,461 ("the Brown patent") issued on November 20, 1990.

287.   During prosecution of the '734 patent, Mr. Katz stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent.  Amendment, January 31, 1996 at page 11-12.

288.   In the '150 patent, however, there is no suggestion of multiple call modes, as claimed in the '734 patent.

289.   Despite knowledge that the '150 does not teach or suggest multiple call modes and of that fact's materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Brown patent.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

**b. Hester**

290.   During prosecution of the '734 patent, Mr. Katz stated that "the reference by Hester bears a date of 1985, apparently 'September'.  In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985."  Supplemental Amendment, March 14, 1995.

291.   On information and belief, the phrase "parent case filed July 10, 1985" referred to U.S. Patent Application No. 06/753,299 ("the '299 application").

292.   The '299 application discloses neither toll free calls nor 900 "pay-per-call" modes.

293.   Therefore, none of the claims in the '734 patent reciting claim limitations directed to toll free calls or 900 "pay-per-call" modes is entitled to claim priority to that patent application's filing date.

294.   Despite knowledge that the '299 application discloses neither toll free calls nor 900 "pay-per-call" modes and of that fact's materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Brown patent.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

**c. Kaplan**

295.   U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent") was filed on August 4, 1987.

296.   During prosecution of the '734 patent, Mr. Katz stated that "the present application is entitled to a priority date earlier than that of the subject reference [*i.e.*, the Kaplan patent]."  Supplemental Amendment, March 14, 1995.

297.   On information and belief, when the March 14, 1995 Supplemental Amendment was submitted to the USPTO, there were claims in Mr. Katz's pending

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

application (such as then pending claim 17) which contained and claimed new subject matter unsupported by the earlier filed application referenced by Mr. Katz, and were, therefore, not entitled to an earlier priority date.

298.   Despite knowledge that the '734 patent claimed new subject matter unsupported by the earlier filed application referenced by Mr. Katz, despite knowledge of that fact's materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Brown patent.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

299.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '734 patent.  That inequitable conduct renders that patent unenforceable in its entirety.

300.   At least the '120 and '223 patents claim priority and are sufficiently related to the  '734 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.

301.   Thus, at least the '120, '223, and '734 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

## Twenty-Ninth Affirmative Defense

302.   On information and belief, Katz has committed patent misuse by alleging infringement that goes well beyond the scope of the claims in the Katz asserted patents.

303.   For example, Katz has alleged infringement of systems having a live operator.  According to prior admissions by Katz, systems with live operators

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

cannot infringe the claims of the asserted patents.  Broadening the claim scope of the asserted patents beyond that which is provided for in the claims constitutes patent misuse.  Because Katz has and continues to commit patent misuse, the asserted patents are unenforceable.

304.   In addition, Katz has asserted the '734, '120, '134, and '223 patents with knowledge of that at least one claim in each of these patents is invalid.  This improper expansion of the scope of the asserted patents constitutes patent misuse.

305.   Finally, Katz has asserted ongoing infringement of expired patents.  Specifically, the '968, '150, '309, '285, '707, '551, '863, '893, '965,'134, and '762 patents expired on December 20, 2005.  The '065, '547, '360, and '223 patents expired on July 10, 2005.

306.   Yet Katz has asserted that "the AIG Defendants have been and are now infringing, actively inducing the infringement of, or contributing to the infringement of one or more claims of each of the patents identified in Paragraph 81", which includes expired patents.  Katz Amended Complaint, ¶ 82, Jan. 15, 2008.

307.   Katz has also requested that the Court "[a]djudge that the AIG Defendants have been and are infringing one or more claims of the patents Identified in Paragraph 81 of this Complaint….".  Amended Complaint, Prayer for Relief ¶ 1, Jan. 15, 2008.

308.   Thus, at least the '968, '150, '309, '285, '707, '551, '863, '893, '965, '968, '134, '762, '065, '547, '360, and '223 patents are unenforceable as a result of the above-described conduct under the doctrines of unclean hands and/or patent misuse.

## Thirtieth Affirmative Defense

309.   On information and belief, at least some of the Accused AIG Systems, or components thereof, are provided, in whole or in part, by entities who have licenses under one or more of the Katz asserted patents and/or related patents.

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

310.   Specifically, on information and belief, at least some of the Accused AIG Systems, or components thereof, are provided by Speedpay, Inc., which, on information and belief, is a subsidiary of First Data Corporation.

311.   On information and belief, Katz and First Data Resources Inc. entered into a License and Covenant Not to Sue under which First Data Corporation is licensed to the Katz asserted patents.

312.   Therefore, those Accused AIG Systems using systems or services provided by Speedpay, Inc. do not infringe the Katz asserted patents.

## Thirty-First Affirmative Defense

313.   To the extent Katz seeks damages for alleged infringement more than six years prior to the filing of the present litigation, Katz's claims are barred by the statute of limitations under 35 U.S.C. § 287.

## Thirty-Second Affirmative Defense

314.   The Amended Complaint fails to state a claim for patent infringement upon which relief can be granted.

## Thirty-Third Affirmative Defense

315.   Should any of the AIG Defendants be found to infringe any of the asserted claims, such infringement was not willful.

## THE AIG DEFENDANTS' COUNTERCLAIMS AGAINST KATZ

As for its counterclaims against Katz, the AIG Defendants complains as follows:

1.   American International Group, Inc. is a Delaware corporation with a place of business at 70 Pine Street, New York, New York 10270.

2.   AIG Retirement Services, Inc. is a Delaware corporation with a place of business at One SunAmerica Center, Los Angeles, California 90067.

3.   21st Century Insurance Group is a Delaware corporation with a place of business at 6301 Owensmouth Avenue, Woodland Hills, California 91367.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

4.     AIG Marketing, Inc. is a Delaware corporation with a place of business at One AIG Center, Wilmington, Delaware 19803.

5.     AIG SunAmerica Asset Management Corp. is a Delaware corporation with a place of business at 733 Third Avenue, New York, New York 10017.

6.     AIG Federal Savings Bank is a federal savings bank with a place of business at 704 King Street, Wilmington, Delaware 19801.

7.     AIG Life Insurance Company is a Delaware corporation with a place of business at One ALICO Plaza, Wilmington, Delaware 19899.

8.     On information and belief, Ronald A. Katz Technology Licensing, L.P. ("Katz") is a limited partnership organized under the laws of the State of California, with a principal place of business in Los Angeles, California.

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

10.     Katz is subject to personal jurisdiction in this judicial district.

11.     Venue for this action is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## COUNT I

### (For Declaratory Judgment of Non-Infringement)

12.     The AIG Defendants repeat and reallege the allegations of the preceding paragraphs in this counterclaim as if fully set forth herein.

13.     The AIG Defendants are not infringing, and have not infringed, directly, by inducement, contributorily, or in any way, any valid and asserted claim of any of the Katz asserted patents.

14.     To resolve the legal and factual questions raised by Katz, and to afford relief from the uncertainty and controversy that Katz's accusations have precipitated, the AIG Defendants are entitled to a declaratory judgment that they do not infringe any valid and asserted claim of any of the Katz asserted patents.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

## COUNT II

### (For Declaratory Judgment of Invalidity)

15.    The AIG Defendants repeat and reallege the allegations of the preceding paragraphs in this counterclaim as if fully set forth herein.

16.    One or more of the claims of the '065, '120, '134, '150, '223, '252, '285, '360, '551, '734, '762, '863, '893, '965, '968, and '984 patents (collectively, the "Katz asserted patents") is invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

17.    To resolve the legal and factual questions raised by Katz, and to afford relief from the uncertainty and controversy that Katz's accusations have precipitated, the AIG Defendants are entitled to a declaratory judgment that one or more of the claims of the Katz asserted patents is invalid.

## COUNT III

### (For Declaratory Judgment of Unenforceability Based on Inequitable Conduct)

18.    The '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents are unenforceable due to inequitable conduct in their procurement in violation of duties imposed by 37 C.F.R. § 1.56.

19.    During the course of prosecuting the applications leading to the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents, the named inventor, Ronald A. Katz ("Mr. Katz"), and his attorneys engaged in inequitable conduct by intentionally withholding material information, including prior art, from the United States Patent and Trademark Office ("the USPTO").  As a result of that inequitable conduct, which is described more fully below, the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents are unenforceable.

## A. Failure to Disclose Material Prior Art

### 1. Barger

20.     U.S. Patent No. 4,071,698 ("the Barger patent") issued on January 31, 1978, over seven years before the earliest possible effective filing date of the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents.

21.     In connection with an application filed by Mr. Katz to pursue foreign patents, the European Patent Office ("EPO") conducted a prior art search and documented the results of the search in a search report dated December 1988.  The EPO search report listed the Barger patent as a reference deemed to be "particularly relevant if taken alone."  The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO.

22.     On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

23.     Thereafter, on information and belief, in or about mid-1989, Mr. Katz and his attorneys negotiated the purchase of the Barger patent on behalf of First Data Corporation, which was then the assignee of the Katz patents.

24.     Mr. Katz and his attorneys did not disclose the Barger reference during the prosecution of at least the applications that led to the grant of U.S. Patent Nos. 4,845,739 ("the '739 patent"), 5,073,929 ("the '929 patent"), or the '309, '984, '252, '150, '285, or '965 patents.

25.     The USPTO did not consider the Barger reference during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents.

26.     The Barger reference would have been material to the patentability of the applications that issued as the '739, '929, '309, '984, '252, '150, '285, and '965 patents at least because the Barger reference discloses a telephone-based system

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

that screens a caller by checking the caller's account number to insure that a limit on use of the account number has not been exceeded.

