Matthew J. Moore
moorem@howrey.com
Pamela S. Kane
kanep@howrey.com
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: 202.783.0800
Facsimile: 202.383.6610

Liaison Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

In Re:

Katz Interactive Call Processing Patent Litigation

This document relates to:

ALL "B" TRACK ACTIONS (except CV 07-02254 RGK (FFMx))

Case Nos. CV 07-2096 RGK (FFMx), CV 07-2099 RGK (FFMx), CV 07-2101 RGK (FFMx), CV 07-2134 RGK (FFMx), CV 07-2192 RGK (FFMx), CV 07-2196 RGK (FEMx), CV-07-2213 RGK (FFMx), CV 07-2220 RGK (FFMx), CV 07-2250 RGK (FFMx), CV 07-2257 RGK (FFMx), CV 07-2299 RGK (FFMx), CV 07-2322 RGK (FFMx), CV 07-2325 RGK (FFMx), CV 07-2336 RGK (FFMx), CV 07-2339 RGK (FFMx), CV 07-2340 RGK (FFMx), CV 07-2360 RGK (FFMx), CV 07-3002 RGK (FFMx)

Case No. CV 2:07-ml-01816-B-RGK (FFMx)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF RAKTL'S SELECTED CLAIMS UNDER SECTIONS 102 AND 103**

**Date: To Be Determined**
**Time: To Be Determined**

Judge: Hon. R. Gary Klausner

# TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1

II. LEGAL STANDARD FOR SUMMARY JUDGMENT .......... 2

III. LEGAL STANDARD FOR INVALIDITY .......... 3

A. ANTICIPATION .......... 4

B. OBVIOUSNESS .......... 4

1. The Supreme Court's *KSR* Decision Mandates a Flexible, Common Sense Approach to Obviousness .......... 5

2. Lower Courts Follow KSR's Lead .......... 7

3. Contemporaneous Independent Development is Evidence of Obviousness .......... 9

C. SECONDARY CONSIDERATIONS .......... 9

D. REEXAMINATIONS .......... 12

IV. INVALIDITY ANALYSIS .......... 12

A. CLAIMS 57 AND 67 OF THE '120 PATENT ARE INVALID .......... 13

1. Claim 57 Of The '120 Patent Is Invalid In View of Student Registration In Combination With Moosemiller .......... 13

2. Claim 57 Of The '120 Patent Is Invalid In View of Student Registration In Combination With Calabrese .......... 14

3. Claim 67 Of The '120 Patent Is Invalid In View Of Student Registration In Combination With Calabrese .......... 15

4. Claim 67 Of The '120 Patent Is Invalid In View of Student Registration In Combination With Szlam .......... 16

B. CLAIMS 96 AND 98 OF THE '863 PATENT ARE INVALID .......... 16

1. Claims 96-98 Of The '863 Patent Is Invalid In View Of Wendkos In Combination With Moosemiller .......... 16

C. CLAIMS 31, 35, 43, 53, 61 AND 66 OF THE '965 PATENT ARE INVALID .......... 17

1. Claims 35, 43, 53, 61 And 66 Of The '965 Patent Each Have A Priority Date No Earlier Than February 21, 1989 .......... 17

2. Claim 31 Of The '965 Patent Is Invalid In View of Szlam In Combination With Yoshizawa .......... 19

3. Claim 61 Of The '965 Patent Is Invalid In View Of Yoshizawa In Combination With Szlam .......... 20

4. Claim 66 Of The '965 Patent Is Invalid In View Of Yoshizawa In Combination With Szlam .......... 21

5. Claim 53 Of The '965 Patent Is Invalid In View Of Barger In Combination With Yoshizawa .......... 21

6. Claim 53 Of The '965 Patent Is Invalid In View of Szlam In Combination With Yoshizawa .......... 22

7. Claims 35 And 43 Of The '965 Patent Are Invalid In View of Szlam In Combination With Yoshizawa .......... 23

D. CLAIMS 14, 18 AND 36 OF THE '360 PATENT ARE INVALID .......... 23

1. Claims 14, 18, And 36 Of The '360 Patent Are Invalid In View of Yoshizawa In Combination With VCT 1987 .......... 23

E. CLAIM 5 OF THE '223 PATENT IS INVALID .......... 25

1. Claim 5 Of The '223 Patent Is Invalid In View of Friedes In Combination With Reese .......... 25

F. CLAIMS 69, 85 AND 92 OF THE '707 PATENT IS INVALID .......... 26

1. Claim 69 Of The '707 Patent Is Invalid In View of McFiggins, Or Alternatively, In View of McFiggins In Combination With Duwel .......... 26

2. Claims 85 And 92 Of The '707 Patent Are Invalid In View of McFiggins, Or Alternatively, In View of McFiggins In Combination With Duwel .......... 26

V. CONCLUSION .......... 27

# TABLE OF AUTHORITIES

## CASES

Advanceme Inc. v. RapidPay, LLC, 509 F. Supp. 2d 593 (E.D. Tex. 2007)....5, 6, 8

America Standard, Inc. v. Pfizer, Inc., 722 F. Supp. 86 (D. Del. 1989)....9

Andersen Corp. v. Pella Corp., 500 F. Supp. 2d 1192 (D. Minn. 2007)....2, 6, 8

Anderson's-Black Rock, Inc. v. Pavement Salvage, Inc., 396 U.S. 57 (1969)....9

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)....2

Atlas Powder Co. v. IRECO, Inc., 190 F.3d 1342 (Fed. Cir. 1999)....4

Badalamenti v. Dunham's, Inc., 680 F. Supp. 256 (E.D. Mich. 1988)....3

Barmag Barmer Maschinenfabrik AG v. Murata Machine, Ltd., 731 F.2d 831 (Fed. Cir. 1984)....3

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)....2

Custom Accessories, Inc. v. Jeffrey-Allan Industrial, Inc., 807 F.2d 955 (Fed. Cir. 1986)....12

Daiichi Sankyo Co. v. Apotex, Inc., 501 F.3d 1254 (Fed. Cir. 2007)....4

Delmarva Power & Light Co. v. United States, 79 Fed. Cl. 205 (Fed. Cl. 2007)....2

Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387 (Fed. Cir. 1988)....10

Ferring B.V. v. Barr Laboratories, Inc., 437 F.3d 1181 (Fed. Cir. 2006)....3

In re Fracalossi, 681 F.2d 792 (CCPA 1982)....9

Friskit, Inc. v. RealNetworks, Inc., 499 F. Supp. 2d 1145 (N.D. Cal. 2007)....2, 5, 7, 11

Fromson v. Advance Offset Plate, 755 F.2d 1549 (Fed. Cir. 1985)....12

Graham v. John Deere,

383 U.S. 1 (1966)....9

In re Inland Steel Co., 265 F.3d 1354 (Fed. Cir. 2001) ....9

Iron Grip Barbell Co. v. USA Sports, Inc., 392 F.3d 1317 (Fed. Cir. 2004) ....3, 4

J.T. Eaton & Co. v. Atlantic Paste & Glue Co., 106 F.3d 1563 (Fed. Cir. 1997) ....11

KSR International Co. v. Teleflex Inc., —U.S. —, 127 S. Ct. 1727 (2007)....2, 3, 5, 6, 9, 11

Leapfrog Enterprises, Inc. v. Fisher-Price, Inc., 485 F.3d 1157 (Fed. Cir. 2007) ....5, 6, 7, 10

