ROBERT T. HASLAM (CA BAR NO. 71134)
robert.haslam@hellerehrman.com
ANDREW C. BYRNES (CA BAR NO. 191516)
andrew.byrnes@hellerehrman.com
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA 94025
Telephone: (650) 324-7000
Facsimile: (650) 324-0638

MICHAEL K. PLIMACK (CA BAR NO. 133869)
michael.plimack@hellerehrman.com
DALE A. RICE (CA BAR NO. 146249)
dale.rice@hellerehrman.com
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

Attorneys for Plaintiff and Defendant
RONALD A. KATZ TECHNOLOGY LICENSING, L.P.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: Katz Interactive Call Processing Patent Litigation,<br><br>This document relates to:<br><br>Ronald A. Katz Technology Licensing, L.P. v. Reliant Energy, Inc.,<br>    CV 07-2096 RGK (FFMx)<br>Ronald A. Katz Technology Licensing, L.P. v. TD Banknorth Inc.,<br>    CV 07-2099 RGK (FFMx)<br>Ronald A. Katz Technology Licensing, L.P. v. Ahold U.S.A., Inc.,<br>    CV 07-2101 RGK (FFMx)<br>Ronald A. Katz Technology Licensing, L.P. v. Time Warner Cable Inc.,<br>    CV 07-2134 RGK (FFMx)<br>Ronald A. Katz Technology Licensing, L.P. v. American Int'l Group, Inc.,<br>    CV 07-2192 RGK (FFMx)<br>CVS Corporation v. Ronald A. Katz Technology Licensing, L.P.,<br>    CV 07-3002 RGK (FFMx) | Case No. 07-ML-01816-B-RGK (FFMx)<br><br>**RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE ALL OR PART OF DEFENDANTS' COLLECTIVE MOTION FOR SUMMARY JUDGMENT AND FOR ADDITIONAL TIME**<br><br>The Honorable R. Gary Klausner |

# INTRODUCTION

This Court, in granting the Moving Defendants' *ex parte* application for a second prior art motion, ordered the Moving Defendants to file a memorandum in support thereof "not to exceed thirty-five pages." The Moving Defendants clearly violated the letter and spirit of this Order, not to mention Local Rule 7-5. Rather than filing a thirty-five page "complete memorandum," as required by the Local Rules, the Moving Defendants in essence filed a two-page chart identifying where the Court might find the actual arguments within 754 pages of expert declarations. As a result, even the Moving Defendants had to agree that fairness requires, at a minimum, providing Katz with more time to respond.

The Moving Defendants' have used procedural maneuvers to pile 1,700 pages of seriatim motions, expert declarations and statements of fact upon Katz. Katz expects to receive a like amount on May 2, when the multiple Round B Defendants file their expert reports on invalidity (based presumably upon 35 U.S.C. §§ 102, 103, 112 ¶ and 112 ¶ 2) and unenforceability (based presumably upon inequitable conduct and prosecution laches). Under the current schedule, just fifty days will pass between when the first of the three motions for summary judgment were filed and the day upon which Katz must serve its rebuttal reports. This crushing mass of material appears designed to bury Katz by sheer volume, and there is very real prejudice that could result if Katz is not permitted sufficient time to respond properly.

The Court should therefore relieve Katz from the impossible situation the Moving Defendants have created by striking the second prior art motion altogether, or by requiring the Moving Defendants to comply with the page limits imposed by the Court. In the alternative, the Court should provide Katz at least two additional weeks to respond to the second prior art motion and three additional weeks to submit its responding expert reports. Allowing these extensions would prevent unfair prejudice while the other MDL deadlines would remain relatively unchanged.

<div style="text-align:center">**ARGUMENT**</div>

**I. THE SECOND PRIOR ART MOTION SHOULD BE STRICKEN**

    **A. Moving Defendants Concede that Their Motion Is Improper and Oversized**

The Moving Defendants apparently agree that the scope of their attack is so vast that it could not possibly be briefed in a reasonable number of pages. They thereby concede that they have violated both the letter and the spirit of the Court's page limit and Local Rule 7-5:

> The plaintiff does not explain how the Collective Motion could have presented all of the material it claims should have been in the brief while remaining within any reasonable page limit.

