# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No. CV 2:07-ML-01816-B-RGK (FFMx) |
| Katz Interactive Call Processing Patent Litigation | |
| This document relates to: | ORDER RULING ON THE PARTIES' INDIVIDUAL SUMMARY JUDGMENT MOTIONS |
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., Plaintiff, v. AMERICAN INTERNATIONAL GROUP, INC., ET AL., Defendants. Case No. 07-CV-2192-RGK (FFMx)) | |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   JUDICIAL STANDARD ........................................................................... 1

III.  DHL'S DEFENSES ................................................................................... 2

    A.   DHL Holdings ...................................................................................2

    B.   Invalidity in View of the Prior Art ...................................................3

        1.   Claim 63 of the '120 Patent .....................................................3

            a.  Legal Standard – Invalidity ............................................. 3

            b.  Student Registration and Moosemiller ............................. 4

            c.  Earlier Invalidity Ruling .................................................. 4

            d.  "Isolate[ing] a Subset of Callers" ................................... 6

            e.  Processing the Response Signals On-Line ...................... 7

        2.   Claim 61 of the '285 Patent .................................................... 7

            a.  Legal Standard – Invalidity ............................................. 8

            b.  Lotito .............................................................................. 8

            c.  Selected a Format Using Called Number Signals ........... 9

            d.  "Means for forwarding" ................................................ 10

            e.  "Caller Information Data" ............................................. 11

            f.  "Means for Reconnecting" ............................................ 12

    C.   Invalidity, Indefiniteness .............................................................. 12

    D.   Non-Infringement .......................................................................... 14

        1.   Legal Standard – Non-Infringement ..................................... 14

        2.   Claim 63 of the '120 Patent ................................................... 15

            a.  Receiving "Dialed-Number Identification Signals" ...... 15

i

b.   "Qualify Callers for Access" and "Isolate a Subset of Callers" .... 16

3.   Claim 61 of the '120 Patent ................................................................ 18

a.   Multiple Formats ............................................................. 18

b.   Messages Relating to a Specific Format ......................................... 20

c.   Agent-Assisted or Automated Process .......................................... 20

d.   Processing Caller Information ....................................................... 21

e.   Means for Reconnecting ................................................................. 21

4.   Theories of Indirect Infringement ...................................................... 22

a.   Contributory Infringement ............................................................ 22

b.   Inducement of Infringement ........................................................... 23

IV.   Katz's Cross Motion for Summary Judgment ......................................... 24

A.   Laches ............................................................................................... 24

1.   Legal Standard – Laches .................................................................... 24

2.   Unreasonable Delay ........................................................................... 24

3.   Prejudice ........................................................................................... 26

B.   Equitable Estoppel .............................................................................. 27

1.   Legal Standard – Equitable Estoppel ................................................ 27

2.   Misleading Conduct ........................................................................... 27

V.   SUMMARY ............................................................................................... 28

# I.  INTRODUCTION

In approximately fifty different lawsuits, plaintiff Ronald A. Katz Technology Licensing, L.P. ("Katz") has alleged that various defendants infringe claims from its family of related interactive call processing patents. The Judicial Panel on Multidistrict Litigation consolidated these cases for pretrial proceedings and transferred the consolidated case to this Court (07-MDL-1816). This Court grouped the different cases based roughly on the date they were transferred. The current case is part of the group B cases.

In managing the group B cases, this Court ordered Katz to eventually limit the number of claims it was asserting against each defendant group to sixteen. This Court has already ruled on various joint summary judgment motions filed by the group B defendants and found that a number of the asserted claims were invalid as obvious under 35 U.S.C. § 103 or invalid for lack of written description and/or indefinite under 35 U.S.C. § 112.

The two remaining claims Katz asserts against Defendant DHL Holdings (USA), Inc., DHL Express (USA), Inc., and Sky Courier, Inc. (collectively, "DHL") are:  claim 63 of U.S. Patent No. 5,974,120 ("the '120 patent"), and claim 61 of U.S. Patent No. 5,351,285 ("the '285 patent"). Both parties have moved for summary judgment.

DHL moves for summary judgment on anticipation, obviousness, indefiniteness and non-infringement. DHL raises a number of independent non-infringement arguments. Katz moves for summary judgment against DHL on its estoppel and laches affirmative defenses.

# II.  JUDICIAL STANDARD

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986); *see also Karlin Tech., Inc. v.*

*Surgical Dynamics, Inc.*, 177 F.3d 968, 970 (Fed. Cir. 1999). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing a properly supported motion for summary judgment "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253 (1968)). "If the evidence [opposing summary judgment] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250 (citations omitted).

Even where the movant does not seek judgment as to the whole action, "the court should, to the extent practicable, determine what material facts are not genuinely at issue." Fed. R. Civ. P. 56(d)(1). "It should then issue an order specifying what facts — including items of damages or other relief — are not genuinely at issue." *Id.* Thus, "judgment may be rendered on liability alone . . .." Fed. R. Civ. P. 56(d)(2).

## III. DHL'S DEFENSES

### A.    DHL Holdings

DHL Holdings is a holding company that owns the other two DHL defendants. DHL Holdings says that it does not own or use any IVR equipment of its subsidiaries. As a result, DHL Holdings asks for summary judgment. In response, Katz points to printouts from the Hoover, Spoke, and Goliath websites that list the same contact information for DHL Holdings as DHL Express including the primary number (Ex. 37-40 to Hellfeld Decl.), 1-800-CALL-DHL, used to access the accused DHL systems. Katz relies on this evidence to show that DHL Holdings uses the accused interactive call processing systems. DHL objects to the third parties' websites as inadmissible hearsay and points out that the DHL website, dhl-usa.com, lists different telephone numbers for DHL Holdings employees than those Katz mentions.

This Court finds that the third party website evidence is inadmissible. The evidence is hearsay and there are no indicia of reliability. Moreover, Katz has had the opportunity to take discovery directly from DHL Holdings and has failed to identify evidence from the defendant to show that it owns or uses the accused services. In the absence of evidence linking DHL Holdings to the accused interactive call processing systems, this Court GRANTS DHL Holding's motion for summary judgment.