27.     With respect to other Katz patents in the same or similar families as the Katz asserted patents, third parties have relied on the Barger patent to petition the USPTO to reexamine certain Katz patents, including the '707 patent and '547 patent.  An examiner rejected certain of Katz's pending claims in the '707 or '547 patent applications based in part on the teachings of the Barger patent, and the United States Patent and Trademark Office Board of Patent Appeals And Interferences ("BPAI") affirmed that rejection in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998), at 13.

28.     The '707 and '547 patents contain specifications substantially identical to that of the '739 patent.

29.     At all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

30.     On information and belief, at all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

31.     Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to properly disclose the Barger reference to the USPTO during the prosecution of the '739, '929, '309, '984, '252, '150, '285, and '965 patents.  On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

32.     As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents.  That inequitable conduct renders each of those patents unenforceable in its entirety.

33.     Each of the '893, '863, '734, '120, '223, '551, '065, '360, '762, '134, '547, and '707 patents is sufficiently related to at least one or more of the '739, '929, '309, '984, '252, '150, '285, and '965 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

34.     Specifically, the '863 patent is closely related to the '739 and '309 patents at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.  The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the qualification of callers for limited access to, or limits on the use of, the system or the qualification of callers based at least in part on the caller's telephone number.

35.     Further, the '893, '551, '065, '360, '762 and '134 patents are closely related to at least the '739 patent.  In fact, Mr. Katz has disclaimed for each of the '893, '551, '065, '360, '762, and '134 patents any term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the USPTO indicating that the claimed inventions were not patentably distinct.

36.     The '734, '223 and '120 patents are closely related to the '984, '929, '739 and '252 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement, and/or claimed subject matter with common elements and overlapping scope.  The common elements reflect concepts that are disclosed in one or more of the withheld references, including claim limitations concerning the acceptance or qualification of callers based on a number such as limited-use number or the caller's telephone number.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

37.     The '252, '150, '285, '965, '893, '863, '734, '120, '223, '551, '065, '360, '762, '984, '134, '309, '547, and '707 patents are therefore unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 2. De Bruyn

38.     The application for European Patent No. EP0032410, by De Bruyn, was first published in French by the EPO on July 22, 1981.  On February 14, 1984, the Canadian Patent Office issued corresponding Canadian Patent No. 1,162,336 ("the De Bruyn Canadian patent"), which included an English-language version of the original EPO specification.

39.     The EPO specification for De Bruyn was published nearly four years before the earliest possible effective filing date of the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents.  The Canadian De Bruyn Canadian patent was published more than one year before the earliest possible effective filing date of the '065, '120, '134, '150, '223, '252, '285, '309, '360, '547, '551, '707, '734, '762, '863, '893, '965, '968, and '984 patents.

40.     In connection with an application filed by Mr. Katz to pursue foreign patents, the EPO conducted a prior art search and documented the results of the search in a search report dated December 1988.  The EPO search report listed the De Bruyn Canadian patent as a reference deemed to be "particularly relevant if taken alone."  The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO.

41.     On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

42.     On information and belief, Mr. Katz and his attorneys were aware of the De Bruyn Canadian patent during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

43.     Mr. Katz and his attorneys did not disclose the De Bruyn Canadian patent during the prosecution of the applications that led to the grant of  the '739, '929, '309, '984, '252, '150, and '285 patents.

44.     The USPTO did not consider the De Bruyn Canadian patent during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

45.     The De Bruyn Canadian patent would have been material to the patentability of the applications that issued as '739, '929, '309, '984, '252, '150, and '285 patents at least because the De Bruyn Canadian patent discloses a telephone lottery system that screens a caller by checking the caller's phone number, which has a limit on its use.

46.     Indeed, during the reexamination of the '707 patent, which has a specification substantially identical to the '739 patent, the USPTO issued an Office Action rejecting over seventy (70) claims of the '707 patent under 35 U.S.C. § 102(b), as being anticipated by the De Bruyn Canadian patent.

47.     The Director of the USPTO has relied on the substantively identical DeBruyn Canadian patent in ordering the reexamination of several of Katz's patents related to the Katz asserted patents, including the '707 patent, the '309 patent, and 5,259,023 ("the '023 patent").

48.     As to the '309 patent, for example, the Director stated: "In view of the teachings of [the DeBruyn Canadian Patent], a substantial new question of patentability is raised as to claim 23 of the ['309 patent], and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate." Reexamination Control No. 90/006,976, Director Initiated Order For Reexamination mailed March 26, 2004, at 6.

49.     An examiner at the USPTO has determined that the DeBruyn Canadian patent anticipates at least claims 1, 2, 7, 8, 10, 21, and 22-27 of the '023 patent under 35 U.S.C. § 102(b).  Reexamination Control Nos. 90/006,977 and

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

90/007,058 [Merged Proceedings], Office Action mailed September 1, 2005, at 2-9. The examiner has also relied on the DeBruyn Canadian patent in rejecting claims 5, 6, 22, and 23 of the '023 patent under 35 U.S.C. § 103.  *Id.* at 24-26, 28.

50.    The examiner also has determined that the DeBruyn Canadian patent anticipates at least claims 23, 25-37, 41-43, 46, 50, and 51 of the '309 patent under 35 U.S.C. § 102(b).  Reexamination Control Nos. 90/006,976 and 90/007,092 [Merged Proceedings], Office Action mailed September 9, 2005, at 2, 9-19.  The examiner has also relied on the DeBruyn Canadian patent in rejecting claims 1, 7-12, 14, 20, 24, 32, 28-42, and 52-58 of the '309 patent under 35 U.S.C. § 103.  *Id.* at 2, 32-43.

51.    At all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, and '285 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

52.    On information and belief, at all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, and '285 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

53.    Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to disclose properly to the USPTO the De Bruyn Canadian patent during the prosecution of the '739, '929, '309, '984, '252, '150, and '285 patents.  On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

54.    As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

the '739, '929, '309, '984, '252, '150, and '285 patents.  That inequitable conduct

renders each of those patents unenforceable in its entirety.

55.     Each of the '893, '863, '734, '120, '223, '551, '065, '360, '762, '134,

'547, '965, and '707 patents is sufficiently related to one or more of the '739, '929,

'309, '984, '252, '150, and '285 patents to be rendered unenforceable as well under

the doctrine of infectious unenforceability.

56.     Specifically, the '863 patent is closely related to the '739 and '309

patents at least because it has a specification that is substantially the same, common

lineage, commons terms of enforcement and/or claimed subject matter with

common elements and overlapping scope.  The common elements reflect concepts

that are disclosed in one or more of the withheld references, such as the

qualification of callers for limited access to, or limits on the use of, the system or

the qualification of callers based at least in part on the caller's telephone number.

57.     Further, the '893, '551, '065, '360, '762 and '134 patents are closely

related to at least the '739 patent.  In fact, Katz has disclaimed for each of the '893,

'551, '065, '360, '762, and '134 patents any term subsequent to the patent term of

the '739 patent, in most instances in response to double patenting rejections made

by the USPTO indicating that the claimed inventions were not patentably distinct.

58.     The '965, '734, '223, and '120 patents are closely related to the '984,

'929, '739 and '252 patents at least because they have specifications that are

substantially the same, common lineage, commons terms of enforcement and/or

claimed subject matter with common elements and overlapping scope.  The

common elements reflect concepts that are disclosed in one or more of the withheld

references, including claim limitations concerning the acceptance or qualification of

callers based on a number such as limited-use number or the caller's telephone

number.

59.     The '984, '252, '150, '285, '893, '863, '734, '120, '223, '551, '065,

'360, '762, '309, '134, '547, '965, and '707 patents are therefore unenforceable as a

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    result of the above-described inequitable conduct in the prosecution of closely

2    related patents and patent applications.

3                          *3. Periphonics References*

4        60.    On information and belief, in April 1993, in connection with *First

5    Data Resources, Inc. v. West Interactive Corp., et al.*, CV 91-4471-TJH (C.D. Cal.

6    1991) ("*First Data v. West*"), materials bearing Bates numbers W72807-W73756

7    ("the *West* materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst &

8    Green ("the Nilsson firm").  The Nilsson firm was involved in prosecuting many of

9    Mr. Katz's patent applications, some of which would ultimately issue as the Katz

10   asserted patents.

11       61.    In U.S. Patent Application No. 08/306,456, which issued as the '965

12   patent, Katz stated: "During litigation [*First Data v. West*], a voluminous quantity

13   of prior art, that is, some 500 items (including single or plural related documents

14   grouped together), were identified by the defendant.  However, during pretrial

15   procedures, the defendant distilled the applied art to 59 separate items (including

16   single or plural related documents)."  Paper no. 3, filed November 4, 1994.  Katz

17   also stated: "The voluminous quantity of art identified during litigation, excluding

18   the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental

19   I)."  Paper no. 3, filed November 4, 1994.

20       62.    Mr. Katz and his attorneys made the same statements in the

21   applications that issued as the '707 patent (IDS filed November 14, 1994), the '285

22   patent (IDS filed September 20, 1994), and the parent application of the '893 patent

23   (IDS filed November 7, 1994 in Application No. 08/306,751).  Other applications

24   use varying language that refers the examiner to the references disclosed during

25   prosecution of the '707 patent.  These other applications include the '863 patent

26   (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent

27   (IDS filed January 16, 1997), and the '551 patent (IDS filed October 2, 1996).

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

63.     In connection with making these statements during the prosecution of the '707, '965, '285, '893, '863, '762, and '551 patents, Mr. Katz and his attorneys submitted to the USPTO certain materials containing Bates numbers within the range of the *West* materials.

64.     On information and belief, the Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") and Periphonics VoicePac System with Peritalk/Announce Product Description and User Guide, Publication #3270601C, 1987 ("the VoicePac reference") bore Bates numbers within the range of the *West* materials.