Lemelson v. TRW, Inc., 760 F.2d 1254 (Fed. Cir. 1985) ....18

McNeil-PPC, Inc. v. Perrigo Co., 516 F. Supp. 2d 238 (S.D.N.Y. 2007) ....7, 10, 11

MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556 (E.D.Va. 2007) ....8

Monarch Knitting Machine Corp. v. Sulzer Morat GmbH, 139 F.3d 877 (Fed. Cir. 1998) ....9

Nike Inc. v. Wolverine World Wide, Inc., 43 F.3d 644 (Fed. Cir. 1994) ....2

Ormco Corp. v. Align Technology, Inc., 463 F.3d 1299 (Fed. Cir. 2006) ....11

PBI Performance Products, Inc. v. NorFab Corp., 514 F. Supp. 2d 732 (E.D. Pa. 2007)....2

Pentec, Inc. v. Graphic Controls Corp., 776 F.2d 309 (Fed. Cir. 1985) ....10

Petersen Manufacturing Co., Inc. v. Central Purchasing, Inc., 740 F.2d 1548 (Fed. Cir. 1984) ....3

Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348 (Fed. Cir. 2007) ....4, 12

Pharmastem Therapeutics, Inc., v. Viacell, Inc., 491 F.3d 1342 (Fed. Cir. 2007) ....4

Richardson-Vicks Inc., v. Upjohn Co., 122 F.3d 1476 (Fed. Cir. 1997) ....4

Sandt Technology, Ltd. v. Resco Metal and Plastics Corp., 264 F.3d 1344 (Fed. Cir. 2001) ....9

Schering Corp. v. Geneva Pharmaceuticals,
339 F.3d 1373 (Fed. Cir. 2003) ....................................................................4

Simmons Fastener Corp. v. Ill. Tool Works, Inc.,
739 F.2d 1573 (Fed. Cir. 1984) ..................................................................11

SmithKline Beecham Corp. v. Apotex Corp.,
403 F.3d 1331 (Fed. Cir. 2005) ...............................................................3, 4

In re Translogic Technology, Inc.,
504 F.3d 1249 (Fed. Cir. 2007) ....................................................................7

W.L. Gore & Associate, Inc. v. Garlock, Inc.,
721 F.2d 1540 (Fed. Cir. 1984) ....................................................................9

**STATUTES**

35 U.S.C. § 103(a) ........................................ 2, 4, 13, 15, 16, 19, 20, 21, 22, 23, 25

35 U.S.C. § 282..............................................................................................3

Fed. R. Civ. P. 56(c) .......................................................................................2

# I. INTRODUCTION

Plaintiff Ronald A. Katz Technology Licensing, L.P. ("RAKTL") has parlayed a single abandoned 1985 patent application for games, lotteries and contests over the telephone using rudementary computer telephony concepts into dozens of patents and applications containing thousands of patent claims directed to inventions that RAKTL now alleges have enabled automated customer service to replace live operators. The facts, however, tell a different story.

When Mr. Katz first filed call processing patent applications, the basic building blocks of the modern automated customer service systems were already well known. Many companies were combining automatic call distributors with voice response units to create systems to provide automated call processing to suit their own needs or the needs of their customers. Mr. Katz, meanwhile, lay in wait watching others develop this technology. Mr. Katz waited until after technology had been implemented before filing the patent claims at issue in this case. A quick review of the RAKTL patents shows that Mr. Katz waited to file patent claims eight to twelve years after their subject matter had been fully disclosed to the public and waited several additional years before filing these suits. This caused Defendants and others severe and immeasurable prejudice because of their large investments in automated customer service systems and the loss of potential sources of information relevant to their defenses.

In these new patent applications, RAKTL also inundated individual patent examiners with thousands of patent claims, piles of prior art, and a multitude of arguments distinguishing the claims from the prior art, making it impossible for the examiners to conduct a sufficient review of the prior art or the claims. The overwhelmed examiners responded by granting RAKTL dozens of patents with thousands of patent claims with little more than a cursory review. But RAKTL is not entitled to those claims or to the right to enforce them as evidenced by the many re-examinations presently pending before the Patent and Trademark Office ("PTO").

Defendants hereby move for summary judgment to invalidate the asserted claims based on prior art. As to these issues, there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); FED. R. CIV. P. 56(c). The use of summary judgment is particularly appropriate in complex patent infringement actions because it is a useful tool to secure a just and speedy determination of the action and to simplify and pare down the issues in such complex cases. *See Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."). Indeed, the Supreme Court recently reiterated this view in *KSR International Co. v. Teleflex, Inc.*, stating that "when the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR Int'l Co. v. Teleflex Inc.*, — U.S. —, 127 S. Ct. 1727, 1745 (2007); *see also PBI Performance Prods., Inc. v. NorFab Corp.*, 514 F. Supp. 2d 732, 743 (E.D. Pa. 2007) (granting a motion for summary judgment on the basis that the patent claims were obvious under 35 U.S.C. § 103(a)); *see also, e.g., Andersen Corp. v. Pella Corp.*, 500 F. Supp. 2d 1192, 1198 (D. Minn. 2007) (same); *Friskit, Inc. v. RealNetworks, Inc.*, 499 F. Supp. 2d 1145, 1154 (N.D. Cal. 2007) (same).

In order to defeat summary judgment, the non-movant must "go beyond the pleadings and, by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Thus, "[a]ttorney argument asserting a genuine issue of material fact is insufficient to oppose successfully a motion for summary judgment." *Delmarva Power & Light Co. v. United States*, 79 Fed. Cl.

205, 217 (Fed. Cl. 2007). *See also Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment."). A party must offer more than conclusory statements from its experts to defeat a motion for summary judgment on obviousness: "The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact . . . set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835-36 (Fed. Cir. 1984). Accordingly, conflicting opinions over obviousness do not create issues of fact and are thus not sufficient to defeat a motion for summary judgment. *Petersen Mfg. Co., Inc. v. Central Purchasing, Inc.*, 740 F.2d 1548, (Fed. Cir. 1984) ("Opinion testimony by experts concluding that an invention would or would not have been obvious may influence the court's decision, but conflicting opinions on a legal issue *vel non* raise no issue of fact."); *Badalamenti v. Dunham's, Inc.*, 680 F. Supp. 256, (E.D. Mich. 1988) ("The court may consider an expert witness's testimony but it is not bound by the opinion of expert witnesses on the issue of obviousness.").

## III. LEGAL STANDARD FOR INVALIDITY

A patent is presumed valid, and the Defendants have the burden of proving invalidity by clear and convincing evidence. *See* 35 U.S.C. § 282; *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1320 (Fed. Cir. 2004). However, the presumption of validity seems diminished when the PTO has issued a patent without acting on full information. *KSR*, 127 S. Ct. at 1745. When a party presents evidence establishing a *prima facie* invalidity case, the patentee must come forward with evidence to counter the challenge to the presumption of section 282. *See Id.* (citation omitted). In that instance, the patentee's evidence must create a genuine issue of material fact underlying the invalidity inquiry in order to preclude summary judgment. *See SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005)

(affirming summary judgment of invalidity for anticipation); *Iron Grip*, 392 F.3d at 1320 (affirming summary judgment of invalidity for obviousness).

### A. Anticipation

Anticipation requires that a single prior art reference disclose each and every limitation of the claimed invention. *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379-80 (Fed. Cir. 2003). Anticipation can be resolved at summary judgment: "without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." *SmithKline*, 403 F.3d at 1343.