Opp'n at 1. The Moving Defendants clearly miss the point of the thirty-five page limit, which is a *limit*, and requires selection of arguments. Had the Court intended to grant the Moving Defendants *carte blanche* to assert every theoretically possible § 103 argument—which is what they have apparently done—the Court would not have imposed a page limit at all, at which point it would have been proper for defendants to file the sprawling, ill-focused, and ill-founded motion now before the Court.[1]

The Moving Defendants also concede that their memorandum fails to make the requisite legal argument, one showing how the *particular combination of elements* of a claim are taught or made obvious in a *particular prior art reference or combination*. Instead:

> The Moving Defendants' memorandum breaks down RAKTL's Patent Portfolio into twenty-five easily understandable *concepts* . . . and shows how these *concepts* are obvious in view of these prior art references.

---

[1] The Moving Defendants' allegation that the manner in which the they made their arguments was "the only conceivable way it could [be done] in an efficient, collective manner," Opp'n at 4, is specious, and is belied by the fact that the majority of the defendants *opted not to follow this route*.


Opp'n at 3. The fact that various "concepts" may have been known in the prior art is, of course, plainly irrelevant under the law. *See, e.g., Lockheed Aircraft Corp. v. U.S.*, 553 F.2d 69, 75 (Ct. Cl. 1977) ("[I]t is hornbook law that the claims measure the invention and a resolution of the obviousness of an invention must be based on what is *claimed*.") (emphasis added); *see also Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). The Moving Defendant do not and cannot deny that *all* of their argument applying the prior art to the claim limitations is contained solely in the declarations.[2]

So there is no real doubt at this point that the second prior art motion violates the letter and spirit of the Local Rules and the Court-ordered page limit.

### B.  The Motion Should be Stricken in Whole or In Part

The Moving Defendants clearly overstepped their bounds in making their motion. And is doing so they wasted both the Court's and Katz's time raising dubious summary judgment attacks subject to hundreds of factually disputed issues. These efforts, however, were clearly calculated: The Moving Defendants hoped to disrupt Katz's ability to properly respond. These procedural machinations cannot be rewarded. The second prior art motion should be stricken or the Court should require the Moving Defendants to drastically cut the motion papers down to what would reasonably have been raised in a legitimate thirty-five-page memorandum.

The Moving Defendants' attempts to distinguish the *Globespan* case are without merit. To establish infringement, Texas Instruments in that case had to prove that *each and every limitation was met* by the accused systems. Similarly, to establish invalidity here, the Moving Defendants in this case must prove that *each*

---

[2] Moving Defendants admit that the entirety of the so called "complete memorandum," require by L.R. 7-5(a), was composed of (i) four pages of general legal discussion; (ii) eight pages of Katz "concepts;" (iii) thirteen pages of prior art; and (iv) five pages of how the *concepts*—not the patent claims or limitations—were allegedly known. *See* Opp'n at 3. Nowhere in their opposition papers do they argue that the memorandum in support of the second motion for prior art actually applied the law to the facts that are relevant to the case at Bar.

*and every limitation is met* by the alleged prior art. *Cf. Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[T]hat which would literally infringe if later in time anticipates if earlier."). Thus, the supposed distinction between infringement and invalidity is irrelevant. Indeed, if anything invalidity (which is at issue in this case) is more difficult to establish on summary judgment, as invalidity must be proven by clear and convincing evidence. So, as the court in *Globespan* did when dealing with almost exactly the same situation, this Court should strike or ignore the arguments set forth solely in the declarations.

## II. AT A MINIMUM KATZ SHOULD BE GIVEN MORE TIME FOR BOTH ITS OPPOSITION AND ALSO ITS EXPERT REPORTS

Even the Moving Defendants concede that Katz is entitled to at least two additional weeks within which to respond to their overlarge motion. However, they unreasonably oppose providing a similar extension for Katz' imminent filing of responsive expert reports. Opp'n at 2. Defendants rest this distinction upon the assertion that, "with the filing of this motion, RAKTL has been given an earlier disclosure that it would otherwise would not have of the majority of the opinions of the Moving Defendants' experts." *Id.* This statement is unsupported, unsupportable and ultimately irrelevant.

*First*, while the Moving Defendants assert that Katz now has the "majority of the opinions" Katz might expect to see in the impending expert reports, there is neither factual nor logical corroboration for this proposition. The Moving Defendants do not (and in all likelihood cannot) actually guarantee that the four expert declarations accompanying the two motions for summary judgment on prior art will constitute the "majority" of the contents of their expert reports.