**B.    Invalidity in View of the Prior Art**

    **1.   Claim 63 of the '120 Patent**

DHL asks this Court to find that claim 63 of the '120 patent is invalid in view of the combination of two prior art references: "Automated Student Registration Using Touch-Tone Telephone/Voice Response, An Application Note" of Periphonics Corporation dated April 29, 1986 ("Student Registration"), and AT&T's "CONVERSANT™ I Voice System" by John P. Moosemiller dated March/April 1986 in Speech Technology ("Moosemiller").

    **a.   Legal Standard – Invalidity**

A patent is presumed valid, and the defendants have the burden of proving invalidity by clear and convincing evidence. *See* 35 U.S.C. § 282; *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1320 (Fed. Cir. 2004). If the claimed invention is not disclosed in a single prior art reference, a patent may still be invalid as obvious under § 103. In *Graham v. John Deere,* 383 U.S. 1 (1966), the Supreme Court set forth the test for obviousness:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. *Id.,* at 17-18.

This test is a question of law based on underlying factual inquiries. *See, e.g., Daiichi*

*Sankyo Co. v. Apotex, Inc*., 501 F.3d 1254, 1256 (Fed. Cir. 2007).

### b.  Student Registration and Moosemiller

Student Registration discloses a call processing system using a voice response unit (VRU) to interact with callers to assist students in navigating through class registration and related applications. A student may be required to pre-register and obtain a PIN prior to dialing into the system. Alternatively, the student's birth date may be used as the PIN. After a caller has gained access to the system, he or she may then select and register for courses or be added to a waitlist. If the caller encounters difficulty during the call, the call can be transferred to an operator. The caller can elect to have the call transferred to an operator, or the system may initiate the transfer.

Moosemiller discloses the Conversant I system, which is a platform for support of a wide range of applications using voice response technology. The system allows applications to use the public telephone network for database access. Using this system, customers can use rotary or touch-tone phones as terminals to access a host computer and eliminate the need for remote computer terminals. The Conversant I system utilizes a voice response unit that is connected to incoming trunk channels to provide customers with voice prompts. In response to these prompts, a user of the Conversant I application can log in to the system with touch tone signals. In addition, the Conversant I system can utilize Dialed Number Identification Service, or DNIS, to classify incoming calls for different applications. Each type of caller is then greeted with appropriate transaction prompts.

### c.  Earlier Invalidity Ruling

The defendants in this multidistrict litigation had previously filed a joint motion for summary judgment of invalidity under 35 U.S.C. §§ 102 and 103. That motion argued that a number of Katz's claims were invalid in view of the prior art. The defendants identified the same

Student Registration/Moosemiller combination at issue here and argued that the combination rendered claim 57 of the '120 patent obvious. On August 4, 2008, this Court granted, in part, defendants' motion, and ruled in favor of defendants on this issue. Specifically, the Court found that Moosemiller and Student Registration disclosed all the limitations of claim 57 and there were express suggestions to combine the two references.

Claim 63 depends on claim 62 which depends on independent claim 56. Together these claims recite:

56. A process for interfacing, through a telephone-communication facility, (1) callers who are at a multitude of remote terminals for voice-digital communication with (2) a system for prompting the callers with caller cues, said process comprising the steps of:

establishing telephone communications between the callers and the system. the system having a receiving unit for receiving digital signals including dialed-number identification signals provided automatically from the telephone-communication facility; utilizing the dialed-number identification signals to identify one from a plurality of numbers dialed by the callers;

also receiving at the receiving unit identification signals relating to the callers;

testing said identification signals relating to the callers to determine whether to qualify the callers for access to at least a portion of operations of the system;

utilizing, for qualified callers, the identification signals relating to the callers, to avoid prompting certain callers with a certain previously provided cue or cues; and providing to the qualified callers at least one other caller cue.

62. A process according to claim 56, further comprising the step of:

processing, to isolate a subset of callers, caller-response signals responsive to certain of the plurality of caller cues.

63. A process according to claim 62, wherein during the processing step, *the response signals are processed on-line.*

Like claim 63, claim 57 also depends on independent claim 56. As a result, claim 63 only contains two limitations that were not found in claim 57. Those two limitations are introduced in claims 62 and 63 and are *italicized* above.

As an initial matter, Katz asks this Court to reconsider its earlier finding that a person of ordinary skill in the art would combine Student Registration and Moosemiller. Specifically, Katz argues that the August 4, 2008 decision failed to give the declaration of Dr. Brody sufficient weight. Dr Brody argued that a person of ordinary skill in the art would not combine Student Registration and Moosemiller because the combination would be "expensive and unnecessary." Citing to *In Re Farrenkopf*, 713 F.2d 714, 718 (Fed. Cir. 1983), this Court stated, "Dr. Brody's concern about potential expense does not overcome the express suggestions to combine found in the references themselves." Katz criticized the Court's decision for erroneously finding that expense can never be considered when determining whether to combine references. That is not what this Court said. Rather, this Court cited to *In Re Farrenkopf* to indicate that the primary focus of this Court's inquiry was on technical, not economic, factors. Thus, this Court found that Dr. Brody's conclusory mention of expense was not sufficient to raise a triable issue in the face of several explicit suggestions to combine the two references. For these reasons, this Court reaffirms its earlier decision and finds that combining Student Registration and Moosemiller is proper. Relying on its earlier decision, this Court also finds that all the limitations of independent claim 56 are disclosed by the combination. (August 4, 2008 Order at pp. 9-10.)

### d.  "Isolate[ing] a Subset of Callers"

Claim 62 adds the limitation of "isolate[ing] a subset of callers." DHL argues that Student Registration discloses the use of caller-response signals responsive to cues to isolate callers into groups based on such criteria as: (a) registration appointment time, (b) business office hold, (c) acceptance for admission, or (d) eligibility to register. DHL also points out that Student Registration isolates callers that are enrolled in a class from those placed on a waiting list. Katz's Opposition does not rebut any of these arguments. Accordingly, this Court finds that Student Registration discloses "isolat[ing] a subset of callers" as required by claim 63.

### e.  Processing the Response Signals On-Line

Claim 63 adds the limitation of processing response signals on-line. According to DHL, Moosemiller discloses that callers receive stock quote and watch list information during the call. Thus, the caller's response signals are processed on-line. Likewise, the Student Registration system processes caller-response signals on-line. For example, a caller to the Student Registration system can request information regarding registration status during the call and receive it immediately (i.e. on-line). Katz's Opposition does not rebut any of these arguments. Accordingly, this Court finds that the combination of Student Registration and Moosemiller disclose processing response signals on-line as required by claim 63.