65.     Specifically, the Bank-From-Home reference bore Bates numbers W73055–W73095, and the VoicePac reference bore Bates numbers W73219–W73302.

66.     The Bank-From-Home and the VoicePac references are highly relevant to many claims of the Katz asserted patents.  The Bank-From-Home reference describes such limitations of claims of the Katz asserted patents as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system.  The VoicePac reference describes such limitations of claims of the Katz asserted patents as interfacing callers to the system and transferring callers to a customer service representative.

67.     At all times during the prosecution and pendency of the applications leading to the  the'707, '965, '285, '893, '863, '762, and '551 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

68.     On information and belief, at all times during the prosecution and pendency of the applications leading to the'707, '965, '285, '893, '863, '762, and '551 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

dealing to the USPTO, and were aware of their duty to disclose material

information to the USPTO, as required by 37 C.F.R. § 1.56.

69.    While other references containing Bates numbers within the range of the *West* materials were submitted to the USPTO during prosecution of the '707, '965, '285, '893, '863, '762, and '551 patents, the Bank-From-Home and VoicePac references were, on information and belief, knowingly withheld during prosecution of at least these patents with knowledge of their materiality.

70.    As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '707, '965, '285, '893, '863, '762, and '551 patents.  That inequitable conduct renders each of those patents unenforceable in its entirety.

71.    Each of the '065 and '360 patents is sufficiently related to one or more of the '707, '965, '285, '893, '863, '762, and '551 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

72.    Specifically, the '065 and '360 patents are closely related to the '707, '863, '762, '551, and '739 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.  In fact, Mr. Katz has disclaimed for each of the '893, '551, '065, '360, and '762 patents any term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the USPTO indicating that the claimed inventions were not patentably distinct.

73.    Thus, at least the '965, '285, '893, '863, '762, '551, '707, '065, and '360 patents are rendered unenforceable due to the inequitable conduct that occurred during the prosecution of closely related patents and patent applications.

### 4. Katz PCT Application

74.    PCT application (PCT application WO 87/00375) ("the '375 application"), by Mr. Katz, was published on January 15, 1987

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

75.    The '375 application is prior art for any claims with a filing date more than a year after the publication date (January 15, 1987).  35 U.S.C. § 102(b).

76.    The filing date of the application that issued as the '739 patent, which was May 16, 1988, was more than one year after the publication of the '375 application.

77.    The '375 application constituted prior art to all the claims in the application for the '739 patent which that incorporated any new matter.

78.    The '375 application would have been material to many of the basic elements claims in the '739 patent, such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

79.    Mr. Katz and his attorneys were aware of the existence and materiality of the '375 application during the pendency of the '739 patent application.

80.    At all times during the prosecution and pendency of the application leading to the '739 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

81.    On information and belief, at all times during the prosecution and pendency of the application leading to the '739 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

82.    Despite knowledge of the '375 application and its materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys did not bring the '375 application to the attention of the examiner during the prosecution of the '739 patent.  Instead, Mr. Katz and his attorneys allowed the examiner to issue the '739 patent without considering the prior art effect of the published '375 application.  On

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   information and belief, they did so deliberately and with an intent to deceive the

2   USPTO and its officials.

3       83.    As a result of the above-described conduct, Mr. Katz and/or his

4   attorneys are guilty of inequitable conduct in the prosecution of the application

5   leading to the '739 patent.  That inequitable conduct renders the '739 patent

6   unenforceable in its entirety.

7       84.    Each of the '252, '150, '285, '965, '893, '863, '734, '120, '223, '551,

8   '065, '360, '762, '984, '134, '309, '547, and '707 patents is sufficiently related to

9   the '739 patent to be rendered unenforceable as well under the doctrine of

10  infectious unenforceability.

11      85.    Specifically, all contain claims with subject matter that includes

12  subject matter that was at issue during the prosecution of the '739 patent and to

13  which the '375 application would have been relevant.

14      86.    As an example, due to the interrelatedness of the '893, '863, '551,

15  '065, '360, '762, '134, and '739 patents, Katz has disclaimed for each of the '893,

16  '863, '551, '065, '360, '762, and '134 patents any patent term subsequent to the

17  patent term of the '739 patent, in most instances in response to double patenting

18  rejections made by the USPTO indicating that the claimed inventions were not

19  patentably distinct.

20      87.    The inequitable conduct concerning the '375 application thus renders

21  unenforceable at least the '252, '150, '285, '965, '893, '863, '734, '120, '223, '551,

22  '065, '360, '762, '984, '134, '309, '547, and '707 patents.

23                              *5. Daudelin*

24      88.    U.S. Patent No. 4,943,995 ("the Daudelin '995 patent") issued on July

25  24, 1990 and is prior art to at least the '120 patent, which was filed in 1995.

26      89.    Mr. Katz and his attorneys did not disclose the Daudelin '995 patent

27  during the prosecution of at least the '120 patent.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

90.     The Daudelin '995 patent is material to certain of the claimed subject matter under consideration in the prosecution of at least the '120 patent.

91.     More specifically, the Daudelin '995 patent discloses a system for receiving toll free calls directed to either one of two toll-free telephone numbers associated with either business or consumer products.  Callers are provided product information and can place orders, using either automated voice response systems, human operators, or combinations thereof.  Callers are qualified based in part on their calling party number, and the particular product they selected.

92.     Because the Daudelin '995 patent discloses many of the features claimed in the '120 patent, it would have been material to the USPTO in deciding whether to allow the claims of the '120 patent.  For example, the '120 patent claims receiving calls in a toll free mode, receiving calls directed to two different toll-free numbers, receiving and testing calling number identification data, prompting callers with voice prompts, and processing data entered by the callers.

93.     On information and belief, Mr. Katz and his attorneys were aware of the Daudelin patent during the prosecution of the '120 patent, having cited it to the USPTO in connection with other applications at least by October 26, 1997, more than two years prior to the issuance of the '120 patent in 1999.  On information and belief, the Daudelin '995 patent was listed in previous submissions during the prosecution of certain of Mr. Katz's other patents, although "Daudelin" was misspelled as "Dandelin."

94.     At all times during the prosecution and pendency of the application leading to the '120 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

95.     On information and belief, at all times during the prosecution and pendency of the application leading to the '120 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    of their duty to disclose material information to the USPTO, as required by 37

2    C.F.R. § 1.56.

3        96.    Despite knowledge of the Daudelin '995 patent and its materiality, and

4    despite the duties of candor, fair dealing, and disclosure imposed on them by law

5    and by the rules of the USPTO, Mr. Katz and his attorneys did not disclose the

6    Daudelin '995 patent during the prosecution of at least the '120 patent.  On

7    information and belief, they did so deliberately and with intent to deceive the

8    USPTO and its officials into issuing patent claims of a scope beyond which Mr.

9    Katz was entitled.

10       97.    As a result of the above-described conduct, Mr. Katz and/or his

11   attorneys are guilty of inequitable conduct in the prosecution of the application for

12   the '120  patent.  That inequitable conduct renders that patent unenforceable in its

13   entirety.

14       98.    At least each the '223 patent is sufficiently related to the '120  patent

15   to be rendered unenforceable as well under the doctrine of infectious

16   unenforceability.

17       99.    For example, at least the '223 patent claims priority to the '120 patent

18   and claims subject matter related to the '120 patent, to which the Daudelin '995

19   patent is material.

20       100.   At least the '120 and '223 patents are unenforceable as a result of the

21   above-described inequitable conduct in the prosecution of closely related patents

22   and patent applications.

23

24                          *6. Yoshizawa*

25       101.   An article entitled "Voice Response System For Telephone Betting"

26   by Yoshizawa, et al. ("the Yoshizawa article") appeared in the 1977 issue of

27   Hitachi Review magazine.

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

102.   The Yoshizawa article discloses an automatic off-track betting system. The system includes a voice response unit, a public telephone network and a central processing unit.  Incoming calls are answered by the voice response unit prompting the caller to enter an account number and password, and then select one or more pari-mutuel tickets, for example, a wager on a horse to "show."  The entered data is then stored in the caller's account file.  Each wager is counted against a preset daily wagering limit.  The caller is provided with a registration number referencing the transaction.  Ticket payments are made automatically by deducting the cost of the ticket from the caller's bank account.  The article specifically mentions that the system could be used for "winning lot number service," or a lottery.

103.   Many features relevant to at least the '575, '252, '734 and '965 patents are disclosed in the Yoshizawa article.  For example, Yoshizawa discloses limiting access and use to a telephone-based gambling or lottery system and qualifying callers based on an account number.

104.   On information and belief, Mr. Katz and his attorneys were aware of the materiality of the Yoshizawa article at least as early as September 2, 1992, when it was cited in response to interrogatories in *First Data v. West*.

105.   At all times during the prosecution and pendency of the application leading to the '575, '252, '734, and '965 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

106.   On information and belief, at all times during the prosecution and pendency of the application leading to the '575, '252, '734, and '965 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

107.   Despite knowledge of the Yoshizawa article and its materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

and by the rules of the USPTO, Mr. Katz and his attorneys did not disclose the Yoshizawa article during the prosecution of at least the '575, '252, '734, and '965 patents.  On information and belief, they did so deliberately and with intent to deceive the USPTO and its officials into issuing patent claims of a scope beyond which Mr. Katz was entitled.

108.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application for the '575, '252, '734, and '965 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

109.   Each of the '120, '223, '065, '360, '551, '863, '893, and '134 patents are sufficiently related to at least one or more of the '575, '252, '734, and '965 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

110.   Specifically, the '120, '223, '065, '360, '551, '863, and '893 patents are closely related to the '252 and '575 patents and claim subject matter to which the Yoshizawa article was material.  The '134 patent is related to the '965 patent and claims subject matter to which the Yoshizawa article was material.