"[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Id.*; *see also Atlas Powder Co. v. IRECO, Inc.*, 190 F.3d 1342, 1348-49 (Fed. Cir. 1999) ("Because 'sufficient aeration' was inherent in the prior art, it is irrelevant that the prior art did not recognize the key aspect of [the] invention . . . . An inherent structure, composition, or function is not necessarily known.").

### B. Obviousness

If the claimed invention is not disclosed in a single prior art reference, a patent may still be invalid obvious. *See* 35 U.S.C. § 103 (2007). Obviousness is a question of law based on underlying factual inquiries. *See, e.g., Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007); *see also Richardson-Vicks Inc., v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997). The Court must decide "whether the subject matter of the claimed invention would have been obvious at the time the invention was made to a person of ordinary skill in the art to which the subject matter of the invention pertains." *Pharmastem Therapeutics, Inc., v. Viacell, Inc.*, 491 F.3d 1342, 1359 (Fed. Cir. 2007).

"[O]nce a challenger has presented a prima facie case of invalidity, the patentee has the burden of going forward with rebuttal evidence." *See Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1360 (Fed. Cir. 2007). Importantly, the Supreme Court also made clear that "[t]he ultimate judgment of obviousness is a legal determination" and that

conclusory expert testimony that the patents are not obvious should not deter a finding of obviousness. *KSR*, 127 S.Ct. at 1745.

### 1. The Supreme Court's *KSR* Decision Mandates a Flexible, Common Sense Approach to Obviousness

In determining whether obviousness exists, the Supreme Court in *KSR* expressly instructed lower courts to apply a common-sense, flexible obviousness analysis noting that a "person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR*, 127 S. Ct. at 1742. *See also Advanceme*, 509 F. Supp. 2d at 625 ("When considered together, one of skill in the art could easily view the prior art and make the common sense leap to the '281 claims."). "[I]n many cases, a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *KSR*, 127 S. Ct.at 1742. *See also Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161 (Fed. Cir. 2007) ("Indeed, the common sense of those skilled in the art demonstrates why some combinations would have been obvious where others would not."). Thus, an idea that is "obvious to try" is likely obvious in law. *KSR*, 127 S. Ct.at 1742.

Accordingly, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR*, 127 S. Ct. at 1739. *See also Advanceme*, 509 F. Supp. 2d at 610 ("When a combination of prior art elements fails to yield a result different from what can be obtained by the sequential operation of old elements, the combination is obvious."); *Friskit, Inc. v. RealNetworks, Inc.*, 499 F. Supp. 2d 1145, 1152 (N.D. Cal. 2007) ("Because each claim achieves an anticipated success by merely selecting a different, previously identified solution for controlling playback, those claims are obvious.") (footnote omitted). Furthermore, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *KSR*, 127 S. Ct. at 1740. Nowhere is this more true than in an

art such as call processing, where system components are intended and designed to work together; Mr. Katz is non-technical and, as recognized by his own attorney, "was not a person of ordinary skill in the art to which these patents are directed."[1] This further bolsters the obviousness of the claims at issue. *Leapfrog Enters. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) ("Our conclusion [of obviousness] is further reinforced by testimony from the sole inventor at trial that he did not have a technical background, could not have actually built the prototype himself, and relied on the assistance of an electrical engineer and Sandia National Laboratory to build a prototype of his invention."); *see also Advanceme Inc. v. RapidPay, LLC*, 509 F. Supp. 2d 593, 610 (E.D. Tex. 2007).

The Supreme Court also admonished courts to be mindful in their analyses of prior art: "[i]**n many fields it may be that there is little discussion of obvious techniques or combinations**, and it often may be the case that market demand, rather than scientific literature, will drive design trends." *KSR*, 127 S. Ct. at 1741-43 (emphasis added). Therefore, "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit content of issued patents." *Id*. *See Andersen Corp. v. Pella Corp.*, 500 F. Supp. 2d 1192, 1195 (D. Minn. 2007) (holding that the Supreme Court has "directed courts to reject a 'rigid approach,'

---

[1] At the AT&T claim construction hearing in 1999, Mr. Haslam explained that: "And as defendants pointed out and as I think there is no doubt, Mr. Katz was not a person of ordinary skill in the art to which these patents are directed. And he had heard of, or learned of the capability to provide something relating to called numbers, but as apparent in the specifications and the prosecution, did not know the precise details of that." Prieve Decl. Ex. 2 at NEWKTL0084006 (Hearing Volume No. 7, *RAKTL v. AT&T Corp.*, June 2, 1999).

in favor of an 'expansive and flexible approach' using 'common sense' when assessing whether an invention would have been obvious to a person of ordinary skill in the art").

### 2. Lower Courts Follow KSR's Lead

Because of *KSR*, lower courts apply a far more realistic, common sense approach in finding inventions obvious and barred from patent protection under Section 103(a). *See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1262 (Fed. Cir. 2007) (affirming the decision of the Board of Patent Appeals that the patent application consisted of obvious, unpatentable subject matter); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161 (Fed. Cir. 2007) (affirming a decision that an invention was obvious, because "[a]pplying modern electronics to older mechanical devises has been commonplace in recent years"); *McNeil-PPC, Inc. v. Perrigo Co.*, 516 F. Supp. 2d 238, 250-53 (S.D.N.Y. 2007) (applying *KSR* and finding a patent for an antacid coupled with additional compounds to be obvious).

A recent case decided by the Northern District of California, which recently applied *KSR* to grant summary judgment that the claims at issue were obvious, is highly relevant. *Friskit, Inc. v. RealNetworks, Inc.*, 499 F.Supp.2d 1145 (N.D. Cal. 2007). In *Friskit*, the patent holder argued that patents' contribution consisted of enhanced user experiences and efficiencies gained from function integration. *See Friskit*, 499 F.Supp.2d at 1150 ("Friskit's patents attempt to solve the 'tedious' user experience …. [t]he solution to his problem was integrating multiple elements, …, to create a seamless user experience."). The *Friskit* court disagreed.

First, the court found that "[a]ll of the individual features of [the patents] existed in the prior art." *See Id.* at 1148. Second, the court found that the patent holder had simply rearranged "old elements with each performing the same function it had been known to perform." *See Id.* at 1149. This rearrangement yielded "no more than one would expect from such arrangement." *Id.* Not only did the idea of integrating the function components of the prior art lack novelty, but the resulting functionality was predictable. *See Id.* at 1150. In a similar fashion, RAKTL argues that the contribution



HOWREY SIMON ARNOLD & WHITE

of the asserted patents is efficiency and enhanced user experiences. Like the patent holder in *Friskit*, Mr. Katz -- as demonstrated below -- simply rearranged known functionalities and components. Like the patent holder in *Friskit*, RAKTL obtained nothing other than predictable functionality and anticipated efficiencies.

Similarly, in *Andersen Corp. v. Pella Corp.*, 500 F. Supp. 2d 1192 (D. Minn. 2007), the District of Minnesota was faced with determining whether "an insect screen manufacturer of ordinary skill [would] have found it obvious to use the TWP screening material, decrease its reflectance value, bond it, and place it in a window frame." *Id*. at 1195. Applying the *KSR* standard, the court granted summary judgment that a patent for a reduced visibility window screen, was obvious and granted summary judgment to the alleged infringer, because the court found "it obvious to attempt to place [the TWP material] in a window frame to see if it would actually exclude insects, and being fine gauged, whether it might offer reduced visibility." *Id.* at 1197.