*Second*, the quoted language only applies to the "*Moving Defendants'* experts," and the remaining Defendants outnumber them. A better measure of what to expect is the Defendants' Preliminary Invalidity Contentions, which comprise *five feet* of paper when printed and stacked, full of dense, highly technical arguments, and which

5

related to less than half the number of claims now at issue.

*Third*, the Moving Defendants misstate the universe of expert reports. The Defendants as a whole will presumably serve expert reports on not only 35 U.S.C. §§ 102 and 103, but also 35 U.S.C. § 112 ¶¶ 1 and 2, as well as on inequitable conduct and prosecution laches. Each of these reports will require the attention of the same set of attorneys and, more significantly, the same set of experts. This group of attorneys and experts cannot be expected to respond in a reasonable and detailed manner given the overlapping schedule created by the Moving Defendants' machinations:

| Deadline | Event |
| --- | --- |
| 04/03 | The Katz Defendants filed motions for summary judgment of invalidity on 35 U.S.C. §§ 102, 103 and 112 |
| 04/17 | The Moving Defendants filed a second motion for summary judgment of invalidity on 35 U.S.C. §§ 102 and 103 |
| 04/29 | Katz filed its opposition to first set of invalidity motions |
| 05/02 | Defendants will serve their expert reports on invalidity and unenforceability |
| 05/14 | Katz will file its opposition to second motion for summary judgment of invalidity on 35 U.S.C. § 102 and 103 |
| 05/23 | Katz will serve its rebuttal expert reports on invalidity and unenforceability |

In short, due to the first set of motions for summary judgment, Katz could not shift its focus to the second prior art motion until April 30, by which point barely two weeks remained to oppose. And, due to the second prior art motion, Katz will not be able to devote its full attention to rebuttal expert reports until May 15, by which point less than ten days will remain. Indeed, even if this Court were to strike the second prior art motion in its entirety, Katz will have lost some portion of the three short weeks it has to respond to at least four expert reports.

The Defendants have had more than a year to prepare these motions for summary judgment and expert reports, as is evident from—if nothing else—the sheer size of the expert declarations and the nature of the Moving Defendants' presentation to the court. Notwithstanding this preparation, the Defendants used procedural maneuvers—including *twice* waiting until the last day to announce their intention to seek a second prior art motion by *ex parte* relief—to ensure that Katz would have the least amount of time within which to respond to the motions and expert reports. In essence, the Moving Defendants will have forced Katz to respond to three motions for summary judgment (comprising, all told, in excess of 1,700 pages of argument, statements of undisputed fact and declarations) and at least four expert reports (possibly much larger than what Katz has already received) in just fifty days.

Katz's due process and property rights are at stake, and there is no reasonable manner in which Katz can adequately respond to the second prior art motion during the same time Katz must respond to at least four expert reports. Quite simply, if the Moving Defendants have their way, case management concerns—while significant—will take precedence over Katz's due process right to properly defend its presumed-valid patents. Thus, if this Court does not outright strike the second prior art motion, Katz must be permitted at least two additional weeks to respond to said motion and three additional weeks to prepare and submit it expert reports. Indeed, notwithstanding their attempt to differentiate between an extension for the motion and one for the expert reports, the Moving Defendants did not identify *any* prejudice they might suffer if the schedule for both were pushed back.

## CONCLUSION

With the above in mind, Katz respectfully requests that the Court select among the following three options:

1) Strike the Moving Defendants' second motion on prior art in its entirety;

2) Order the Moving Defendants to select among a narrowed set of

claims that Katz could realistically reply to in a relatively short period, and in parallel extend the briefing schedule by an amount pegged to the date upon which the Moving Defendants so identify the narrowed set of claims; and/or

      3)    Grant Katz at least an additional two weeks within which to respond to the second prior art motion—to which the Moving Defendants have already conceded—and an additional three weeks to respond to any expert report touching upon invalidity and unenforceability.

May 1, 2008                                    HELLER EHRMAN LLP

By: /s/ *Dale. A. Rice*
       Dale A. Rice
Attorneys for Plaintiff and Defendant
Ronald A. Katz Technology Licensing, L.P.