Based on the foregoing, this Court GRANTS DHL's motion for summary judgment as to claim 63. Specifically, the Court finds that claim 63 of the '120 patent is invalid as obvious in view of the combination of Student Registration and Moosemiller.

### 2.  Claim 61 of the '285 Patent

DHL argues that claim 61 of the '285 patent is invalid under 35 U.S.C. § 102(b) and/or § 103 as being anticipated by or obvious in view of U.S. Patent No. 4,625,081 ("Lotito"). Claim 61 of the '285 patent depends from independent claim 54.  Together these claims recite:

> 54. An interface control system for use with, (1) a telephonic communication facility including remote terminals for individual callers, wherein said remote terminals may comprise a conventional telephone instrument including voice communication means and digital input means for providing data, and (2) a multiple port, multiple format processor for concurrently processing data from a substantial number of callers in any of a plurality of formats, said telephonic communication facility automatically provides call data signals, as to indicate called numbers to select a particular format from said plurality of formats, and (3) a plurality of live operator attended terminals with prompting capability for a plurality of formats, said interface control system comprising:
>
> interface means for providing an introductory automated voice message relating to a specific format from said plurality of formats;

means for forwarding coupled to said interface means for forwarding a call from any one of said remote terminals to one of said plurality of live operator attended terminals;

means for processing coupled to said forwarding means for processing caller information data entered by an operator at said live operator attended terminal;

means for storing coupled to said processing means for storing certain select data from said caller information data entered by said operator; and

means for reconnecting said call to said interface means to receive certain processed data via an automated voice message.

61. An interface control system according to claim 54, wherein a plurality of called numbers are associated with said select processing format.

### a.  Legal Standard – Invalidity

"Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." *Zenith Electronics Corp. v. PDI Comm. Systems, Inc*. 522 F.3d 1348, 1363 (Fed. Cir. 2008). If an element is not expressly disclosed in a prior art reference, the reference still anticipates a subsequent claim if a person of ordinary skill in the art would recognize that the missing element is necessarily present in the reference. *PharmaStem Therapeutics, Inc. v. ViaCell*, Inc., 491 F.3d 1342, 1371-1372 (Fed. Cir. 2007) (citations omitted). Although anticipation under 35 U.S.C. § 102 is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact. *Golden Bridge Technology, Inc. v. Nokia, Inc*., 527 F.3d 1318, 1321 (Fed. Cir. 2008).

### b.  Lotito

Lotito relates to an automated voice service system. The system provides automatic recording and editing of voice messages as well as forwarding of recorded voice messages to other accounts and telephone numbers without operator assistance. Callers can also be connected with operators for assistance in executing systems commands. Operators can enter data into their consoles.

DHL originally filed the Declaration of Ivan Zatkovich with its motion for summary judgment. However, since Mr. Zatkovich did not prepare an expert report on invalidity, DHL agreed to withdraw ¶¶ 10-73 of that declaration. That leaves the Court with the difficult task of evaluating portions of the Lotito reference without any expert opinion from DHL.

Rather than discuss all the limitations, this Court will simply address those limitations that Katz contends Lotito fails to disclose. Specifically, Katz argues that Lotito does not disclose: 1) selecting a format based on called number signals, 2) forwarding a call . . . to one of said plurality of live operator attended terminals, 3) operator entry of "caller information data," and 4) reconnecting the call back to the interface means.

### c.   Selecting a Format Using Called Number Signals

The preamble recites that a "telephonic communication facility automatically provides call data signals, as to indicate called numbers to select a particular format from said plurality of formats." The first issue is whether this claim language in the preamble is limiting. DHL does not appear to take a position on this issue, while Katz's expert assumes that at least some of the preamble is limiting. (Brody Decl. at ¶ 88.) In general, a preamble is considered a limitation if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim. *Symantec Corp. v. Computer Assocs. Intern., Inc.,* 522 F.3 1279, 1288 (Fed. Cir. 2008) (citations omitted). Although there is no litmus test for determining whether the preamble is limiting, "guideposts" have emerged in the case law. *Catalina Mktg. Int'l, Inc., v. Coolsavings.com, Inc.,* 289 F.3d 801, 808 (Fed. Cir. 2003). One such guidepost is relevant to the analysis here -- "[w]hen limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003); *see Catalina Mktg.*, 289 F.3d at 808. Here, the preamble recites "a particular format from said

plurality of formats." The body of independent claim 54 refers to the particular format when it discusses providing introductory messages to "a specific format from said plurality of formats." Moreover, dependent claim 61 states that "called numbers are associated with said select processing format." Accordingly, this Court finds that the preamble is limiting.

Thus, claim 61 requires using called number signals to select a format. DHL's brief identifies Lotito's "Answer Services application" and "Administrative services application" as different formats. As a threshold matter, Katz says that DHL has failed to show that these applications are formats. This Court agrees. Although the applications may be separate formats, DHL fails to provide a meaningful explanation to justify this position. As a result, DHL has failed to satisfy its burden of proof on this issue.

Even if this Court were to accept DHL's arguments, they fail for another reason. DHL says Lotito detects the "incoming dialed digits" (Lotito at 12:64-67) and uses that information to select a format. In response, Katz relies on its expert, Dr. Brody, who argues that Lotito fails to disclose that DNIS signals are used to select a format. Dr. Brody argues that there is a difference between DNIS services and the "DID services" described in Lotito and that it would not have been obvious to modify Lotito to use DNIS. (Brody at ¶ 91)

The claim language requires "caller data signals," not DNIS. Although DNIS signals clearly are a type of caller data signals, Katz argues that the Lotito's DID services are not. Although this Court is skeptical of Katz's position, DHL's reply brief is silent on this point and it has presented no contrary evidence. As a result, this Court finds that DHL has failed to meet its burden of proof on this issue as well. Accordingly, this Court finds that DHL has failed to show that Lotito uses called number signals to select a format.

### d.  "Means for Forwarding"

Claim 61 also requires a "means for forwarding" for "forwarding a call . . . to one of said

plurality of live operator attended terminals." DHL argues that Lotito discloses this limitation when it describes adding the operator to a call so that the operator can assist the user in executing command sequences. (Lotito at 154:47-53.) First, Katz properly points out that DHL has failed to perform the required means plus function analysis under 35 U.S.C. § 112, ¶ 6. By itself, that is sufficient to deny DHL's motion for summary judgment on this issue. Second, Katz argues that adding an operator to a call is not the same as forwarding. Katz defines forwarding to require disconnecting the call from the interface means and transferring it to an operator. This Court agrees. The claim later requires "reconnecting" the call. This clearly indicates that the call was previously disconnected when the call was forwarded. Therefore, this Court finds that Lotito fails to disclose "forwarding a call" to an operator.