111.   Thus, at least the '252, '734, '965, '120, '223, '065, '360, '551, '863, '893, and '134 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications..

### 7. Corbett

112.   On information and belief, Mr. Katz and/or his attorneys had knowledge of and failed to disclose a reference entitled "Telephone Enquiry System Using Synthetic Speech" by Angela J. Corbett ("the Corbett Reference") as part of the prosecution of at least the '965 and '285 Katz asserted patents.  On information and belief, Mr. Katz and his attorneys unreasonably delayed disclosing the Corbett

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

reference to the USPTO and mischaracterized its materiality in connection with the prosecution of at least the '734, '120, '134, '223, and '252 patents.

113.   On information and belief, Mr. Katz and his attorneys had knowledge of the Corbett reference and its materiality at least as early as August 13, 1993 when it was disclosed in connection with *First Data v. West*.  On information and belief, First Data Resources (which later became known as Ronald A. Katz Technology Licensing, L.P.) had knowledge of the Corbett reference in connection with West's motion for summary judgment of invalidity of the Katz patents at issue in that case.

114.   The Corbett reference is material to certain of the claimed subject matter of at least the '965, '285, '120, '134, '223, and '252 patents.  Corbett teaches use of identification to qualify access to a system (user name and password), limited use based on key numbers relating to limits on use (limiting the number of times a particular user can play a game), selectively repeating cues based on user identification, receiving entry of product identifier to check stock availability and price, and use of a single system to implement several different types of services.

115.   Because the Corbett Reference discloses many of the features claimed in the '965, '285, '120, '134, '223, and '252 patents, it would have been material to the USPTO in deciding whether to allow the claims of those patents.

116.   At all times during the prosecution and pendency of the applications leading to the '965, '285, '120, '134, '223 and '252 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

117.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '965, '285, '120, '134, '223 and '252 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

118.   Despite knowledge of the Corbett Reference and its materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys intentionally delayed disclosing the material Corbett Reference from the USPTO during the prosecution of at least the '120, '134, '223 and the '252 patents, denying the Examiner the opportunity to consider the reference in the substantive prosecution of those patents.  On information and belief, Mr. Katz and his attorneys also mischaracterized the materiality of the Corbett Reference to the USPTO.  On information and belief, they did so deliberately and with intent to deceive the USPTO and its officials into issuing patent claims of a scope beyond which Mr. Katz was entitled.

119.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application for the '965, '285, '120, '134, '223, and '252 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

120.   Each of the '893 and '734 patents are sufficiently related to at least one or more of the '965, '285, '120, '134, '223, and '252 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

121.   Specifically, the '734 patent is closely related to the '252, '223, and '120 patents at least because it has a specification that is substantially the same, common lineage, common terms of enforcement and/or claimed subject matter with common elements and overlapping scope to which the Corbett article was material. The '893 patent is closely related to the '285 patent and claims subject matter to which the Corbett article was material.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

122.   Thus, at least the '965, '285, '120, '134, '223, '252, '734, and '893 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 8. Moosemiller

123.   "AT&T's Conversant I Voice System," by John P. Moosemiller ("the Moosemiller reference"), was published in the March/April 1986 issue of "Speech Technology."

124.   On information and belief, Mr. Katz and/or his attorneys had knowledge of the Moosemiller reference at least as early as July 21, 1998, in connection with a lawsuit brought by Katz and MCI Telecommunications Corp. against AT&T Corp. and others in the United States District Court for the Eastern District of Pennsylvania (Civil Action No. 97-CV-4453), in which Katz asserted that AT&T infringed certain patents owned by Katz.

125.   The Moosemiller reference is material to certain of the claimed subject matter in at least the '965 and '734 patents.  The Moosemiller referencediscloses use of DNIS to allow advance classification of incoming calls for different applications which are greeted by appropriate transaction prompts, system use in conjunction with ACD/PBX, qualification based on user identification input, bridging to an attendant for help, or completing a partially automated transaction, and application of IVR technology to several areas including financial services, credit authorization, wholesale and retail distribution, sales order entry, direct marketing, transportation scheduling and dispatching, college registration, communication services.

126.   Because the Moosemiller reference discloses many of the features claimed in the '965 and '734 patents, it would have been material to the USPTO in deciding whether to allow the claims of those patents.

127.   At all times during the prosecution and pendency of the applications leading to the '965 and '734 patents, Mr. Katz and his attorneys owed a duty of

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1  candor and fair dealing to the USPTO, and were under a duty to disclose material

2  information to the USPTO, as required by 37 C.F.R. § 1.56.

3      128.   On information and belief, at all times during the prosecution and

4  pendency of the applications leading to the '965 and '734 patents, Mr. Katz and his

5  attorneys were aware of their duty of candor and fair dealing to the USPTO, and

6  were aware of their duty to disclose material information to the USPTO, as required

7  by 37 C.F.R. § 1.56.

8      129.   Despite knowledge of the Moosemiller reference and its materiality,

9  and despite the duties of candor, fair dealing, and disclosure imposed on them by

10  law and by the rules of the USPTO, Mr. Katz and his attorneys did not disclose the

11  Moosemiller reference during the prosecution of at least the '965 and '734 patents.

12  On information and belief, they did so deliberately and with intent to deceive the

13  USPTO and its officials into issuing patent claims of a scope beyond which Mr.

14  Katz was entitled.

15      130.   As a result of the above-described conduct, Mr. Katz and/or his

16  attorneys are guilty of inequitable conduct in the prosecution of the applications for

17  the '965 and '734 patents.  That inequitable conduct renders those patents

18  unenforceable in their entirety.

19      131.   Each of the '134, '120, and '223 patents are sufficiently related to at

20  least one or more of the '965 and '734 patents to be rendered unenforceable as well

21  under the doctrine of infectious unenforceability.

22      132.   Specifically, the '120 and '223 patents are closely related to the '734

23  patent at least because it has a specification that is substantially the same, common

24  lineage, common terms of enforcement and/or claimed subject matter with common

25  elements and overlapping scope to which the Moosemiller reference was material.

26      133.   Thus, at least the '965, '734, '134, '120, and '223 patents are rendered

27  unenforceable as a result of the above-described inequitable conduct in the

28  prosecution of closely related patents and patent applications.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

### *9. Perdue and Hester*

134.   An article entitled "Conversant I Voice System: Architecture and Applications," by Perdue, *et al.*, was published in the September/October 1986 issue of the AT&T Technical Journal ("the Perdue article").

135.   On information and belief, Mr. Katz and his attorneys were aware of the Perdue article before the filing of the '309 patent and during the prosecution of U.S. Patent Nos. 5,109,404 ("the '404 patent") and 5,218,631 ("the '631 patent"). Specifically, the Perdue article was cited by the patent examiner first during the prosecution of the '404 patent in an office action dated June 3, 1991, then again during the prosecution of the '631 patent in an office action dated June 17, 1991.

136.   Mr. Katz and his attorneys, however, did not disclose the Perdue article to the patent examiner during the prosecution of the '309 patent. Accordingly, the Perdue article was not considered by the patent examiner in determining patentability of the '309 patent.

137.   An article entitled "The AT&T Multi-Mode Voice Systems—Full Spectrum Solutions for Speech Processing Applications," by Hester *et al.*, was presented at the Proceedings of the 1985 AVIOS Conference ("the Hester article").

138.   On information and belief, Mr. Katz and his attorneys were aware of the Hester article before the filing date of the '309 patent and during the prosecution of the '404 patent. Specifically, the Hester article was cited by the patent examiner during the prosecution of the '404 patent in an office action dated June 3, 1991.

139.   Mr. Katz and his attorneys, however, did not disclose the Hester article to the patent examiner during the prosecution of the '309 patent. Accordingly, the Hester article was not considered by the patent examiner in determining patentability of the '309 patent.

140.   Both the Perdue and Hester articles are material to the patentability of the '309 patents as these articles disclose the architecture, operation, and

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

applications of the "Conversant I" system, which was made and used by AT&T, in detail. The "Conversant I" system was a programmable interactive voice response system that was used for telephonic access and interaction by callers. Another article describing the "Conversant I" system, the Moosemiller article, was used later by the USPTO during the reexamination of the '309 to invalidate 14 claims on the basis of anticipation. The Perdue and Hester articles provide greater detail regarding the "Conversant I" system and would therefore have been material to the examination of the '309 patent.

141. On information and belief, the materiality of the Perdue article to the Katz asserted patents was further confirmed by the USPTO in Reexam Control No. 90/008,155 (Reexamination of the '734 patent). In an order granting reexamination of the '734 patent, dated November 6, 2006, the USPTO found that a substantial new question of patentability existed, at least in part, in view of the Perdue article.

142. At all times during the prosecution and pendency of the application leading to the '309 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

143. On information and belief, at all times during the prosecution and pendency of the application leading to the '309 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

144. Despite knowledge of the Perdue and Hester articles and their materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys did not disclose the Perdue and Hester articles during the prosecution of at least the '309 patent. On information and belief, they did so deliberately and with intent to

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

deceive the USPTO and its officials into issuing patent claims of a scope beyond which Mr. Katz was entitled.

145.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application for the '309 patent.  That inequitable conduct renders that patent unenforceable in its entirety.

146.   At least the '707 patent claims priority from, and claims subject matter related to the '309 patent to which the Perdue and Hester articles are material, and is therefore sufficiently related the '309 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.

147.   Thus, at least the '309 and '707 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 10. Szlam

148.   U.S. Patent No. 4,797,911 to Szlam ("the Szlam patent") was filed on June 16, 1987 and issued on January 10, 1989.  The Szlam patent discloses a call center for receiving incoming calls, processing ANI to retrieve customer information, reviewing keypad information for placing or changing orders and connecting to an agent if needed.