The Eastern District of Texas addressed whether a business method patent was obvious in *Advanceme Inc. v. RapidPay, LLC*, 509 F. Supp. 2d 593 (E.D. Tex. 2007). The invention consisted of "a computerized method for securing debt with future credit card receivables." *Id*. at 600. In holding the invention obvious, the court noted that "[t]he '281 patent describe[d] a <u>combination of old elements with no change in their respective functions</u>; the claim of the '281 patent require[d] a merchant processor to simply use existing equipment to forward a portion of the payment to a merchant's obligor." *Id*. at 625 (emphasis added). The court further declared that "[g]ranting a patent monopoly to this technological advance that would have occurred in the ordinary course without real innovation retards progress and deprives prior inventions of their value." *Id*.

Finally, in *MercExchange*, the Eastern District of Virginia acknowledged that if the older, more stringent test for obviousness were satisfied, the obviousness of the claim at issue were even more certain. *See MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 567 n. 10 (E.D.Va. 2007)("Tellingly, if prior art rendered the [patent in

suit] obvious under the pre-*KSR* standard of obviousness, it appears more likely to be deemed obvious under the post-KSR standard.").

### 3. Contemporaneous Independent Development is Evidence of Obviousness

Invention by others before or at the same time the invention was developed by the patentee is evidence of obviousness. *See, e.g., Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 883-84 (Fed. Cir. 1998) (considering contemporaneous invention by others in obviousness analysis). *Am. Standard, Inc. v. Pfizer, Inc.*, 722 F. Supp. 86, 139 (D. Del. 1989) ("[C]ontemporaneous independent development before the patenting of the invention 'can be evidence of obviousness' of the invention….").

## C. Secondary Considerations

So called "secondary considerations [such] as commercial success, long felt but unresolved needs, failure of others, etc., are relevant to the obviousness inquiry."[2] *Graham v. John Deere*, 383 U.S. 1, 17-18 (1966). However, secondary factors cannot alter a clear finding of obviousness of a patent over the prior art. *See, e.g., Anderson's-Black Rock, Inc. v. Pavement Salvage, Inc.*, 396 U.S. 57 (1969); *In re Inland Steel Co.*, 265 F.3d 1354, 1366 (Fed. Cir. 2001); *see also, In re Inland Steel*, 265 F.3d at 1366 (objective indicia of nonobviousness was "insufficient to overcome the strong prima facie obviousness case."); *Sandt Tech, Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344 (Fed. Cir. 2001) (secondary considerations, including commercial success could not overcome the evidence of obviousness); *see also KSR*, 127 S. Ct. at 1734.

---

[2] Secondary considerations may be relevant only to an obviousness analysis; they are irrelevant and cannot be considered in an anticipation analysis. *See, e.g., W.L. Gore & Assoc, Inc. v. Garlock*, Inc., 721 F.2d 1540, 1562 n.10 (Fed. Cir. 1984) (Davis, J., dissenting), *rev'd in part on other grounds by W.L. Gore & Assoc, Inc. v. Garlock, Inc.*, 842 F.2d 1275 (Fed. Cir. 1988); *In re Fracalossi*, 681 F.2d 792, 796 (CCPA 1982) (Miller, J., concurring).

The Federal Circuit recently reaffirmed the inability of secondary factors to overcome a clear finding of obviousness when applying the Supreme Court's *KSR* framework to uphold a ruling of summary judgment of a court in this district. *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157 (Fed. Cir. 2007). In *Leapfrog*, the Federal Circuit upheld a judgment of invalidity due to obviousness, despite the fact that one of the elements of the claim at issue in that patent, a "reader," was not explicitly disclosed in the prior art references. *Id.* at 1162 (noting that "Leapfrog presents no evidence that the inclusion of a reader in this type of device was uniquely challenging or difficult for one of ordinary skill in the art"). The Federal Circuit further upheld the district court's determination that "given the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion that [the claim at issue] would have been obvious." *Id*.

Before any secondary consideration can be given any substantial weight, the plaintiff must establish a nexus between a claimed invention and that secondary consideration. *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 315 (Fed. Cir. 1985). In other words, there must be some connection or nexus between (for example) the commercial success and the claims of the patent, before the commercial success can be considered probative of whether the patent is non-obvious. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). Furthermore, when a commercially successful product is covered by multiple patents, it makes it very difficult to attribute commercial success to any individual patent. *See McNeil-PPC*, 516 F. Supp. 2d 238, 254-55 (S.D.N.Y. 2007)(finding no nexus between commercial success and asserted patent where patented product was covered by three different patents). Thus, when there are multiple patents covering a product, as there are here, one cannot blindly assume that the product's commercial success can be attributed to any one of the patents.

*Friskit* also demonstrated a situation where alleged evidence of secondary considerations, including commercial success, long felt need, failure of others, and

copying, was not enough to overcome the strong showing of obviousness that was apparent from the prior art. *Friskit*, 499 F.Supp.2d at 1153. In particular, the court noted that despite evidence of "substantial sales" by the defendant, the plaintiff could not establish a nexus between the commercial success of the defendant's product and the claims of the patents in suit by offering "only what it describes as a 'prima facie case of infringement' as evidence of nexus." *Id.* at 1153.

"[T]he law deems evidence of (1) commercial success, and (2) a causal relation or nexus between an invention and commercial success of a product embodying that invention, probative of whether an invention was non-obvious." *McNeil-PPC*, 516 F. Supp. 2d at 254. Commercial success is "usually shown by significant sales in a relevant market." *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997). "[I]f the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006). Moreover, "if the feature that creates the commercial success was known in the prior art, the success is not pertinent." *Id.*; *see also J.T. Eaton*, 106 F.3d at 1571 ("[T]he asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art."). Accordingly, "[a] nexus between the merits of the claimed invention and evidence of secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision." *Simmons Fastener Corp. v. Ill. Tool Works, Inc.*, 739 F.2d 1573, 1575 (Fed. Cir. 1984).

Summary judgment is appropriate here, as it was in cases like *KSR* and *Friskit*. "Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR*, 127 S. Ct. at 1745-46.

### D. Reexaminations

The Federal Circuit recognizes that a district court, in addressing patent invalidity, should give regard to a PTO reexamination proceeding as part of the evidence bearing on the validity of the patent. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986) (district court failed to "give any credence to the PTO reexamination proceeding"); *Pfizer, Inc.*, 480 F.3d at 1360 (basis of an "examiner's initial finding of prima facie obviousness of an issued patent" is a consideration "the trial court must consider in context of the totality of the evidence 'in determining whether the party asserting invalidity has met its statutory burden ….'") *quoting Fromson v. Advance Offset Plate*, 755 F.2d 1549, 1555 (Fed. Cir. 1985) (examination proceedings are "evidence the court must consider"). With respect to claims addressed in this motion, several of the patents and claims were recently ordered into reexamination based on the same references analyzed in this motion. The specific claims subject to reexamination are identified below.