Forwarding a call to an operator may be obvious in view of Lotito, a reference that discloses adding an operator. However, DHL's expert testimony has been withdrawn and there is no evidence in the record to suggest that the limitation is obvious. Accordingly, this Court also finds that DHL has failed to show that Lotito discloses a means for forwarding.

### e.  "Caller Information Data"

Claim 61 also requires a "means for processing" for "processing caller information data entered by an operator . . .." In Lotito, operators communicate with a console. (Lotito at 220:62-221:7.) As a result, DHL concludes that Lotito discloses the means for processing. In response, Katz argues that the operators in Lotito enter systems commands, not "caller information data." (Lotito at 7:36-51.) Katz says that the claim requires that the data be "supplied by or about the caller." This Court agrees. None of the passages DHL cites indicate that the data the operators enter should be considered "caller information data."

Although having an operator enter "caller information data" may be obvious in view of a reference that discloses an operator that enters system commands, DHL has failed to explain why

this is the case, let alone provide any supporting evidence. Accordingly, this Court also finds that DHL has failed to show that Lotito discloses an operator that enters "caller information data."

### f.   "Means for Reconnecting"

Claim 61 also requires a "means for reconnecting said call to said interface means . . .." DHL argues that since Lotito discloses transferring calls to operators for assistance, the calls can be reconnected to the interface means. As discussed above, Lotito adds the operators to a call without disconnecting the call from the system. Therefore, there is no reason to "reconnect" them. DHL identifies a few portions of Lotito that supposedly show "reconnecting" (Lotito, Figure 17 and 7:36-51), but these passages are not applicable. Accordingly, this Court also finds that DHL has failed to show that Lotito reconnects calls to the interface means.

Based on the foregoing discussion, that Court DENIES DHL's motion for summary judgment as to the invalidity of claim 61 based on anticipation.

### C.   Invalidity Based on Indefiniteness

Claim 61 requires "a means for processing . . .  for processing caller information data entered by an operator at said live operator attended terminal." According to DHL, claim 61 of the '285 patent is invalid as indefinite under 35 U.S.C. § 112 because the specification fails to identify an algorithm corresponding to the processing step in the claim.

35 U.S.C. § 112, ¶ 6 allows a limitation to be expressed in means plus function language. A means plus function limitation is interpreted to encompass: 1) the recited function, and 2) the structures disclosed in the specification that correspond to that function and their equivalents. *Applied Med. Res. Corp. v. U.S. Surgical Corp.,* 448 F.3d 1324, 1332 (Fed. Cir. 2006). When the means plus function limitations at issue discloses a computer or microprocessor programmed to carry out an algorithm as the corresponding structure, "the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed

algorithm." *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999). Disclosing only a general purpose computer as the structure for performing a claimed function amounts to pure functional claiming and does not satisfy 35 U.S.C. § 112 ¶ 6, thereby rendering the claim indefinite under 35 U.S.C. § 112 ¶ 2. *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 521F.3d 1328, 1333 (Fed. Cir. 2008).

DHL argues that the '285 patent identifies processor P as the structure that performs the recited function -- processing the caller information data. As a result, *WMS Gaming* applies and DHL concludes that claim 61 is invalid because the '285 patent fails to disclose an algorithm that performs the recited function. Katz does not identify a different structure nor does Katz argue that the '285 patent discloses an algorithm to perform the recited functions. Thus, there is no factual dispute between the parties. Rather, Katz argues that *WMS Gaming* does not apply because the only claimed function is "processing." As a result, a person of ordinary skill in the art would know that there is a definite structure, a general purpose computer or processor. (Brody Decl. at ¶¶ 125-126.)

In support of its position, Katz relies on *Asyst Tech., Inc. v. Empak, Inc*. 268 F. 3d 1364 (Fed. Cir. 2001). However, *Asyst* did not address the issue of indefiniteness, nor did it consider whether an algorithm should be included in the corresponding structure. Thus, *Asyst*, is not helpful to our analysis. In sum, Katz argues that there should be an exception to *WMS Gaming*. However, Katz is unable to point to any authority to justify its position. Moreover, the Federal Circuit rejected a similar argument in *Aristocrat*. In *Aristocrat*, the patentee argued that the disclosure of specific algorithms was not necessary because the evidence showed that one of ordinary skill in the art could build the claimed device based on the disclosure in the specification. *Id*. at 1336. The Federal Circuit rejected that argument stating:

Whether the disclosure would enable one of ordinary skill in the art to make and use the invention is not at issue here. Instead, the pertinent question in this case is

13

whether Aristocrat's patent discloses structure that is used to perform the claimed function. Enablement of a device requires only the disclosure of sufficient information so that a person of ordinary skill in the art could make and use the device. A section 112 paragraph 6 disclosure, however, serves the very different purpose of limiting the scope of the claim to the particular structure disclosed, together with equivalents. *Id.*

As in *Aristocrat*, the issue here is not whether a person of ordinary skill in the art may understand how to make the claimed system. Katz chose to use means plus function language when drafting its claims and thereby invoked § 112 ¶ 6. As a result, the specification must disclose algorithms to perform the recited functions. The parties agree that no such algorithms were disclosed. Accordingly, this Court GRANTS DHL's motion for summary judgment as to claim 61 of the '285 patent. Specifically, the Court finds claim 61 invalid for indefiniteness.

Although the Court finds claims 63 and 61 invalid as discussed above, the Court will nonetheless address the significant remaining issues brought by the parties, including Katz's cross-motion for summary judgment as to DHL's affirmative defenses.

**D.      Non-Infringement**

DHL also argues that it does not infringe claim 63 of the '120 patent or claim 61 of the '285 patent.

**1.   Legal Standard – Non-Infringement**

Under the Patent Act, 35 U.S.C. § 271, liability for patent infringement may be imposed on any person who, without permission of the patentee, "makes, uses, offers to sell, or sells any patented invention [ ] within the United States or imports into the United States any patented invention during the term of the patent therefore." The rights granted to the patentee are defined by the patent's claims. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373, (1996).