149.   On information and belief, during the prosecution of at least the '309 patent, Katz had knowledge of and failed to disclose the Szlam patent.

150.   The Szlam patent is material to certain of the claimed subject matter under consideration during the prosecution of at least the '309 patent, and it would have been material to the USPTO in deciding whether to allow the claims of the '309 patent.

151.   On information and belief, Mr. Katz and his attorneys were aware of the Szlam patent during the prosecution of the '309 patent.  Specifically, Mr. Katz and his attorneys disclosed the Szlam patent to the patent examiner during the

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   pendency of the '150 patent in an amendment dated October 5, 1989.  The
2   amendment stated "…the following patents are deemed relative to the present
3   application: … U.S. Patent 4,797,911 – Szlam et al. – CUSTOMER ACCOUNT
4   ON-LINE SERVICING SYSTEM."  Page 5, Amendment dated October 5, 1989.

5       152.   At all times during the prosecution and pendency of the application
6   leading to the '309 patent, Mr. Katz and his attorneys owed a duty of candor and
7   fair dealing to the USPTO, and were under a duty to disclose material information
8   to the USPTO, as required by 37 C.F.R. § 1.56.

9       153.   On information and belief, at all times during the prosecution and
10  pendency of the application leading to the '309 patent, Mr. Katz and his attorneys
11  were aware of their duty of candor and fair dealing to the USPTO, and were aware
12  of their duty to disclose material information to the USPTO, as required by 37
13  C.F.R. § 1.56.

14      154.   Despite knowledge of the Szlam patent and its materiality, and despite
15  the duties of candor, fair dealing, and disclosure imposed on them by law and by
16  the rules of the USPTO, Mr. Katz and his attorneys did not disclose the Szlam
17  patent during the prosecution of at least the '309 patent.  On information and
18  belief, they did so deliberately and with intent to deceive the USPTO and its
19  officials into issuing patent claims of a scope beyond which Mr. Katz was entitled.

20      155.   As a result of the above-described conduct, Mr. Katz and/or his
21  attorneys are guilty of inequitable conduct in the prosecution of the application for
22  the '309 patent.  That inequitable conduct renders that patent unenforceable in its
23  entirety.

24      156.   At least the '707 patent claims priority from, and claims subject matter
25  related to the '309 patent to which the Szlam patent is material, and is therefore
26  sufficiently related the '309 patent to be rendered unenforceable as well under the
27  doctrine of infectious unenforceability.

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

157.   Thus, at least the '309 and '707 patents are rendered unenforceable due as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### B. Failure to Disclose Inconsistent Positions

158.   On information and belief, Mr. Katz and his attorneys repeatedly took inconsistent positions as to the scope of prior art to different patent examiners at different times during the prosecution of the Katz asserted patents and failed to inform the different patent examiners of Katz's inconsistent positions.

### *1. Daudelin Patents*

159.   At least three patents issued to Daudelin—including the Daudelin '995 patent, U.S. Patent No. 4,797,910 ("the Daudelin '910 patent"), and U.S. Patent No. 5,922,519 ("the Daudelin '519 patent") (collectively "the Daudelin patents")—were cited during the prosecution of certain of the Katz asserted patents and related patents.

160.   The specifications for the Daudelin '910 and the '519 patents are substantially similar, and all three of the Daudelin patents disclose aspects pertaining to DNIS (Dialed Number Identification Service) functionality.

161.   During the prosecution of the '734 patent, Katz characterized the Daudelin '910 patent as not disclosing "DNIS or like function."

162.   During the prosecution of the '551 patent, Katz characterized the Daudelin '910 patent as disclosing "DNIS or like function."

163.   During the prosecution of the '893 patent, Katz characterized the '910 Daudelin patent as disclosing "DNIS or like function."

164.   During the prosecution of the '360 patent, Katz took the position that "Daudelin does not teach DNIS."

165.   At all times during the prosecution and pendency of the applications leading to the '734, '551, '893, and '360 patents, Mr. Katz and his attorneys owed a

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

166.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '734, '551, '893, and '360 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

167.   Despite knowledge of the Daudelin patents and their materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and/or his attorneys took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of Katz's prior inconsistent positions.  On information and belief, Katz did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

168.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '551, '734, '893, and '360 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

169.   At least the '120, '223, and '065 patents claim priority and are sufficiently related to at least one or more of the '551, '734, '893, and '360 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

170.   Thus, at least the '551, '734, '893, '120, '223, '065, and '360 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

### 2. *Riskin*

171.   U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent") was filed on June 17, 1987 and issued on July 12, 1988.

172.   As part of the prosecution of the U.S. Patent No. 5,048,075 ("the '075 patent"), Mr. Katz and his attorneys stated "that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish routing. . . ."

173.   Contrary to this characterization of the Riskin patent in the '075 patent, Mr. Katz and his attorneys maintained, as part of the prosecution of the '120 patent, that the Riskin patent disclosed aspects pertaining to ANI ("Automatic [calling party] number identification") only, and not DNIS.

174.   At all times during the prosecution and pendency of the applications leading to the '075 and '120 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

175.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '075 and '120 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

176.   Despite knowledge of the Riskin patent and its materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys took inconsistent positions as to the scope of the Riskin patent to different patent examiners at different times and failed to inform the different patent examiners of Mr. Katz's prior inconsistent positions.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

177.   As a result of the above-described conduct, Mr. Katz and/or his
attorneys are guilty of inequitable conduct in the prosecution of the applications for
the '075 and '120 patents.  That inequitable conduct renders those patents
unenforceable in their entirety.

178.   At least the '223 patent claim priority and are sufficiently related to at
least one or more of the '075 and '120 patents to be rendered unenforceable as well
under the doctrine of infectious unenforceability.

179.   Thus, at least the '120 and '223 patents are rendered unenforceable as
a result of the above-described inequitable conduct in the prosecution of closely
related patents and patent applications.

## C. Failure to Identify/Disclose Material Information from Related Proceedings

180.   At all times during the prosecution and pendency of the applications
leading to the '065, '120, '134, '223, '252, '285, '360, '551, '734, '863, '893, '984,
and '965 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing
to the USPTO, and were under a duty to disclose material information to the
USPTO, as required by 37 C.F.R. § 1.56.

181.   On information and belief, at all times during the prosecution and
pendency of the applications leading to the '065, '120, '134, '223, '252, '285, '360,
'551, '734, '863, '893, '984, and '965 patents, Mr. Katz and his attorneys were
aware of their duty of candor and fair dealing to the USPTO, and were aware of
their duty to disclose material information to the USPTO, as required by 37 C.F.R.
§ 1.56.

182.   Pursuant to MPEP § 2001.06(c), "[w]here the subject matter for which
a patent is being sought is or has been involved in litigation," each individual
associated with the filing and prosecution of a patent application before the USPTO
has a duty to bring to the attention of the PTO "the existence of such litigation and
any other material information arising therefrom."

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

183.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '065, '120, '134, '223, '252, '285, '360, '551, '734, '863, '893, '984, and '965 patents, Mr. Katz and his attorneys were aware of their obligations under MPEP § 2001.06(c).

184.   On information and belief, as set forth in further detail below, as part of the prosecution of several of the Katz asserted patents, Mr. Katz and/or his attorneys failed to identify or disclose material information from several litigations of which they were aware, which involved related patents and material subject matter relating to the Katz accused patents with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Katz was entitled, thereby constituting inequitable conduct.

## 7. *West* Declaratory Judgment Action

185.   On October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action, Civil Action No. 90-0-688 ("the *West* declaratory judgment action"), against First Data in the United States District Court for the District of Nebraska.  West alleged, among other things, that the '739, '150 patents and U.S. Patent No. 4,939,773 ("the '773 patent") are invalid on several theories including prior use and prior art.

186.   West's allegations in that suit are material to at least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents, all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

187.   On information and belief, Mr. Katz and his attorneys were aware of the *West* declaratory judgment action during the prosecution of the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.

188.   Nonetheless, on information and belief, Mr. Katz and/or his attorneys failed to disclose the existence of the *West* declaratory judgment action and the subject matter of West's allegations to the USPTO as part of the prosecution of at

least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

189.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

190.   Furthermore, the '065 patent is sufficiently related to at least one or more of the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

191.   Specifically, the '065 patent is closely related to the '863 and '551 patents at least because they have specifications that are substantially the same, common lineage, common terms of enforcement and/or claimed subject matter with common elements and overlapping scope.

192.   Thus, at least the '065, '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### *8.   900 Million, Inc.*

193.   On October 9, 1990, First Data brought a suit, Civil Action No. 90-5418-HLH ("the *900 Million* litigation"), against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '773 patents.

194.   The defendants in the *900 Million* litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150 and '773 patents

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

195.   The defendants' counterclaims in the *900 Million* Inc. litigation are material to at least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents, all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

196.   On information and belief, Mr. Katz and his attorneys were aware of the *900 Million* litigation during the prosecution of the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.

197.   Nonetheless, on information and belief, Mr. Katz and his attorneys failed to disclose the existence of the *900 Million* litigation and of the subject matter of the defendant's allegations to the USPTO as part of the prosecution of at least the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

198.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

199.   Furthermore, the '065 patent is sufficiently related to at least one or more of the '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984, and '360 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

200.   Specifically, the '065 patent is closely related to the '863 and '551 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.

201.   Thus, at least the '065, '285, '863, '551, '734, '893, '120, '965, '134, '223, '252, '984 and '360 patents are rendered unenforceable as a result of the

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

above-described inequitable conduct in the prosecution of closely related patents
and patent applications.