## IV. INVALIDITY ANALYSIS

The following claims and patents are the subject of Defendants' Motion for summary judgment: claims 57 and 67 of U.S. Patent No. 5,974,120 ("the '120 patent"); claim 5 of U.S. Patent No. 6,434,223 ("the '223 patent"); claims 14, 18 and 36 of U.S. Patent No. 6,678,360 ("the '360 patent"); claims 96 and 98 of U.S. Patent No. 5,684,863 ("the '863 patent"); claims 69, 85 and 92 of U.S. Patent No. 5,561,707 ("the '707 patent"); and claims 31, 35, 43, 53, 61 and 66 of U.S. Patent No. 6,335,965 ("the 965 patent"). The table below identifies the patent and claim number, the statutory basis for the determination of invalidity, and the prior art combination that renders the particular claim invalid. The claims are analyzed according to their appearance in the table.

| Patent:Claim | Alleged Priority Date | Invalidity | Prior Art |
|---|---|---|---|
| ‘120:57 | October 23, 1989 | § 103 | Student Registration & Moosemiller |
| ‘120:57 | October 23, 1989 | § 103 | Student Registration & Calabrese |
| ‘120:67 | October 23, 1989 | § 103 | Student Registration & Calabrese |
| ‘120:67 | October 23, 1989 | § 103 | Student Registration & Szlam |
| ‘863:96 | May 16, 1988 | § 103 | Wendkos & Moosemiller |
| ‘863:98 | May 16, 1988 | § 103 | Wendkos & Moosemiller |
| ‘965:31 | February 21, 1989 | § 103 | Szlam & Yoshizawa |
| ‘965:61 | February 24, 1987 | § 103 | Szlam & Yoshizawa |
| ‘965:66 | February 24, 1987 | § 103 | Szlam & Yoshizawa |
| ‘965:53 | February 24, 1987 | § 103 | Barger & Yoshizawa |
| ‘965:53 | February 24, 1987 | § 103 | Szlam & Yoshizawa |
| ‘965:35 | February 24, 1987 | § 103 | Szlam & Yoshizawa |
| ‘965:43 | February 24, 1987 | § 103 | Szlam & Yoshizawa |
| ‘360:14 | May 16, 1988 | § 103 | Yoshizawa & VCT 1987 |
| ‘360:18 | May 16, 1988 | § 103 | Yoshizawa & VCT 1987 |
| ‘360:36 | May 16, 1988 | § 103 | Yoshizawa & VCT 1987 |
| ‘223:5 | October 23, 1989 | § 103 | Friedes & Reese |
| ‘707:69 | July 10, 1985 | § 102; § 103 | McFiggins; McFiggins & Duwel |
| ‘707:85 | July 10, 1985 | § 102; § 103 | McFiggins; McFiggins & Duwel |
| ‘707:92 | July 10, 1985 | § 102; § 103 | McFiggins; McFiggins & Duwel |

## A. Claims 57 and 67 Of The ‘120 Patent Are Invalid

### 1. Claim 57 Of The ‘120 Patent Is Invalid In View of Student Registration In Combination With Moosemiller

Claim 57 of the ‘120 patent is invalid as obvious under 35 U.S.C. § 103 in view of Student Registration in combination with Moosemiller. (See Statement of Undistputed Facts ¶¶ 211-255, hereinafter “SUF __”). Claim 57 of the ‘120 patent depends from claim 56 of the ‘120 patent. SUF ¶ 202. The PTO has concluded that a

"substantial new question of patentability" affects claim 56 of the '120 patent based on the Student Registration and Moosemiller combination. SUF ¶ 213.

Claim 57 recites a process for receiving DNIS signals and using identification signals entered by callers to avoid providing certain previously provided cues to callers. Student Registration and Moosemiller each predate claim 57 and each expressly suggest combining their teachings with other voice response applications. SUF ¶¶ 81-99, 212, 213. Moosemiller specifically discloses that the system platform supports "college registration" applications. SUF ¶ 92. Based upon the express teaching of DNIS in Moosemiller for use with college registration applications, one of ordinary skill would be highly motivated to utilize the Moosemiller system platform with the Student Registration application to improve upon the registration application by incorporating the DNIS feature. SUF ¶¶ 93, 95, 97.

The college registration dialogue of Student Registration describes using an identification number to provide different cues to the same caller depending upon registration status. SUF ¶¶ 235-251. A mid-1989 student registration publication leaves no doubt that there are "significant advantages inherent" in using DNIS with college registration applications. SUF ¶¶ 97-98. With the proposed DNIS modification suggested by Moosemiller, the improved Student Registration system meets each limitation of claim 57.

### 2. Claim 57 Of The '120 Patent Is Invalid In View of Student Registration In Combination With Calabrese

Claim 57 of the '120 patent is invalid as obvious under 35 U.S.C. § 103 in view of Student Registration in combination with Calabrese. SUF ¶¶ 256-308. Claim 57 of the '120 patent depends from claim 56 of the '120 patent. Indeed, the PTO has already concluded that a "substantial new question of patentability" affects claim 56 of the '120 patent based on the Student Registration and Calabrese combination. SUF ¶ 259.

Claim 57 essentially recites a process for receiving DNIS signals and using identification signals entered by callers to avoid providing certain previously provided

cues to callers. Student Registration and Calabrese each predate claim 57 and each expressly suggest combining their teachings with other VRU applications. SUF ¶¶ 258, 100-120. Based upon the express teaching of DNIS in Calabrese for more efficient application processing, one of ordinary skill would be highly motivated to adapt the Student Registration system to improve upon the registration application by incorporating the DNIS feature. SUF ¶ 103-113. The college registration dialogue found in Student Registration plainly describes using an identification number to provide different cues to the same caller depending upon registration status. SUF ¶¶ 281-302. With the proposed modification suggested by Calabrese, the improved Student Registration system meets each limitation of claim 57.

### 3. Claim 67 Of The '120 Patent Is Invalid In View Of Student Registration In Combination With Calabrese

Claim 67 of the '120 patent is invalid as obvious under 35 U.S.C. § 103 in view of Student Registration in combination with Calabrese. SUF ¶¶ 309-348. As with claim 56, the PTO concluded that a "substantial new question of patentability" affects claim 67 of the '120 patent based on the Student Registration and Calabrese combination. SUF ¶ 312.

Claim 67 recites a process for utilizing telephone number identification signals of remote terminals to avoid providing previously provided cues to callers. Student Registration and Calabrese each predate claim 67 and both disclose that caller identification is a common problem in VRU applications. SUF ¶¶ 310, 311, 114-117. Calabrese describes how to improve upon this "critical aspect" of VRU applications by using ANI in place of a touch-tone provided identification number. SUF ¶ 115. Based upon the express suggestion of Calabrese to substitute ANI for touch-tone identification, one of ordinary skill would be highly motivated to adapt the Student Registration to improve the college registration application with the ANI feature. SUF ¶¶ 114-117. The college registration dialogue found in Student Registration clearly describes using an identification number to provide different cues to the same caller depending upon



HOWREY SIMON ARNOLD & WHITE

registration status. SUF ¶¶ 333-348. With the proposed ANI modification suggested by Calabrese, the improved Student Registration system meets each limitation of claim 67.

#### 4. Claim 67 Of The '120 Patent Is Invalid In View of Student Registration In Combination With Szlam

Claim 67 of the '120 patent is invalid as obvious under 35 U.S.C. § 103 in view of Student Registration in combination with Szlam. SUF ¶¶ 349-386. The PTO has also concluded that a "substantial new question of patentability" affects claim 67 of the '120 patent based on the Student Registration and Szlam combination. SUF ¶ 352.