In determining whether an allegedly infringing device falls within the scope of the claims, a two-step process is used: first, the court must determine as a matter of law the meaning of the particular claim or claims at issue; and second, it must consider whether the accused

product infringes one or more of the properly construed claims. *Id.* at 384; *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002). The second inquiry is a question of fact, although summary judgment of infringement or non-infringement may nonetheless be appropriate when no genuine dispute of material fact exists. *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1299 (Fed. Cir. 2004) (quoting *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)).

The patentee bears the burden of proving infringement by a preponderance of the evidence. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). This burden can be met by showing that the patent is infringed either literally or under the doctrine of equivalents. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed. Cir. 2004). To support a finding of literal infringement, the patentee must establish that "every limitation recited in the claim appears in the accused product, i.e., the properly construed claim reads on the accused product exactly." *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1382 (Fed. Cir. 2000) (citing *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)).

### 2.   Claim 63 of the '120 Patent

Even if claim 63 were valid, DHL argues that its Genesys and Brite systems do not infringe claim 63 for a number of different reasons.

#### a.   Receiving "Dialed-Number Identification Signals"

Claim 63 requires "receiving digital signals including dialed-number identification signals . . .." The Court previously construed "dialed-number identification signals" or "DNIS" to mean "signals that identify the number called." (Claim Construction Order at p.8.) Katz argues that DHL's Brite IVR system received the dialed-number identification signals ("DNIS") in the form of "a 4 or 5-digit DNIS Number." Defendant refers to this number as a vector directory number ("VDN") while plaintiff uses the term DNIS Digits.

15

DHL argues that the DNIS signals must be a 7 or 10 digit number. According to DHL there is no evidence that the DHL systems are able to use the VDN to determine the called phone number. In fact, DHL points to a single VDN that corresponds to two different telephone numbers (VDN 8282 at DHL 0124756 on Ex. 7 to Shean Decl.) Thus, DHL concludes that a VDN does not identify the dialed number.

Although the numbers are not a traditional 7 or 10 digit called number, Katz argues that the shorter numbers satisfy the claim limitation because they "represent and identify" the dialed number to which they have been assigned. A review of the evidence that Katz cites shows that the shorter numbers are associated with 10 digit called numbers. In other words, if a caller dials 800-247-2676, the DHL system receives a four digit number 8280. The DHL system uses that number to specify the initial announcement and menu presented to a caller. Although this shorter number[1] may "represent" a larger 10 digit DNIS, the shorter number is not a dialed-number identification signal. There is no evidence that DHL uses or can use the 4 or 5 digit VDN number to identify the called number. Therefore, this Court finds that DHL's Brite IVR system does not infringe claim 63 of the '120 patent,[2] and grants DHL's motion for summary judgment as to this issue. Since this Court finds that DHL's Brite IVR system does not receive dialed-number identification signals, this Court does not address DHL's related non-infringement argument – whether that number is used to identify the caller's number.

### b. "Qualify Callers for Access" and "Isolate a Subset of Callers"

Claim 63 requires both the steps of testing caller identification signals "to determine whether to qualify the callers for access to at least a portion of operations of the system" and "isolate[ing] a subset of callers" based on the caller's response to cues. DHL argues that the

---

[1] DHL calls this a VDN while Katz labels it a DNIS number.

[2] Katz argues that DHL argument only applies to its Brite IVR system. DHL did not challenge this characterization. Accordingly, this ruling does not apply to DHL's Genesys IVR system.

qualification step and isolation step must be separate. Katz disagrees and argues that while the qualification and isolation steps are distinct, they can occur by virtue of the same action in the accused system.

This Court rejects Katz's position. If the qualification step also served to "isolate a subset of callers," the isolation step would be superfluous. However, a claim should not be construed to read a limitation out of the claim entirely. *See Texas Instruments, Inc. v. Int'l Trade Comm'n.*, 988 F.2d 1165, 1171 (Fed. Cir. 1993). Moreover, the specification depicts the qualification step separately from the isolation step. First, callers are qualified to determine whether they can participate in the telephone based lottery. (*See, e.g.*, '120 patent at 5:21-23.) Second, participants are isolated based on correct or incorrect answers. *Id*. at 9:48-50. Thus, the specification confirms that the two steps are separate.

Katz argues that even if the two steps are separate, DHL's systems infringe claim 63. Katz says that the Brite IVR system: 1) qualifies callers by testing caller entered telephone numbers, and 2) isolates callers based on the application or menu option the caller selects. Similarly, Katz says, the Genesys IVR system: 1) qualifies callers by determining whether the caller was delinquent on his or her account, and 2) isolates callers based on the number of packages the caller indicates need to be picked up.[3]

In essence, Katz argues that every time a caller provides information, the system "isolates" the caller from other callers. This broad interpretation is not consistent with the '120 patent specification where contest participants are isolated based on their response to difficult questions. ('120 patent at 9:45-50.) DHL argues that the isolation step requires creating a relationship or association between the callers in each of the subsets. Although the Court agrees

---

[3] Katz also argues that qualified callers are isolated based on "Caller Characteristics." However, these characteristics are the very characteristics used to qualify callers. As stated above, this theory is inconsistent with the proper interpretation of the claims.

with the meaning DHL is attempting to convey, the Court adopts slight different wording. The actual claim language refers to "isolate[ing] a subset of callers." The Court interprets this phrase to require that the subset be treated as a group. For callers to be considered in the same group there must be some relationship between them (e.g. if one wins, the other loses). Here, there is no evidence to suggest that the accused DHL systems treat callers that provide the same responses to cues as a group. Since the accused systems do not "isolate a subset of callers," this Court GRANTS DHL's motion for summary judgment as to this issue.

### 3.    Claim 61 of the '285 Patent

DHL argues that it does not infringe claim 61 of the '285 patent for a variety of different reasons.