### 9.  First Data v. West

202.   On August 20, 1991, First Data brought suit against West Interactive
Corp. and Fantasy Sports Concepts, Inc. in the United States District Court for the
Central District of California for the alleged infringement of the '739 and '150
patents as well as U.S. Patent No. 5,014,298 ("the '298 patent). *First Data
Resources, Inc. v. West Interactive Corp., et al.*, CV 91-4471-TJH (C.D. Cal. 1991)
("*First Data v. West*").

203.   The defendants in *First Data v. West* filed a counterclaim alleging,
among other things, the invalidity and unenforceability of the '739, '298, and '150
patents.

204.   The defendants' allegations in that suit are material to at least the '285,
'863, '551, '734, '893, '120, and '134 patents, all of which claim priority to at least
the '739 patent.

205.   On information and belief, Mr. Katz and his attorneys were aware of
*First Data v. West* during the prosecution of the '285, '863, '551, '734, '893, '120,
and '134 patents.

206.   On information and belief, Mr. Katz and his attorneys failed to
disclose to the USPTO the existence of *First Data v. West* or the subject matter of
the defendants' allegations during the prosecution of at least the '863, '551, '734,
'893, '120, and '134 patents.  On information and belief, they did so with the intent
of deceiving the USPTO into issuing patent claims of a scope beyond which Mr.
Katz was entitled.

207.   On information and belief, Mr. Katz and his attorneys also failed to
disclose to the USPTO the existence of *First Data v. West* or the subject matter of
the defendants' allegations during the prosecution of the '285 patent until after
prosecution on the merits had closed.  On information and belief, they did so with

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

208. As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '285, '863, '551, '734, '893, '120, and '134 patents. That inequitable conduct renders those patents unenforceable in their entirety.

209. Furthermore, the '065 and '223 patents are sufficiently related to at least one or more of the '863, '551, '734, '893, '120, and '134 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

210. Specifically, the '065 patent is closely related to the '863 and '551 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The '223 is closely related to the '120 and '734 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope

211. Thus, at least the '065, '223, '863, '551, '734, '893, '120 and '134 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### 10. Micro Voice Applications, Inc.

212. On February 9, 1999, Katz filed suit, Civil Action No. 99-CV-592 ("the *Micro Voice* litigation", against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California for infringement of the '739, '153, '252, '285, '863, '734, '023, and '707 patents.

213. In response to Katz's Complaint, the defendants in the *Micro Voice* litigation, alleged, among other things, that the '739, '153, '252, '023, '285, '707, '86,3 and '734 patents were invalid and/or unenforceable.

THE AIG DEFENDANTS' ANSWER AND COUNTERCLAIMS TO RAKTL'S AMENDED COMPLAINT

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

214.   The defendant's allegations in the *Micro Voice* litigation are material to at least the '965 and '134 patents, which are related patents to the patents at issue in that suit.

215.   On information and belief, Mr. Katz and/or his attorneys were aware of the *Micro Voice* litigation during the prosecution of the '965 and '134 patents.

216.   On information and belief, Mr. Katz and his attorneys failed to disclose to the USPTO the existence of the *Micro Voice* litigation or the subject matter of the defendants' allegations during the prosecution of at least the '965 patent.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

217.   On information and belief, Mr. Katz and his attorneys also failed to disclose to the USPTO the existence of the *Micro Voice* litigation or the subject matter of the defendants' allegations during the prosecution of the '134 patent until after prosecution on the merits had closed.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

218.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '965 and '134 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

### 11. AT&T Corp.

219.   On July 8, 1997, Katz and MCI Telecommunications Corp. brought suit, Civil Action No. 97-CV-4453 ("the *AT&T* litigation"), against AT&T Corp. and others in the U.S. District Court for the Eastern District of Pennsylvania for infringement of the '739, '150, '298, '075, '929, '984, '153, '252, '309, '023, '285, '120, '707, and '863 patents and U.S. Patent Nos. 5,218,631 ("the '631 patent"), 5,349,633 ("the '633 patent"), and 5,359,645 ("the '645 patent").

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

220.   In reply, AT&T Corp. asserted, among other things, that the '739, '150, '298, '075, '929, '984, '631, '153, '252, '309, '023, '285, '645, '120, '707, '863, and '633 patents were invalid.

221.   AT&T Corp.'s allegations in the *AT&T* litigation are material to at least the '893 and '120 patents, which are related to and claim related subject matter to the patents involved in that litigation.

222.   On information and belief, Mr. Katz and/or his attorneys were aware of the *AT&T* litigation during the prosecution of the '893 and '120 patents.

223.   On information and belief, Mr. Katz and his attorneys failed to disclose to the USPTO the existence of the *AT&T* litigation or the subject matter of the defendants' allegations during the prosecution of at least the '893 and '120 patents.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

224.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '863 and '120 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

225.   Furthermore, the '223 patent is sufficiently related to the '120 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.

226.   Thus, at least the '223, '120, and '893 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## 12. Patent Interference No. 103,697

227.   Patent Interference No. 103,697 was declared on February 13, 1996, and was finalized by November 20, 1996.  In that patent interference, the BPAI's concluded, *inter alia*, that the '968 patent specification did not provide written support for certain limitations claimed by Mr. Katz, which included transferring calls to an operator in certain circumstances.

228.   The BPAI's conclusion that the '968 patent lacked written support for certain alleged limitations would have been material to the patent examiners of the '863, '965, '734, '893, '120, and '134 patents, for the purpose of, for example, establishing the effective date of a claim for purposes of analyzing prior art.  Indeed, on information and belief, all of these patents claim priority to the '968 patent, and many of them, including at least the '863 and '134 patents, are disclaimed with respect to the '968 patent.

229.   On information and belief, Mr. Katz and his attorneys intentionally failed to disclose the existence of Patent Interference No. 103,697 and the BPAI's findings to the patent examiners of at least the '863, '965, '734, '893, '120, and '134 patents.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

230.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '863, '965, '734, '893, '120, and '134 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

231.   Furthermore, the '223 patent is sufficiently related to the '120 and '734 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.

232.   Thus, at least the '223, '863, '965, '734, '893, '120, and '134 patents
are rendered unenforceable as a result of the above-described inequitable conduct in
the prosecution of closely related patents and patent applications.

### D. Intentional Failure to Inform of Adverse Findings

233.   The MPEP § 2001.06(b) states that each individual associated with the
filing and prosecution of a patent application before the USPTO has "a duty to
bring to the attention of the examiner, or other [USPTO] official involved with the
examination of a particular application, information within their knowledge as to
other copending United States applications which are 'material to patentability' of
the application in question."  Furthermore, according to this section of the MPEP,
such individuals

> cannot assume that the examiner of a particular application is
> necessarily aware of other applications which are 'material to
> patentability' of the application in question, but must instead bring
> such other applications to the attention of the examiner….  For
> example, if a particular inventor has different applications pending in
> which similar subject matter but patently indistinct claims are present
> that fact must be disclosed to the examiner of each of the involved
> applications.

### 2.  Prosecution of the '965 Patent

234.   During the prosecution of the '344 patent, on information and belief,
Mr. Katz made the false assertion that the '968 patent supported the limitation
"automatic number identification (ANI) decoder means responsive to
predetermined signals on said telephone trunk for providing a calling party
telephone number."  Further, on information and belief, Katz falsely asserted that
the "[r]eferences cited are based on U.S. Patent No. 4,792,968 to Katz with a filing
date of Feb. 14, 1987, of which the present application is a continuation."

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

235.   The examiner of the '344 patent, Examiner Brown, in a 1990 Office Action, refuted Mr. Katz's assertion that the '344 patent application was a continuation of the '968 patent, noting, "the present application is not a continuation of '968. . . ." Rather, the pending application that resulted in the '344 patent was a continuation-in-part, in which new matter was added to the specification, and as such, any claims directed to the new matter were not entitled to the effective date of the '968 patent.

236.   Further, Examiner Brown rejected Katz's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation. Specifically, Examiner Brown stated that "applicant's patent [*i.e.*, the '968 patent] does not in fact disclose or describe an 'automatic number identification (ANI) decoder means'. . . .".

237.   On information and belief, during prosecution of the '965 patent, Mr. Katz attempted to traverse a claim rejection of his then pending claim 68 in light of the Szlam patent by falsely claiming that "Claim 68 as amended is fully supported by Applicant's earlier parent patent no. 4,792,968, filed on February 24, 1987, before ... Szlam....".

238.   On information and belief, Mr. Katz and his attorneys failed to inform the examiner of the '965 patent of Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means".

239.   Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means" would have been material to the examiner of the '965 patent in deciding the patentability of the pending claims, particularly with respect to antedating prior art.

240.   At all times during the prosecution and pendency of the application leading to the '965 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, were under a duty to disclose material information to the

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

USPTO, as required by 37 C.F.R. § 1.56, and were under a duty to disclose information relating to or from copending United States patent applications, as required by MPEP § 2001.06(b).

241.   On information and belief, at all times during the prosecution and pendency of the application leading to the '965 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56, and were aware of their obligations as outlined in MPEP § 2001.06(b).

242.   Despite knowledge of the Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means" and its  materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys failed to inform the examiner of the '965 patent of Examiner's Brown's prior conclusion.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

243.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '965 patent.  That inequitable conduct renders that patent unenforceable in its entirety.

244.   Furthermore, the '134 patent is sufficiently related to the '965 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.

245.   Thus, at least the '134 and '965 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

### 2. Prosecution of '551 Patent

246.   During prosecution of the '551 patent, Examiner Brown rejected certain claims submitted by Katz pursuant to 35 U.S.C. § 112 for lack of written support.  Specifically, Examiner Brown stated that "[t]he text actually is not found to describe how the interaction between the caller and the operator would proceed after the caller has been transferred thereto for "person-to-person" interaction, much less that such interaction necessarily would result in data entries being transferred to the memory."