Claim 67 essentially recites a process for utilizing telephone number identification signals of remote terminals to avoid providing previously provided cues to callers. Student Registration and Szlam each predate claim 67. SUF ¶¶ 350-351. Student Registration describes that caller identification is a common problem in VRU applications. SUF ¶ 114. Szlam discloses the advantage of using ANI to obtain preliminary customer account information about a caller. SUF ¶¶ 114-116, 123-126. Based upon the express suggestion of Szlam to substitute ANI for touch-tone identification to achieve increased efficiency, one of ordinary skill would be highly motivated to adapt the Student Registration to improve upon the registration application with the ANI feature. SUF ¶¶ 114-116, 131. The college registration dialogue found in Student Registration clearly describes using an identification number to provide different cues to the same caller depending upon registration status. SUF ¶¶ 369-386. With the proposed ANI modification suggested by Szlam, the improved Student Registration system meets each limitation of claim 67.

### B. Claims 96 and 98 Of The '863 Patent Are Invalid

#### 1. Claims 96-98 Of The '863 Patent Is Invalid In View Of Wendkos In Combination With Moosemiller

Claims 96 and 98 of the '863 patent are invalid as obvious under 35 U.S.C. § 103 in view of Wendkos with Moosemiller. SUF ¶¶ 387-446. Claim 96 essentially recites a system wherein callers input information to the system for storage and processing in



HOWREY SIMON ARNOLD & WHITE

response to voice prompts provided by the system. Moosemiller discloses an open architecture platform supporting a variety of applications. SUF ¶¶ 136-138. The platform uses computers, voice generators, and touch-tone decoding to allow callers to enter and retrieve data from a remote a database via their touch-tone telephones for a multitude of applications. SUF ¶¶ 82, 83, 137, 144, 411. Moosemiller specifically discloses that the system platform supports "sales order entry" applications. SUF ¶¶ 144, 145. Wendkos describes several voice response applications including a "phone-in mail order service" called "Teleshopper." SUF ¶ 146.

The Wendkos Teleshopper application discloses the storage and processing by a voice response system of caller inputted information. SUF ¶¶ 418-420. Wendkos also describes other voice response applications including trivia, telepromotions and reservations. SUF ¶ 141. One of ordinary skill would be highly motivated to use the Wendkos Teleshopper application, and the other Wendkos applications, on the Moosemiller Conversant I platform. SUF ¶¶ 138-145. Moosemiller, as modified to include the Wendkos applications, meets each limitation of Claim 98.

### C. Claims 31, 35, 43, 53, 61 And 66 Of The '965 Patent Are Invalid

#### 1. Claims 35, 43, 53, 61 And 66 Of The '965 Patent Each Have A Priority Date No Earlier Than February 21, 1989

The priority dates for claims 35, 43, 53, 61 and 66 of the '965 patent are later than the February 24, 1987 priority date alleged by RAKTL. SUF ¶¶ 22-54. For RAKTL to establish priority to February, 1987, RAKTL must demonstrate that it has written description support in each intermediate application back to 1987. *See Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1266-67 (Fed. Cir. 1985)("In order for [a patent] to be entitled under 35 U.S.C. § 120 to the filing date of an earlier application in the chain of applications of which they are part, it must be shown that as to the inventions claimed there has been continuing disclosure through the chain of applications, without hiatus."). RAKTL will not be able to make this showing. Defendants contend that there is no written description support of several limitations recited by claims 35, 43, 53, 61 and 66

of the ‘965 patents in an intermediate 1988 application. The lack of written description support is fatal to the alleged 1987 priority date.

Claims 35, 43 and 53 recite the limitation of displaying specific information at an attended terminal. SUF ¶¶ 42-44. Claims 61 and 66 recite the limitation of displaying data stored in a file under control of a customer identification number. SUF ¶¶ 46, 47. Application No. 07/194,258, filed May 16, 1988, now U.S. Patent No. 4,845,739 (“the ‘739 patent”) does not disclose displaying a specific type of information as recited in claims 43 and 53. SUF ¶¶ 40-46. The ‘739 patent application also does not disclose displaying information from a file under control of any type of identification data. SUF ¶ 32.

RAKTL’s alleged priority date of February 24, 1987 for claims 35, 43, 53, 61, and 66 is predicated upon the disclosure in Application No. 07/018,244, filed February 24, 1987, now Patent No. 4,792,968 (“the ‘968 patent”). SUF ¶¶ 22-29. The ‘739 patent application is an intermediate application in the chain of applications bridging the ‘965 patent application to the ‘968 patent application. SUF ¶ 28. There is no support for the claimed subject matter recited in claims 35, 43, 53, 61 and 66 in the ‘739 patent application, and therefore no support throughout the chain of related applications as required by MPEP § 201.11 to support RAKTL’s alleged priority dates for these claims.[3] SUF ¶¶ 27, 28, 32, 39-41, 43, 45, 48, 49. Accordingly, claims 35, 43, 53, 61 and 66 have an effective filing date no earlier than February 21, 1989.[4] SUF ¶¶ 50-59.

---

[3] MPEP § 201.11(I)(B), ¶ 1 provides: “[i]f there is a continuous chain of copending nonprovisional applications, each copending application must disclose the claimed invention of the later-filed application in the manner provided by the first paragraph of 35 U.S.C. 112, in order for the later-filed application to be entitled to the benefit of the earliest filing date.”

[4] Defendants do not concede that February 21, 1989 is the proper priority date for claims 35, 43, 53, 61 and 66. The proper priority date for these claims may in fact be later in time.

### 2. Claim 31 Of The ‘965 Patent Is Invalid In View of Szlam In Combination With Yoshizawa

Claim 31 of the ‘965 patent is invalid as obvious under 35 U.S.C. § 103 in view of Szlam and Yoshizawa. SUF ¶¶ 447-495. The PTO has concluded that a “substantial new question of patentability” affects claim 31 of the ‘965 patent based on the Szlam and Yoshizawa combination. SUF ¶ 450. Claim 31 essentially recites a method for receiving responsive signals from callers, displaying specific information to an agent, and also generating acknowledgment numbers to callers to identify transactions. Szlam discloses a telephone order entry system that includes receiving responsive signals from callers and displaying customer information to an agent. SUF ¶¶ 158, 452, 483, 485. Yoshizawa discloses a horse track betting system that receives responses from callers and generates registration numbers to confirm betting transactions with callers. SUF ¶¶ 149-151.

In Yoshizawa, the caller inputs an account number, access code and a string of digits representing betting data for a specific horse race. Yoshizawa discloses a dialogue for confirming the correct entry of betting data through a dialogue with the caller and then provides an acknowledgment number for the caller to confirm the bet. Yoshizawa describes that the system “can be applied to other fields using its <u>special feature</u> of outputting computer processing results in human voice.” SUF ¶ 153, 154, 164. (emphasis added). Yoshizawa even specifically identifies that its system should be adapted for an “<u>order entry</u>” application such as the one described in Szlam. SUF ¶¶ 164, 165. Based upon the express suggestion in Yoshizawa to incorporate the specialized transaction outputs for an order entry application, one of ordinary skill would be highly motivated to modify the Szlam order entry system to include the specialized transaction output feature in the Szlam system. SUF ¶ 154. Yoshizawa discloses the dialogue necessary to confirm all types of transactions with callers and the expected benefits of this feature. SUF ¶¶ 489-495. With the proposed confirmation

dialogue suggested by Yoshizawa and its attendant benefits, the Szlam system, as modified in view of Yoshizawa, meets each limitation of claim 31.