#### a.   Multiple Formats

Claim 61 requires an interface means for "providing an introductory automated voice message relating to a specific format from said plurality of formats." DHL argues that its Brite and Edify IVR systems do not infringe claim 61 because they each support calls using a single call flow engine. In support of its position, DHL relies on a short conclusory paragraph from its expert's declaration. (Zatkovich Decl. at ¶ 6.) Katz disagrees and identifies a number of formats for both systems.[4]

Katz says the Brite IVR system supports the "Star Customer Service" and "Store-to-Door" formats. Callers can connect with these services by dialing different telephone numbers. The Brite IVR system used dialed number (DNIS) to route callers to specific vectors. According to Katz's expert, Dr. Kelly, each vector determined the specific greeting, menu options and call

---

[4] The Court previously defined the term format: "Format refers to a call processing flow implemented by at least one computer program that sets forth the content and sequence of steps to gather information from and convey information to callers through pre-recorded prompts and messages. Selection of, or branching to, a module or subroutine within a computer program does not constitute selection of a separate format. Selection of (or branching to), a second computer program by a first computer program, that together implement a call process flow application also does not constitute selection of a separate format." (Claim Construction Order at p. 16, DE 1448.)

processing flow for that dialed number. (Kelly Decl. at ¶ 117.) There is no dispute that the different services share common operations. In fact, the three menu options from the "Store to Door" menu are merely a subset of the Star Customer Service menu options.[5] Thus, the different services allow callers to exercise some of the same options.

DHL argues that these services comprise a single format, not separate formats. Although two applications may overlap to such a degree that they should not be considered different formats, DHL has failed to offer sufficient evidence for the Court to draw that conclusion here. DHL appears to rely on the fact that the two services share some common operations. However, DHL's own expert, Mr. Zatkovich, testified that different formats could share common operations. (Zatkovich Dep. at p. 73.) DHL fails to show how much the two services overlap. For example, it is unclear whether the different telephone numbers simply provide different entry points into the same set of services or whether the Store-to-Door service never allows callers to access the fuller set of options provided by Star Customer Service. In other words, are the applications the same or different? When the same menu item is selected in the different services, does the system execute the same module or different modules that perform identical functions? These questions are not meant to reflect all the factors that may help determine whether multiple formats exist. Rather they are merely intended to demonstrate that the record DHL presents is incomplete. As a result, this Court DENIES DHL's motion as to this issue for failure to demonstrate that the accused systems do not support multiple formats.[6]

**b.  Messages Relating to a Specific Format**

DHL also contends that even if there are multiple formats, its systems do not provide "an introductory automated voice message relating to a specific format." Katz says that DHL's

---

[5] The options are: 1) scheduling a pickup, 2) tracking a shipment, and 3) transfer to an operator.

[6] The parties' arguments regarding DHL's Edify system were substantially similar. Therefore, this ruling applies to the Edify system as well.

systems play the following introductory messages. Callers to the Brite IVR hear, "Thank you for calling DHL Star Customer Service" for the Star Customer Service, and "Thank you for calling the DHL Store to Door Retail Customer Service Care Center" for the "Store to Door" service. Callers to the Edify IVR hear, "Thank you for calling DHL Express. If you want to pick up, press 1; track a package, press 2; billing, press 3" for the main customer service, and "If you're calling about a web shipping problem, press 2. And if you're calling about a DHL Connect problem, press 1" for the DHL connect service.

DHL's reply brief merely argues that these services are not different formats. That issue is dealt with in the previous section. Accordingly, this Court DENIES DHL's motion on this issue because DHL has failed to show that messages Katz identifies are not the introductory automated voice messages required by claim 61.

### c.   Agent-Assisted or Automated Process

DHL also argues that the services Katz identifies do not qualify as a format for yet another reason. DHL argues that a format must relate either to an agent-assisted process or an automated process, but not both. Moreover, DHL argues that a new format is initiated whenever a call is transferred between an automate process and an agent. Since the menus at issue provide introductory messages relating to both automated and agent-assisted processes, DHL argues that they cannot relate to a "specific format." Katz disagrees and argues that DHL's interpretation of format is inconsistent with the specification. The '285 patent specifically lists three classes of formats. ('285 patent at 5:14-20.) The third class of format involves a "switch "between live operator and processor depending on secondary conditions." *Id.* at 5:38-45. This class of format is wholly inconsistent with  DHL's proposed claim construction. Accordingly, this Court rejects DHL's interpretation of "format" and DENIES DHL's motion for summary judgment as to this issue.

20

#### d.  Processing Caller Information

Claim 61 requires "a means for processing . . .  for processing caller information data entered by an operator at said live operator attended terminal." DHL argues that it also does not infringe claim 61 because it does not process caller information. Earlier in this decision, the Court found that claim 61 was invalid as indefinite because the specification did not disclose an algorithm that corresponds to the "means for processing." Since this Court found that claim 61 was indefinite based on the limitation at issue here, this Court declines to address this non-infringement argument.

#### e.   Means for Reconnecting

Claim 61 requires a "means for reconnecting said call to said interface means to receive certain processed data via an automated voice message." DHL argues that it does not infringe claim 61 because there is no evidence that the accused DHL systems provide "certain processed" data to the caller after the caller is reconnected to DHL's automated system.

In response, Katz's expert, Dr. Kelly, says that operators could enter data (e.g. the caller's business close time), transfer a call back to the automated system, and then the caller could receive processed data in the automated system (e.g., the system would look up the caller's account based on the caller's telephone number and read back the business close time associated with that caller's file). (Kelly Decl. ¶¶ 128, 135, 136, 146-148.)

DHL says that Dr. Kelly is simply pointing out that an operator can reconnect a caller to the automated system (i.e. 1-800-CALL-DHL) so that the caller can navigate through the system to retrieve current information. DHL interprets the reconnecting limitation to require presenting processed data to a caller "immediately" after the caller is transferred back to the system. Under this interpretation, DHL's systems would not satisfy the limitation. In response, Katz argues that there is nothing in the claim or specification that places any limitation on: 1) what processed data

the caller receives, 2) when the caller receives the processed data, or 3) how many steps the caller may go through before receiving that data.

The only limiting language in the claim is "to receive certain processed data." The phrase uses the term "certain" to refer to the previous limitation that describes processing caller information data entered by an operator. DHL points to no other evidence to limit the claim language. Thus, this Court is compelled to reject DHL's claim construction. Katz has provided at least some evidence to show that DHL's systems reconnect callers to receive updated information, albeit not immediately. Accordingly, this Court DENIES DHL's motion for summary judgment on this issue.

### 4. Theories of Indirect Infringement

Katz alleges that DHL is liable for direct infringement as well as contributory infringement and inducement of infringement. DHL argues that Katz has failed to present any evidence to substantiate claims under the latter two theories of indirect infringement.