247.   Mr. Katz continued prosecution of the same subject matter rejected by Examiner Brown in a subsequently filed application, which matured in the '065 patent, and again, in another subsequently filed application, which matured into the '360 patent.  Both of these applications were before a different patent examiner, Examiner Weaver.

248.   At all times during the prosecution and pendency of the applications leading to the '065 and '360 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56, and were under a duty to disclose information relating to or from copending United States patent applications, as required by MPEP § 2001.06(b).

249.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '065 and '360 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56, and were aware of their obligations as outlined in MPEP § 2001.06(b).

250.   Despite knowledge of Examiner Brown's finding and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys failed to

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

inform Examiner Weaver of the '065 and '360 patents of Examiner's Brown's prior conclusion.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

251.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '065 and '360 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

### 3. Appeal No. 94-0834

252.   On information and belief, Mr. Katz and his attorneys failed to inform the USPTO of the existence and outcome of certain Appeal Rulings that were adverse or contrary to positions Mr. Katz took during the prosecution of related patents.

253.   For example, Patent Application No. 07/640,337, naming Ronald A. Katz as the inventor, was filed on January 11, 1991.  In Appeal No. 94-0834 (Application No. 07/640,337), the BPAI found that the Barger patent disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

254.   The Barger patent is prior art to the Katz asserted patents.

255.   The BPAI's finding with respect to the scope of disclosure of the Barger patent would have been material to the patent examiners of at least the '734, '762, '893, '120, '021, '065, '965 and '134 patents with respect to any claims reciting a multiple format limitation.

256.   At all times during the prosecution and pendency of the applications leading to the '734, '762, '893, '120, '021, '065, '965, and '134 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56, and were under a duty to disclose information relating to or from copending United States patent applications, as required by MPEP § 2001.06(b).

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

257.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '734, '762, '893, '120, '021, '065, '965, and '134 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56, and were aware of their obligations as outlined in MPEP § 2001.06(b).

258.   Despite knowledge of the BPAI's finding that the Barger patent disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Katz failed to inform the examiners of at least the '734, '762, '893, '120, '021, '065, '965, and '134 patents of the BPAI's findings.  On information and belief, Katz did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Katz was entitled.

259.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '734, '762, '893, '120, '021, '065, '965, and '134 patents.  That inequitable conduct renders those patents unenforceable in their entirety.

260.   At least the '223, '547, and '360 patents are sufficiently related to one or more of the '734, '762, '893, '120, '021, '065, '965, and '134 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability. Specifically, at least each of the '223, '547 and '360 patents claim priority and related subject matter to one or more of the '734, '762, '893, '120, '021, '065, '965, and '134 patents.

261.   Thus, at least the '734, '762, '893, '120, '065, '965, '134, '223, '547, and '360 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

THE AIG DEFENDANTS' ANSWER AND COUNTERCLAIMS TO RAKTL'S AMENDED COMPLAINT

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

### E. False Claims of Priority

#### 1. '984 Patent

262.   U.S. Patent Application No. 07/425,779, naming Ronald A. Katz as inventor, was filed October 23, 1989 and issued as the '984 patent on July 7, 1992.

263.   WO 87/00375 ("the WO '375 application") was published on January 15, 1987.

264.   The '375 application is prior art to any new matter introduced and claimed in the '734 patent, which was based on a continuation-in-part application.

265.   During the pendency of the '984 patent, the USPTO rejected claim 10 under 35 U.S.C. § 103 "as being unpatentable over Fodale in combination with the teachings of WO 87/00375 ('the WO '375 application')." Office Action dated March 21, 1991.

266.   Mr. Katz responded that the '375 application "is not properly a reference against the present case."  Katz's Amendment dated June 20, 1991.

267.   At all times during the prosecution and pendency of the application leading to the '984 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

268.   On information and belief, at all times during the prosecution and pendency of the applications leading to the '984 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

269.   Despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys falsely stated that the '375 application "is not properly a reference against the present case."  On information and belief, they did so with the intent of

1   deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz
2   was entitled.

3          270.   As a result of the above-described conduct, Mr. Katz and/or his
4   attorneys are guilty of inequitable conduct in the prosecution of the application for
5   the '984 patent.  That inequitable conduct renders that patent unenforceable in its
6   entirety.

7          271.   Each of the '252, '734, '124, and '223 patents claim priority and are
8   sufficiently related to the '984 patent to be rendered unenforceable as well under
9   the doctrine of infectious unenforceability.  Specifically, the '252, '734, '124, and
10  '223 patents share a substantially identical specification with the '984 patent, claim
11  priority to the '984 patent, and claim subject matter encompassing similar scope to
12  the rejected application claim 10 of the '984 patent.

13         272.   Furthermore, due to the interrelatedness of the '252, '734, and '120
14  applications and the '984 patent, Katz disclaimed for the '252, '734, and '120
15  patents any patent term subsequent to the patent term of the '984 patent.  Katz did
16  so in response to double patenting rejections, whereby the USPTO indicated that
17  the claimed inventions in the '252, '734, and '124 patents were not patentably
18  distinct.

19         273.   Thus, the '984, '252, '734, '120, and '223 patents are rendered
20  unenforceable as a result of the above-described inequitable conduct in the
21  prosecution of closely related patents and patent applications.

22                          *2.  '734 Patent*

23         274.   At all times during the prosecution and pendency of the application
24  leading to the '734 patent, Mr. Katz and his attorneys owed a duty of candor and
25  fair dealing to the USPTO, and were under a duty to disclose material information
26  to the USPTO, as required by 37 C.F.R. § 1.56.

27         275.   On information and belief, at all times during the prosecution and
28  pendency of the application leading to the '734 patent, Mr. Katz and his attorneys

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

### a. Brown

276.   U.S. Patent No. 4,972,461 ("the Brown patent") issued on November 20, 1990.

277.   During prosecution of the '734 patent, Mr. Katz stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent.  Amendment, January 31, 1996 at page 11-12.

278.   In the '150 patent, however, there is no suggestion of multiple call modes, as claimed in the '734 patent.

279.   Despite knowledge that the '150 does not teach or suggest multiple call modes and of that fact's materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Brown patent.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

### b. Hester

280.   During prosecution of the '734 patent, Mr. Katz stated that "the reference by Hester bears a date of 1985, apparently 'September'.  In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985."  Supplemental Amendment, March 14, 1995.

281.   On information and belief, the phrase "parent case filed July 10, 1985" referred to U.S. Patent Application No. 06/753,299 ("the '299 application").

282.   The '299 application discloses neither toll free calls nor 900 "pay-per-call" modes.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

283.   Therefore, none of the claims in the '734 patent reciting claim limitations directed to toll free calls or 900 "pay-per-call" modes is entitled to claim priority to that patent application's filing date.

284.   Despite knowledge that the '299 application discloses neither toll free calls nor 900 "pay-per-call" modes and of that fact's materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Brown patent.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

### c. Kaplan

285.   U.S. Patent 4,797,913 to Kaplan ("the Kaplan patent") was filed on August 4, 1987.

286.   During prosecution of the '734 patent, Mr. Katz stated that "the present application is entitled to a priority date earlier than that of the subject reference [*i.e.*, the Kaplan patent]."  Supplemental Amendment, March 14, 1995.

287.   On information and belief, when the March 14, 1995 Supplemental Amendment was submitted to the USPTO, there were claims in Mr. Katz's pending application (such as then pending claim 17) which contained and claimed new subject matter unsupported by the earlier filed application referenced by Mr. Katz, and were, therefore, not entitled to an earlier priority date.

288.   Despite knowledge that the '734 patent claimed new subject matter unsupported by the earlier filed application referenced by Mr. Katz, despite knowledge of that fact's materiality, and despite the duties of candor, fair dealing, and disclosure imposed on them by law and by the rules of the USPTO, on information and belief, Mr. Katz and his attorneys intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

antedate the Brown patent.  On information and belief, they did so with the intent of deceiving the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled.

289.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '734 patent.  That inequitable conduct renders that patent unenforceable in its entirety.

290.   At least the '120 and '223 patents claim priority and are sufficiently related to the '734 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.

291.   Thus, at least the '120, '223, and '734 patents are rendered unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

*In Re Katz Interactive Call Processing Litigation*    - 123 -    **THE AIG DEFENDANTS' ANSWER AND COUNTERCLAIMS TO RAKTL'S AMENDED COMPLAINT**

# THE AIG DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, the AIG Defendants respectfully request that this Court enter judgment in its favor and grant the following relief:

A.      A declaration that the AIG Defendants do not infringe any valid and asserted claim of U.S. Patent Nos. 6,148,065; 5,974,120; 6,349,134; 4,930,150; 6,434,223; 5,251,252; 5,351,285; 5,255,309; 6,678,360; 6,292,547; 5,815,551; 5,561,707; 5,828,734; 5,898,762; 5,684,863; 5,917,893; 6,335,965; 4,792,968; and 5,128,984;

B.      A declaration that U.S. Patent Nos. 6,148,065; 5,974,120; 6,349,134; 4,930,150; 6,434,223; 5,251,252; 5,351,285; 5,255,309; 6,678,360; 6,292,547; 5,815,551; 5,561,707; 5,828,734; 5,898,762; 5,684,863; 5,917,893; 6,335,965; 4,792,968; and 5,128,984 are invalid;

C.      A declaration that U.S. Patent Nos. 6,148,065; 5,974,120; 6,349,134; 4,930,150; 6,434,223; 5,251,252; 5,351,285; 5,255,309; 6,678,360; 6,292,547; 5,815,551; 5,561,707; 5,828,734; 5,898,762; 5,684,863; 5,917,893; 6,335,965; and 5,128,984; are unenforceable;

D.      Dismissal of all of Katz's claims in their entirety with prejudice;

E.      A declaration that Katz take nothing by way of its original complaint;

F.      An order awarding the AIG Defendants their costs pursuant to 35 U.S.C. § 284;

G.      An order finding that this is an exceptional case and awarding the AIG Defendants their reasonable attorney fees pursuant to 35 U.S.C. § 285; and

H.      An order awarding such additional relief as the Court may deem appropriate and just under the circumstances.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## THE AIG DEFENDANTS' DEMAND FOR JURY TRIAL

The AIG Defendants hereby demand a trial by jury on all issues so triable.