### 3. Claim 61 Of The '965 Patent Is Invalid In View Of Yoshizawa In Combination With Szlam

Claim 61 of the '965 patent is invalid as obvious under 35 U.S.C. § 103 in view of Yoshizawa and Szlam. SUF ¶¶ 496-560. The PTO has concluded that a "substantial new question of patentability" affects claim 61 of the '965 patent based on the Szlam and Yoshizawa combination. SUF ¶ 499. Claim 61 essentially recites a method for receiving caller responses, processing the responses using "multiple comparative operations," displaying specific information to an agent, and also confirming information stored in a file to the caller. SUF ¶¶ 206. Szlam, as described more fully above, discloses receiving caller responses and displaying customer information to an agent. SUF ¶¶ 158, 452, 483, 485. Yoshizawa, also described more fully above, discloses a betting system that receives bets from callers and generates vocalized summaries to confirm betting transactions with callers. SUF ¶¶ 505, 511, 526, 540-542. Yoshizawa discloses the betting data entered as a string of digits ("09115010") that is parsed and then correlated into a betting transaction using multiple comparative operations. SUF ¶¶ 525-538. Once the betting data is confirmed and stored in a file, the Yoshizawa system "will repeat your betting data" during a bet cancellation process. SUF ¶ 542. Based upon the express suggestion in Yoshizawa for use of its "special" features with an order entry application, one of ordinary skill would be highly motivated to modify the Szlam order entry system to benefit from the Yoshizawa transaction input and confirmation enhancements. SUF ¶¶ 153, . With the proposed enhancements suggested by Yoshizawa, the Szlam system, as modified in view of Yoshizawa, meets each limitation of claim 61.

### 4. Claim 66 Of The '965 Patent Is Invalid In View Of Yoshizawa In Combination With Szlam

Claim 66 of the '965 patent is invalid as obvious under 35 U.S.C. § 103 in view of Yoshizawa and Szlam. SUF ¶¶ 561-574. The PTO has concluded that a "substantial new question of patentability" affects claim 66 of the '965 patent based on the Szlam and Yoshizawa combination. SUF ¶ 565. Claim 66, which depends directly from claim 61, recites the one additional limitation of displaying customer address data to an agent. SUF ¶ 206. As stated above for claims 31, 53 and 61, the combination of Szlam and Yoshizawa is expressly suggested and the expected benefits from the combination are readily achievable and completely predictable.

Claim 66 differs from claim 61 by reciting the display of address data. SUF ¶ 206. Szlam expressly discloses displaying customer information to an agent. SUF ¶¶ 552-554. Szlam also specifically contemplates that its telephone order entry system can be used to receive sales calls from customers "in response to a previously mailed catalog." SUF ¶¶ 571. Szlam, therefore, inherently discloses displaying customer address data, in addition to other customer information including "customer name, customer telephone number, customer account code, customer order status, etc." SUF ¶¶ 571-573. Based on the expressly suggested combination with Yoshizawa, the Szlam system meets each limitation of claim 66.

### 5. Claim 53 Of The '965 Patent Is Invalid In View Of Barger In Combination With Yoshizawa

Claim 53 of the '965 patent is invalid as obvious under 35 U.S.C. § 103 in view of Barger and Yoshizawa. SUF ¶¶ 575-631. The PTO has concluded that a "substantial new question of patentability" affects claim 53 of the '965 patent based on the Barger and Yoshizawa combination. SUF ¶ 578. Claim 53 essentially recites a method for receiving responsive signals from callers, displaying specific information to an agent, and also generating acknowledgment numbers to callers to identify transactions. SUF ¶¶ 168-170. Barger discloses an order entry system for music that includes receiving

responsive signals from callers and displaying customer information to an agent. SUF ¶ 612, 614. The Barger and Szlam systems are very similar, save for the fact that Barger focuses on the more specific variant of an order entry application for selling music. SUF ¶ 168, 154, 158. Yoshizawa, as discussed above in the context of Szlam, involves a horse track betting system that, among other things, generates registration numbers to confirm betting transactions with callers. SUF ¶¶ 171.

Yoshizawa describes a dialogue for confirming the correct entry of betting data through a dialogue with the caller. SUF ¶¶ 619-622. The dialogue includes an acknowledgment number provided to the caller to confirm the bet. SUF ¶¶ 621, 622. Yoshizawa describes a "special feature" involving confirmation dialogue. SUF ¶¶ 164, 165. (emphasis added). Yoshizawa also describes that its system should be adapted for an "order entry" application like the Barger system. SUF ¶¶ 164, 166, 176. Based upon the express suggestion in Yoshizawa to incorporate the specialized transaction outputs for an order entry application, one of ordinary skill would be highly motivated to modify the Barger music order entry system to include the specialized transaction output feature for its expected benefits. SUF ¶ 176. Yoshizawa discloses the dialogue necessary to confirm all types of transactions with callers and the expected benefits of this feature. SUF ¶¶ 619-622. With the proposed confirmation dialogue suggested by Yoshizawa and its attendant benefits, the Barger system meets each limitation of claim 53.

### 6. Claim 53 Of The '965 Patent Is Invalid In View of Szlam In Combination With Yoshizawa

Claim 53 of the '965 patent is invalid as obvious under 35 U.S.C. § 103 in view of Yoshizawa and Szlam. SUF ¶¶ 632-728. The PTO has concluded that a "substantial new question of patentability" affects claim 53 of the '965 patent based on the Szlam and Yoshizawa combination. SUF ¶ 635. Claim 53 (which ultimately depends from claim 34) and claim 31 share more similarities than differences, with claim 53 reciting that the caller's name is displayed to an agent and that data relating to the call is order

data. SUF ¶¶ 207. Despite these additional limitations and other minor variations compared with claim 31, Szlam discloses every limitation of claim 53, except for generating acknowledgment numbers. SUF ¶¶ 637-728. As with claim 31, one of ordinary skill is expressly motivated to modify Szlam in view of Yoshizawa to achieve the expected benefits of including the transaction confirmation dialogue of Yoshizawa. SUF ¶¶ 154, 164. Using the dialogue suggested by Yoshizawa, the Szlam system meets each limitation of claim 53.

**7. Claims 35 And 43 Of The '965 Patent Are Invalid In View of Szlam In Combination With Yoshizawa**

Claims 35 and 43 of the '965 patent are invalid as obvious under 35 U.S.C. § 103 in view of Yoshizawa and Szlam. SUF ¶¶ 632-740. Claims 35 and 43 of the '965 patent depend from claim 34, which is also the same independent claim from which claim 53 of the '965 patent depends, as discussed above. SUF ¶ 207. The PTO has concluded that a "substantial new question of patentability" affects claim 43 of the '965 patent based on the Szlam and Yoshizawa combination. SUF ¶ 734. Claim 35 recites that the identification data provided by the caller is customer number data. Yoshizawa clearly meets this additional limitation. SUF ¶ 735-737. Claim 43 recites that caller telephone number data is displayed. Szlam discloses this additional limitation. SUF ¶ 738-740. As with claims 31 and 34, one of ordinary skill is expressly motivated to modify Szlam in view of Yoshizawa to achieve the expected benefits of including the transaction confirmation dialogue of Yoshizawa. 153, 154,164, 181. Using the dialogue suggested by Yoshizawa, the Szlam system meets each limitation of claims 35 and 43.

**D. Claims 14, 18 And 36 Of The '360 Patent Are Invalid**

**1. Claims 14, 18, And 36 Of The '360 Patent Are Invalid In View of Yoshizawa In Combination With VCT 1987**

Claims 14, 18 and 36 of the '360 patent are invalid as obvious under 35 U.S.C. § 103 in view of Yoshizawa in combination with VCT 1987. SUF ¶¶ 741-828. Claims

14, 18 and 36 all depend from claim 13. SUF ¶ 208. Claim 13 essentially recites a method for receiving a call with DNIS information which is used to control how the call is handled, and transferring the call to an operator to update data about the caller while displaying, the caller's identification data. SUF ¶ 208. Claim 14 recites that a computer generated number is developed for callers. SUF ¶ 208. Claim 18 further recites using ANI to control how the call is handled. SUF ¶ 208. Claim 36 recites testing the caller identification data. SUF ¶ 208. VCT 1987 and Yoshizawa each predate claims 14, 18 and 36. SUF ¶¶ 743-744.

VCT 1987 describes using ANI and DNIS information to control the handling of a call, and also describes transferring a call to an operator who can view the previously-inputted caller identification and can then make additional entries to update the caller's records. SUF ¶¶ 750-802. VCT 1987 describes providing an authorization code to a caller, while Yoshizawa describes providing a computer generated number. SUF ¶¶ 803-806. Also, VCT 1987 generally describes callers providing identification information, while Yoshizawa describes callers providing specific types of identification data that are tested. SUF ¶¶ 815-819.

One of ordinary skill in the art would have been highly motivated to substitute the authorization code disclosed in VCT 1987 with the computer generated number disclosed in Yoshizawa based upon the express suggestion in Yoshizawa for other applications, including sales and service applications, to utilize the Yoshizawa specialized transaction outputs. One of ordinary skill would have been highly motivated to modify the VCT system to include the specialized transaction output feature for its expected benefits. SUF ¶ 153, 154, 164, 181, 182. Based on the resulting combination, Yoshizawa discloses the dialogue necessary to confirm all types of transactions involving customer service calls and the expected benefits of this dialogue feature, including more specificity for resolved transactions. SUF ¶¶ 183-187, 763-767. Furthermore, one of ordinary skill in the art would have been highly motivated to include the specific identification methods disclosed in Yoshizawa, that of callers

providing identification data in the event that the VCT ANI match was unsuccessful, to the VCT 1987 system. SUF ¶ 188. With these modifications, the improved VCT 1987 system meets each limitation of claims 14, 18 and 36.

### E. Claim 5 Of The '223 Patent Is Invalid

#### 1. Claim 5 Of The '223 Patent Is Invalid In View of Friedes In Combination With Reese

Claim 5 of the '223 patent is invalid as obvious under 35 U.S.C. § 103 in view of Friedes in combination with Reese. SUF ¶¶ 829-873. Claim 5 essentially recites a call processing system that receives calls in a toll free call mode and either an area code mode or a caller charge call mode, and has common processing operations for the call modes. Reese and Friedes each predate claim 5. SUF ¶¶ 830-831. Reese describes receiving calls in both an area code mode and a caller charge mode. SUF ¶¶ 833-837. Friedes describes receiving calls in a toll free call mode. SUF ¶¶ 838-841. Reese explains that one of the purposes of the disclosed invention is to allow callers from other states to access the system, which would be enhanced through the addition of the Friedes toll free call mode. SUF ¶ 192. Reese discloses that the caller identifies whether he accessed the system using the area code mode or the caller charge mode. SUF ¶ 193. Friedes suggests how a system can determine the called number used by caller without any prompting to the caller. SUF ¶ 194. Based upon the express suggestion in Reese to expand the use of the system to more potential callers in other states, and the called number capability disclosed in Friedes, one of ordinary skill in the art would have been highly motivated to adapt the Reese system with Friedes to predictably improve the effectiveness of the Reese system to attract more callers. SUF ¶¶ 189-198. With the proposed modification disclosed by Friedes, the improved Reese system meets each limitation of claim 5.

### F. Claims 69, 85 And 92 Of The '707 Patent Is Invalid

#### 1. Claim 69 Of The '707 Patent Is Invalid In View of McFiggins, Or Alternatively, In View of McFiggins In Combination With Duwel

Claim 69 of the '707 patent is invalid as anticipated by McFiggins or, in the alternative, obvious in view of McFiggins in combination with Duwel. SUF ¶¶ 874-928. Claim 69 essentially recites a process for providing to a caller a product with an associated number that is used by the caller to access a telephone system a limited number of times. SUF ¶¶ 210. McFiggins and Duwel each predate Claim 69 and both describe processes that limit a caller's access to a system based upon a number associated with a product. SUF ¶¶ 875-876, 878, 885-886. McFiggins discloses a postage meter replenishment system that uses "meter numbers" to uniquely identify each meter. SUF ¶ 878. The caller accesses the system and recharges the meter's value by providing a "meter number" that is used by the system to add a fixed value to the postage meter. SUF ¶ 879. The unique meter numbers associated with each postage meter permit recharging of the meter only a fixed number of times (e.g. 500). SUF ¶ 883. McFiggins thus meets each limitation of claim 69. SUF ¶¶ 878-928.

Duwel discloses a postage meter replenishment system that improves upon McFiggins by allowing varying replenishment values instead of a fixed value. SUF ¶¶ 199. Duwel utilizes a single-use authorization code generated at the meter for access to the system by the caller to specify the replenishment value. SUF ¶ 900. Thus, McFiggins, as modified to include the Duwel variable reset feature, provides a more robust postage meter recharging platform that meets each limitation of claim 69. SUF ¶¶ 878-928.

#### 2. Claims 85 And 92 Of The '707 Patent Are Invalid In View of McFiggins, Or Alternatively, In View of McFiggins In Combination With Duwel

Claims 85 and 92 of the '707 patent are invalid as anticipated by McFiggins or, in the alternative, obvious in view of McFiggins in combination with Duwel. SUF ¶¶ 929-

948. Claims 85 and 92 of the '707 patent depend from claim 69 of the '707 patent, analyzed above. SUF ¶ 210. Claim 85 recites that the product having the participation number is available for sale, whereas claim 92 recites that the limits on use are limited to a number of uses. SUF ¶ 210. Both McFiggins and Duwel describe postage meters and it was notoriously well known that these items were sold to end users, rendering claim 85 invalid. SUF ¶¶ 932-936. With respect to claim 92, McFiggins discloses that the unique meter number is limited to 500 uses and Duwel discloses that the authorization code associated with the meter reset feature is limited to a single use. SUF ¶¶ 939-946. Thus, as with claim 69 of the '707 patent, claims 85 and 92 are also invalid as anticipated by McFiggins, or in the alternative obvious based on McFiggins in combination with Duwel.

## V. CONCLUSION

Defendants are entitled to judgment that the analyzed claims are invalid as anticipated and/or obvious in view of the prior art. In the alternative, Defendants respectfully request that this Court grant Defendants' summary judgment as to specific claim limitations disclosed by the prior art alone or in combination.

DATED: April 3, 2008

Respectfully submitted,

By: /s/ Pamela S. Kane

Matthew J. Moore
moorem@howrey.com
Pamela S. Kane
kanep@howrey.com
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: 202.783.0800
Facsimile: 202.383.6610

Liaison Counsel for Defendants