#### a. Contributory Infringement

35 U.S.C § 271(c) defines contributory infringement as follows:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

Here, Katz says that by selling "envelopes and labels *required* for a customer to use in order to ship his package" (Katz Opp'n at p. 34 (emphasis in original)), DHL is liable for contributory infringement. However, DHL correctly points out that these items are not a "material part of the invention," as required by the statute. Indeed, Katz fails to identify any limitation in the claims at issue that are satisfied by the envelopes or labels. This failure is fatal

to Katz's claim for contributory infringement. Accordingly, this Court GRANTS DHL's motion as to this issue and finds no contributory infringement.

### b.  Inducement of Infringement

To prevail on an inducement claim, the plaintiff must prove direct infringement by a third party, acts of inducement by the defendant, and the defendant's intent to induce infringement. *See DSU Medical Corp. v. JMS Co. Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006)(*en banc*). Katz relies on DHL advertising to argue that DHL induces DHL customers to call and use the accused systems. In response, DHL argues that Katz must show that DHL specifically induced its customers to use each and every component of the accused system (e.g. reconnected callers to the system). DHL has failed to identify any decisions that apply inducement on an element by element basis. Accordingly, this Court finds that evidence that DHL generally induced its customers to use the accused systems is sufficient to serve as a predicate for inducement.

DHL also argues that Katz has no evidence of intent. "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Medical*, 471 F.3d at 1306. Katz points out that DHL knew about Katz's patents and the possibility of infringement since 2000 and that Katz provided formal notice of its patent portfolio in 2002. This provides sufficient evidence of intent. Accordingly, this Court DENIES DHL's motion for summary judgment on this issue and finds that there is sufficient evidence to support allegations of inducement.

### IV.  KATZ'S CROSS MOTION FOR SUMMARY JUDGMENT

### A.     Laches

DHL has pled the affirmative defense of laches. Katz's motion for summary judgment asks this Court to dismiss DHL's laches defense on two separate grounds. First, Katz argues that its delay in filing suit against DHL was reasonable. Second, Katz argues that DHL has failed to

provide any evidence of either evidentiary or economic prejudice.

### 1.   Legal Standard – Laches

Laches occurs when a plaintiff unreasonably delays in bringing suit on its patent. The defense bars a patentee from recovering damages accrued prior to the filing of lawsuit. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed.Cir.1992) (en banc). The elements of laches are: "(1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and (2) the delay operated to the prejudice or injury of the defendant." *Aukerman*, 960 F.2d at 1032. Laches must be established by a preponderance of the evidence. *Id.* at 1045.

### 2.   Unreasonable Delay

Katz is currently asserting two patents against DHL, the '285 patent that issued in 1994, and the '120 patent that issued in 1999. DHL has presented evidence that Katz first began investigating DHL in 1995. On September 2002, Katz sent a letter to DHL Worldwide Express Inc. ("DWE") regarding the Katz patents.[7] Katz continued to send additional letters through August 19, 2003, apparently with minimal response. Between December 2003 and 2004, Katz and DWE exchanged a number of letters regarding the Katz patents and the pending *Verizon* case. Subsequently, Katz continued to unilaterally send letters through January 11, 2006. Finally, on September 1, 2006, Katz sued three DHL entities, DHL Holdings (USA), Inc., DHL Express (USA), Inc. and Sky Courier Inc. Thus, Katz waited approximately 11 years to sue DHL on the '285 patent and approximately 8 years on the '120 patent.

There is a rebuttable presumption that laches applies if the delay in bringing a lawsuit is over six years. *Id.* at 1035. That presumption can be rebutted by showing that the patentee's

---

[7] Katz also sent a notice letter to Airborne in 2000. Apparently, Katz has alleged that DHL is also responsible for infringement by Airborne prior to acquisition by DHL.

delay was reasonable or that the defendants suffered no prejudice. *Id*. at 1038. Courts have recognized both litigation and negotiations with the accused as an excuse for delay. Id. at 1033 (citations omitted). The plaintiff can puncture the presumption with introduction of evidence sufficient to raise a genuine dispute as to either delay or prejudice. *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992). Once the presumption is burst, the defendant must affirmatively prove both elements of laches. *Id.* (citing to *Aukerman*, 960 F.2d at 1032).

Here, there is a rebuttable presumption laches applies. However, Katz has introduced substantial evidence to excuse its delay. Specifically, Katz argues that its delay was reasonable because it was: 1) continuously in licensing discussions with the defendants; 2) involved in licensing discussions with hundreds of other entities; and 3) engaged in multiple patent litigation proceedings against other entities. This Court finds this evidence sufficient to puncture the presumption of laches and shift the burden of proof back to the defendant. However, by filing a motion for summary judgment, Katz is asking the Court to find that its excuses were reasonable as a matter of law.

A jury could reasonably adopt DHL's arguments. Specifically, DHL argues that it did not engage in bilateral negotiations with a fair chance of success. Indeed, the evidence could be interpreted to show that DHL had no intention of taking a license to Katz's patents. Moreover, a jury may or may not find that the existence of other litigations and negotiations excused Katz from filing suit expeditiously. Accordingly, this Court finds that there are factual issues with respect to the reasonableness of Katz's delay.

### 3. Prejudice

The second element of laches is prejudice. Katz's motion for summary judgment also argues that DHL has failed to provide any evidence of prejudice. In response, DHL alleges both economic and evidentiary prejudice.

DHL argues that it suffered two types of economic prejudice. First, DHL says that its use of interactive voice response systems rose dramatically before Katz actually filed suit. Second, DHL says that it chose to use its Brite system in 2003 and replace this system with the Genesys system in 2005. Since these systems are more likely to infringe than DHL's older Edify system, DHL argues that it detrimentally changed its position by purchasing the new systems. In response, Katz points out that DHL has failed to link the decision to install these new systems with Katz's failure to sue promptly. In fact, DHL changed to the Brite system in 2003 after it had notice of the Katz patents. Moreover, Katz argues that the evidence shows that DHL's investment in the Genesys system was without any consideration of the Katz patents. Therefore, Katz concludes that DHL would not have behaved differently had Katz sued it earlier.

In *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1463 n.1 (Fed. Cir. 1990), the Federal Circuit stated that to prevail on laches, the defendants "must show that the prejudice they suffered resulted from the delay." In *Meyers*, none of the defendants submitted evidence that they curtailed design and development of the accused products in response to suit once it was actually filed. *Id.* at 1463. The evidence also failed to show that the defendants were concerned that their products might infringe the patents or that they would have acted differently had they been sued earlier. *Id.* As a result, the Federal Circuit reversed the district court's decision to grant the defendants' summary judgment on laches. Here, DHL has also failed to present any evidence that suggests that its decisions would have been different had Katz sued earlier. Accordingly, this Court finds that DHL has failed to present substantial evidence on economic prejudice.

DHL also argues that it suffered evidentiary prejudice. Specifically, DHL complains that the one letter Katz sent Airborne Express providing notice of Katz's patents has been lost. This letter is important because DHL contends that 35 U.S.C. § 287 bars Katz from recovering any damages prior to the time it notified DHL of its patents. In response, Katz argues that the letter is

not relevant because actual notice was not required. Moreover, Katz says that there is no evidence that delay in filing suit caused the letter to be unavailable. On the current record, Katz has failed to establish that the lost letter is not relevant. Moreover, a fact finder could easily conclude that the letter would not have been lost if Katz sued earlier.

DHL also points out that correspondence between Katz and DWE were not located by either party. However, DHL fails to explain why these letters would be relevant to its defense. As a result, this Court does not find that they create a factual issue of evidentiary prejudice.

Nonetheless, this Court cannot ignore the fact that the missing Airborne Express letter may be prejudicial to DHL's defense under 35 U.S.C. § 287. Accordingly, this Court DENIES Katz's motion for summary judgment on laches.

**B.      Equitable Estoppel**

     **1.   Legal Standard – Equitable Estoppel**

The defendants have also pled the affirmative defense of equitable estoppel. Equitable estoppel comes into play when a patent owner represents to an infringer, expressly or implicitly, that he will not enforce his patent against the infringer's business, and the infringer relies on that representation. The Federal Circuit has stated that there are three elements to equitable estoppel: a) the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; b) the alleged infringer relies on that conduct; and c) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992). Equitable estoppel must be shown by a preponderance of the evidence. *Id.* at 1046.

     **2.   Misleading Conduct**

Katz requests that the Court grant judgment against DHL on the affirmative defense of

equitable estoppel because Katz's conduct could not have led any defendant to reasonably infer that Katz did not intend to enforce its patents against them. In response, DHL argues that "[a] reasonable juror could find that DHL relied upon [Katz's] inaction when making its decision to adopt the Genesys system." However, silence cannot be the basis for an inequitable conduct claim. *See Hemstreet v. Computer Entry Sys. Corp*., 972 F.2d 1290, 1295 (Fed. Cir. 1992) ("equitable estoppel may, in some instances, be based upon a misleading silence, mere silence must be accompanied by some other factor which indicates that the silence was sufficiently misleading as to amount to bad faith." (internal citations omitted)); *see also ABB Robotics, Inc. v. GMFanuc Robotics Corp*., 52 F.3d 1062, 1064 (Fed. Cir. 1995) ("Misleading action by the patentee may be silence, if such silence is accompanied by some other factor indicating that the silence was sufficiently misleading to amount to bad faith."); *Aukerman,* 960 F.2d at 1042 ("inaction must be combined with other facts").

Here, DHL fails to point to any other factor indicating that the silence was misleading. Indeed, all the evidence suggests that Katz would continue to pursue DHL. Katz sent a series of letters over the course of many years aimed at persuading DHL to take a license. The letters described Katz's litigations. This conduct plainly suggests that Katz was serially pursuing different targets, and DHL's turn would come. Thus, the Court finds that DHL has failed to raise a genuine issue of material fact with respect to misleading conduct. Accordingly, this Court GRANTS Katz's motion for summary judgment as to equitable estoppel.

### V.  SUMMARY

**A.    DHL Holdings**

In the absence of evidence linking DHL Holdings to the accused interactive call processing systems, this Court GRANTS DHL Holding's motion for summary judgment.

**B.      Invalidity in View of the Prior Art**

1.   This Court GRANTS DHL's motion for summary judgment as to claim 63 of the '120 patent, and finds that claim 63 is invalid as obvious in view of the combination of Student Registration and Moosemiller.

2.   This Court DENIES DHL's motion for summary judgment as to anticipation and obviousness of claim 61 of the '285 patent in view of Lotito.

**C.      Invalidity Based on  Indefiniteness**

This Court GRANTS DHL's motion for summary judgment as to claim 61 of the '285 patent, and finds that claim 61 is invalid for indefiniteness for failing to disclose an algorithm as required by *WMS Gaming*.

Notwithstanding the rulings above, the Court also makes the following findings:

**D.      Non-Infringement**

1.   DHL argues that it did not infringe claim 63 of the '120 for two reasons. First, DHL argues that the Brite IVR did not receive dialed-number identification signals (DNIS). Second, DHL argued that the accused systems did not do not "isolate a subset of callers." This Court rules in favor of DHL on both of these arguments and GRANTS DHL's motion for summary judgment of non-infringement with respect to claim 63 of the '120 patent.

2.   DHL argues that it did not infringe claim 61 of the '285 patent for four reasons. First, DHL argues that Brite and Edify IVR systems do not support multiple formats. Second, DHL argues that its systems do not provide an "introductory automated voice message relating to a specific format." Third, DHL interprets "format" to relate to either an agent-assisted process or an automated process, but not both. Based on this interpretation, DHL argues it system do not support a format. Finally, DHL interprets the reconnecting limitation to require presenting

processed data to a caller "immediately" after the caller is transferred back to the system. Based on this interpretation, DHL argues that its system do not satisfy the reconnecting limitation. This Court rejects all of these arguments and DENIES DHL's motion for summary of judgment non-infringement with respect to claim 61 of the '285 patent.

3.   This Court finds no contributory infringement, and GRANTS DHL's motion for summary judgment as to this issue.

4.   This Court finds that there is sufficient evidence to support allegations of inducement, and DENIES DHL's motion for summary judgment as to this issue.

**E.     Laches**

This Court DENIES Katz's motion for summary judgment on laches because there are substantial factual issues with respect to both the reasonableness of Katz's delay and evidentiary prejudice.

**F.     Equitable Estoppel**

This Court GRANTS Katz's motion for summary judgment on equitable estoppel because DHL has failed to raise substantial evidence of misleading conduct.


**IT IS SO ORDERED**.


DATED:  May 1, 2009

Honorable R. Gary Klausner
United States District Judge