Dated:  February 1, 2008          By:    /s/ Brian E. Ferguson
Brian E. Ferguson
Joel M. Freed
Raphael V. Lupo

McDERMOTT WILL & EMERY LLP
Attorneys for The AIG Defendants

### CERTIFICATE OF SERVICE

I, Shayna Fischer, declare:

I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to this action.  My business address is 2049 Century Park East, 38th Floor, Los Angeles, California 90067-3208.

A true and correct copy of the following document(s) listed below, was served by transmission through the electronic service system CM/ECF of the United States District Court, Central District of California:  **THE AIG DEFENDANTS' ANSWER AND COUNTERCLAIMS TO PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** to be served upon the following parties:

PLEASE SEE ATTACHED SERVICE LIST,

Based on a court order or agreement of the parties to accept service by e-mail or electronic transmission, I caused the aforementioned document to be sent to the persons at the email addresses listed on the attached service list.  I did not receive, within a reasonable time after the submission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on **February 1, 2008**, at Los Angeles, California.

Executed on February 1, 2008, at Los Angeles, California.

/s/Shayna Fischer
Shayna Fischer

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*In Re Katz Interactive Call Processing Litigation*

- 126 -

THE AIG DEFENDANTS' ANSWER AND COUNTERCLAIMS
TO RAKTL'S AMENDED COMPLAINT

1

## SERVICE LIST

2

**FOR PLAINTIFF:**

| | |
|---|---|
| Ronald A. Katz Technology Licensing, L.P. in the Cases transferred from the District of Delaware<br><br>**Group Email:**<br>**raktl@hellerehrman.com** | Robert T. Haslam<br>robert.haslam@hellerehrman.com<br>Andrew C. Byrnes<br>andrew.byrnes@hellerehrman.com<br>HELLER EHRMAN LLP<br>275 Middlefield Road<br>Menlo Park, CA 94025<br>Phone:    650-324-7000<br>Fax:      650-324-0638<br><br>Michael K. Plimack<br>michael.plimack@hellerehrman.com<br>Dale A. Rice<br>dale.rice@hellerehrman.com<br>HELLER EHRMAN LLP<br>333 Bush Street<br>San Francisco, CA 94104<br>Phone:    415-772-6000<br>Fax:      415-772-6268 |

**FOR DEFENDANTS:**

| | |
|---|---|
| Aetna Inc.<br>Aetna RX Home Delivery, LLC<br><br>United States Cellular Corporation<br>TDS Telecommunications Corporation<br>TDS Metrocom, LLC | Leydig-Katz@leydig.com |
| Aetna Inc.<br>Aetna RX Home Delivery, LLC | AKLLP-Katz@andrewskurth.com |

MCDERMOTT WILL & EMERY LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| Ahold U.S.A., Inc.<br>The Stop & Shop Supermarket<br>    Company LLC<br>Giant Food Stores, LLC<br>Giant Food LLC<br>Giant Food Inc.<br><br>AOL LLC<br>Compuserve Interactive Services, Inc.<br>Netscape Communications Corp.<br><br>Charter Communications, Inc.<br>Charter Communications Holding<br>    Company, LLC<br>Charter Communications Operating,<br>    LLC<br>Charter Communications Entertainment<br>    I, LLC<br><br>Dillard's, Inc.<br>Dillard Investment Co., Inc.<br><br>Duke Energy Corporation<br>Cinergy Corporation<br><br>Time Warner Cable Inc.<br>Time Warner NY Cable LLC<br>Time Warner Entertainment Company,<br>    L.P.<br><br>T-Mobile USA, Inc. | A&B-Katz@alston.com |
| American Airlines, Inc.<br>American Beacon Advisors, Inc. | AmericanAirlines_RAKTL@mckoolsmith.com<br>AmericanAirlines_RAKTL@weil.com |

| | |
|---|---|
| American Electric Power Company, Inc.<br>Southwestern Electric Power Company<br><br>AOL LLC<br>Compuserve Interactive Services, Inc.<br>Netscape Communications Corp.<br><br>Humana Inc.<br>Humana Military Healthcare Services, Inc<br><br>Pepco Holdings, Inc.<br>PHI Service Company<br>Delmarva Power & Light Company<br><br>Time Warner Cable Inc.<br>Time Warner NY Cable LLC<br>Time Warner Entertainment Company, L.P. | Katz@StandleyLLP.com |
| American International Group, Inc.<br>AIG Retirement Services, Inc.<br>21st Century Insurance Group<br>21st Century Insurance Company<br>21st Century Casualty Company<br>AIG Marketing, Inc.<br>AIG SunAmerica Asset Management Corp.<br>AIG Annuity Insurance Company<br>AIG Federal Savings Bank<br>The United States Life Insurance Company in the City of New York<br>AIG Life Insurance Company<br>American General Assurance Company<br>American General Indemnity Company<br>American General Life and Accident Insurance Company<br>American General Life Insurance Company<br>The Variable Annuity Life Insurance Company<br>VALIC Financial Advisors, Inc.<br>VALIC Retirement Services Company | Katz_AIG@mwe.com |
| Aquila, Inc. | aquila-katz@sonnenschein.com<br>jcox@sonnenschein.com |

McDERMOTT WILL & EMERY LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

| | |
|---|---|
| Cablevision Systems Corporation<br>CSC Holdings, Inc.<br>Cablevision Systems New York City Corporation<br>Cablevision of Brookhaven, Inc.<br>Cablevision of Connecticut Corporation<br>Cablevision of Hudson County, Inc.<br>Cablevision of Litchfield, Inc.<br>Cablevision of Monmouth, Inc.<br>Cablevision of New Jersey, Inc.<br>Cablevision of Oakland, LLC<br>Cablevision of Rockland/Ramapo, LLC | NY-Cablevision-Katz@gibsondunn.com |
| Caremark RX, Inc.<br>Caremark Inc. D/B/A Caremark Prescription Services<br><br>U.S. Bancorp<br>U.S. Bank, NA | CHGO-RAKTLMDL-ALL@foley.com |
| CenterPoint Energy, Inc.<br>CenterPoint Energy Houston Electric LLC<br>CenterPoint Energy Resources Corp.<br><br>Experian Information Solutions, Inc.<br><br>Premiere Global Services, Inc.<br>American Teleconferencing Services, Ltd. | JonesDay_Katz@jonesday.com |
| General Electric Capital Corporation<br>General Electric Capital Services, Inc.<br>General Electric Company<br>General Electric Consumer Finance, Inc.<br><br>General Motors Corporation<br><br>Whirlpool Corporation | KatzMDLTeam@howrey.com |
| CIGNA Corporation<br>CIGNA Health Corporation<br>CIGNA HealthCare of Delaware, Inc.<br>Tel-Drug, Inc.<br>Tel-Drug of Pennsylvania, LLC | Katz_CIGNA@mwe.com |
| Comerica Incorporated<br>Comerica Bank & Trust, N.A.<br>Comerica Securities, Inc. | Comerica_RAKTL@skadden.com |
| Cox Communications, Inc.<br>Coxcom, Inc. | Cox-Katz@kilpatrickstockton.com |

| | |
|---|---|
| CVS Corporation (CVS Caremark Corporation) | CVS-Katz@mintz.com |
| DHL Holdings (USA) Inc. DHL Express (USA) Inc. Sky Courier, Inc. | DHL-Katz@orrick.com |
| Earthlink, Inc. | Earthlink-Katz@kilpatrickstockton.com |
| FedEx Corporation Federal Express Corporation FedEx Corporate Services, Inc. FedEx Customer Information Services, Inc. | FedEx-RAKTL@finnegan.com ccapshaw@mailbmc.com aspangler@mailbmc.com ederieux@mailbmc.com gclark@sheppardmullin.com dfranklin@sheppardmullin.com dmuniz@sheppardmullin.com |
| Genesys Conferencing, Inc. | hmarcus@morganfinnegan.com SPurdy@morganfinnegan.com |
| Global Crossing Telecommunications, Inc. D/B/A/ Global Crossing Conferencing | GC-TELECONFERENCING@LISTS.DICKSTEINSHAPIRO.COM yangc@dicksteinshapiro.com |
| National Railroad Passenger Corporation, d/b/a Amtrak | Amtrak-Katz@steptoe.com |
| Reliant Energy, Inc. Reliant Energy Retail Services, LLC | reliant-katz@bakerbotts.com |
| Rite Aid Corporation Rite Aid of Delaware, Inc. | tkenworthy@morganlewis.com |
| TD Banknorth Inc. | tdbanknorth-Katz@dechert.com |
| The DirecTV Group, Inc. DirecTV, Inc. DirecTV Holdings, LLC DirecTV Enterprises, LLC DirecTV Customer Services, Inc. | quinn_katz@quinnemanuel.com |
| The Kroger Co. Kroger Texas L.P. Healthy Options, Inc., D/B/A Postal Prescription Services | Kroger_Katz@kslaw.com |
| Wilmington Trust Company Wilmington Brokerage Services Company | Wilmington_RAKTL@cozen.com |

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1   LAS99 1537944-2.015187.0020
    DRAFT 2/1/08 12:22 PM

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES